IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

---

ESTATE OF MARANI AWANIS MANOOK,

Plaintiff,

-against-

UNITY RESOURCES GROUP and RTI
INTERNATIONAL,

Defendants.

---

Civil Case No. 1:08-cv-00096 (PLF)

Hon. Paul L. Friedman

## NOTICE OF MOTION AND MOTION OF
## DEFENDANT UNITY RESOURCES GROUP PTE. LTD.
## TO DISMISS THE FIRST AMENDED COMPLAINT

Defendant Unity Resources Group Pte. Ltd. ("Unity") respectfully moves this

Court, pursuant to Rule 12(b)(5) and 12(b)(2) of the Federal Rules of Civil Procedure, to

dismiss the First Amended Complaint in this action as against Unity (a) for insufficient

service of process, and (b) for lack of personal jurisdiction over Unity.

As grounds therefor, Unity respectfully refers the Court to the supporting

memorandum of law filed herewith, and the accompanying Declarations of Jinson

Stephen, Kerry Powdrill and Thomas E. Butler, all dated March 27, 2008.

A proposed order is also submitted herewith.

No advance conferral with opposing counsel was required for this motion

under Local Civil Rule 7(m) because this is a dispositive motion.

Dated:    March 28, 2008

CHADBOURNE & PARKE LLP

By_____/s/ David T. Blonder_____
      William S. D'Amico (Bar No. 2694)
      David T. Blonder (Bar No. 501602)
    Attorneys for Defendant Unity
      Resources Group Pte. Ltd.
    1200 New Hampshire Avenue, N.W.
    Washington, D.C. 20036
    Tel. (202) 974-5600
    Fax (202) 974-5602

Of Counsel:

Robert A. Schwinger
   (Bar admission to this Court pending)
CHADBOURNE & PARKE LLP
30 Rockefeller Plaza
New York, NY 10112
Tel. (212) 408-5100
Fax (212) 541-5369

Daniel J. Greenwald III
CHADBOURNE & PARKE LLC
City Tower I
Sheikh Zayed Road
P.O. Box 23927
Dubai
United Arab Emirates
Tel: +971 (4) 331-6123
Fax +971 (4) 331-0844

2

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ESTATE OF MARANI AWANIS MANOOK, | |
| Plaintiff, | Civil Case No. 1:08-cv-00096 (PLF) |
| -against- | Hon. Paul L. Friedman |
| UNITY RESOURCES GROUP and RTI INTERNATIONAL, | |
| Defendants. | ORAL ARGUMENT REQUESTED |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF
DEFENDANT UNITY RESOURCES GROUP PTE. LTD.
TO DISMISS THE FIRST AMENDED COMPLAINT**

CHADBOURNE & PARKE LLP
Attorneys for Defendant
    Unity Resources Group Pte. Ltd.
1200 New Hampshire Avenue, N.W.
Washington, D.C.  20036
Tel. (202) 974-5600
Fax (202) 974-5602

William S. D'Amico
Robert A. Schwinger
    (Bar admission to this Court pending)
Daniel J. Greenwald III
        Of Counsel

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................ii

PRELIMINARY STATEMENT...........................................................................1

SUMMARY OF ALLEGATIONS.........................................................................2

ARGUMENT .....................................................................................................4

I      THE COMPLAINT SHOULD BE DISMISSED AS AGAINST UNITY FOR IMPROPER SERVICE ....................................................4

II     UNITY IS NOT SUBJECT TO PERSONAL JURISDICTION IN THIS DISTRICT .................................................................................11

       A.    There Is No Basis For an Assertion of General Jurisdiction Over Unity ...........................................................................12

          1.    Unity Has No "Enduring Relationship" With the District of Columbia Under § 13-422...............................12

          2.    Unity Is Not Subject to General Jurisdiction Under § 13-334 ....................................................................13

              a.    Unity Was Not Served With Process Within the District of Columbia .............................................13

              b.    Unity Is Not "Doing Business" in the District of Columbia .............................................................14

       B.    There is No Basis For Exercising Specific Jurisdiction Over Unity....................................................................................19

       C.    Exercising Personal Jurisdiction Over Unity Would Contravene Due Process In Any Event ......................................22

CONCLUSION ...............................................................................................23

i

## TABLE OF AUTHORITIES

**Page**

### CASES

AGS Int'l Servs. S.A. v. Newmont USA Ltd., 346 F. Supp. 2d 64 (D.D.C. 2004) .... 14, 15

\*Atlantigas Corp. v. Nisource, Inc., 290 F. Supp. 2d 34 (D.D.C. 2003)............. 17, 18, 20

\*Audio Enters., Inc. v. B&W Loudspeakers of America, 957 F.2d 406
    (7th Cir. 1992) .................................................................................9

Bayles v. K-Mart Corp., 636 F. Supp. 852 (D.D.C. 1986)........................................ 20, 23

Blumenthal v. Drudge, 992 F. Supp. 44 (D.D.C. 1998) ....................................................11

\*Brockmeyer v. May, 383 F.3d 798 (9th Cir. 2004) ..........................................................7

Dee-K Enters. Inc. v. Heveafil Sdn. Bhd., 174 F.R.D. 376 (E.D. Va. 1997) ...................10

\*El-Fadl v. Central Bank of Jordan, 75 F.3d 668 (D.C. Cir. 1996) .................................13

Export-Import Bank of U.S. v. Asia Pulp & Paper Co., No. 03 Civ. 8554,
    2005 WL 1123755 (S.D.N.Y. May 11, 2005) ........................................................8

Fandel v. Arabian Am. Oil Co., 345 F.2d 87 (D.C. Cir. 1965).........................................18

\*Fasolyak v. The Cradle Society, Inc., No. 06-01126, 2007 WL 2071644
    (D.D.C. July 19, 2007) ..................................................................... 13, 15, 18

FC Inv. Group LC v. IFX Markets, Ltd., 479 F. Supp. 2d 30 (D.D.C. 2007) ............ 17, 20

G & H Partners, Ltd. v. Boer Goats Int'l Ltd., 896 F. Supp. 660 (W.D. Tex. 1995)..........8

\*Ghanem v. Kay, 624 F. Supp. 23 (D.D.C. 1984) ..........................................................19

Gonzalez v. Internacional de Elevadores, S.A., 891 A.2d 227 (D.C. 2006).............. 14, 21

\*Gorman v. Ameritrade Holding Corp., 293 F.3d 506 (D.C. Cir. 2002) ...................13-16

\*Gowens v. Dyncorp, 132 F. Supp. 2d 38 (D.D.C. 2001)...............................................21

Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408 (1984)......................14

ii

*Helmer v. Doletskaya, 393 F.3d 201 (D.C. Cir. 2004)..............................................21, 22

Hughes v. A.H. Robins Co., 490 A.2d 1140 (D.C. 1985) ...............................................15

Kopff v. Battaglia, 425 F. Supp. 2d 76 (D.D.C. 2006)........................................11, 12, 16

*Lampe v. Xouth, Inc. 952 F.2d 697 (3d Cir. 1991)............................................................7

Landell v. Northern Pac. Ry. Co., 98 F. Supp. 479 (D.D.C. 1951)..................................19

Light v. Wolf, 816 F.2d 746 (D.C. Cir. 1987) ....................................................................6

*Magnuson v. Video Yesteryear, 85 F.3d 1424 (9th Cir. 1996)...................................9, 10

McManus v. District of Columbia, 530 F. Supp. 2d 46 (D.D.C. 2007) ........................5, 6

*Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560 (2d Cir. 1996).........23

Moskovits v. Drug Enforcement Admin., 774 F. Supp. 649 (D.D.C. 1991) ......................7

NSM Music, Inc. v. Villa Alvarez, No. 02 C 6482, 2003 WL 685338
    (N.D. Ill. Feb. 25, 2003)................................................................... 9, 10, 11

Oldham v. U.S., No. 01-1410, 2002 WL 850205 (D. Or. Mar. 21, 2002) .......................18

In re Orshansky, 804 A.2d 1077 (D.C. 2002) ...................................................................16

Perkins v. Benguet Consol. Mining Co., 342 U.S. 437 (1952)........................................14

Prince v. Poulos, 876 F.2d 30 (5th Cir. 1989) ..................................................................10

Roz Trading Ltd v. Zeromax Group, Inc., 517 F. Supp. 2d 377 (D.D.C. 2007)...............16

Schutter v. Herskowitz, No. 06-1846, 2007 WL 1954416 (D.D.C. July 5, 2007)............22

Shoppers Food Warehouse v. Moreno, 746 A.2d 320 (D.C. 2000) ..................................22

Steinberg v. Int'l Criminal Police Org., 672 F.2d 927 (D.C. Cir. 1981) ..........................11

Stiefel Labs., Inc. v. Galenium USA, LLC, No. 05-23108-CIV, 2006 WL
    1548006 (S.D. Fla. Apr. 11, 2006) ......................................................10

Willis v. Willis, 655 F.2d 1333 (D.C. Cir. 1981)...............................................................20

iii

World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286 (1980)................................22

## STATUTES

28 U.S.C. § 1350 ........................................................................................................3

*D.C. Code § 13-334................................................................................12-16, 19

D.C. Code § 13-334(a)................................................................................14

D.C. Code § 13-422 ..............................................................................12, 13

D.C. Code § 13-423 ..............................................................................19

*D.C. Code § 13-423(a)(1)......................................................................20

D.C. Code § 13-423(a)(3) ......................................................................19, 20

D.C. Code § 13-423(a)(4) ......................................................................19, 20

D.C. Code § 13-423(b) ..........................................................................20

## RULES

Fed. R. App. P. 25(c)(1)(B) ....................................................................9

Fed. R. App. P. 25(c)(1)(C) ....................................................................9

Fed. R. Civ. P. 4 ..............................................................................7, 9, 10, 11

Fed. R. Civ. P. 4(d)(1)(G)........................................................................9

Fed. R. Civ. P. 4(f) ............................................................................4

Fed. R. Civ. P. 4(f)(2)(C)(i) ....................................................................4

*Fed. R. Civ. P. 4(f)(2)(C)(ii) ................................................................5-11

Fed. R. Civ. P. 4(h)............................................................................4

Fed. R. Civ. P. 4(h)(2) ........................................................................4

Fed. R. Civ. P. 4(l)............................................................................5

NY2 - 492285.06

Fed. R. Civ. P. 5 ................................................................................................9

Fed. R. Civ. P. 6 ................................................................................................9

Fed. R. Civ. P. 12(b) ..........................................................................................2

Fed. R. Civ. P. 12(b)(2) .......................................................................... 4, 12, 16

Fed. R. Civ. P. 12(b)(5) ......................................................................................4

Fed. R. Civ. P. 12(c) ..........................................................................................4

Local Civil Rule 5.1(e)(1) ...................................................................................7

Local Civil Rule 11.1 ..........................................................................................7

## URLs

*http://travel.state.gov/law/info/judicial/judicial_686.html* .................................5

*www.BuyUSA.go*v ............................................................................................18

*www.unityresourcesgroup.com* ..........................................................................17

## OTHER

Hague Convention on the Service Abroad of Judicial and Extra-judicial
    Documents in Civil and Commercial Matters, 20 U.S.T. 361; 28 U.S.C.A.,
    Fed. R. Civ. P. 4 Appendix ...........................................................................5

Webster's New Collegiate Dictionary (1973) ......................................................10

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ESTATE OF MARANI AWANIS MANOOK,<br><br>               Plaintiff,<br><br>     -against-<br><br>UNITY RESOURCES GROUP and RTI<br>INTERNATIONAL,<br><br>               Defendants. | Civil Case No. 1:08-cv-00096 (PLF)<br><br>Hon. Paul L. Friedman |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION OF DEFENDANT UNITY RESOURCES GROUP PTE. LTD. TO DISMISS THE FIRST AMENDED COMPLAINT

Defendant Unity Resources Group Pte. Ltd. respectfully submits this Memorandum of Law in Support of its Motion to Dismiss the First Amended Complaint (the "Complaint" or "Compl.").

## PRELIMINARY STATEMENT

Plaintiff's decedent was an Iraqi living in Baghdad. Plaintiff alleges that she was killed in Baghdad during an altercation with representatives of the defendant foreign corporation Unity Resources Pte. Ltd. ("Unity"), which was providing security services in Iraq to representatives of its co-defendant RTI International ("RTI"), a contractor in Iraq to the U.S. State Department.

NY2 - 492285.06

Unity, a Singapore corporation with its principal place of business in Dubai, in the United Arab Emirates, now moves to dismiss under Rule 12(b) on two grounds. First, as the "Notice of Service" filed by Plaintiff itself makes very clear, plaintiff failed to meet the requirements for effecting service of process on this foreign defendant by court clerk's mailing, which is Plaintiff's only claimed form of service upon Unity. Second, Unity simply is not subject to personal jurisdiction in this District, either generally or with respect to the particular claims alleged in the Complaint.

## SUMMARY OF ALLEGATIONS

This action is brought in the name of the Estate of Marani Awanis Manook, although without identification of any particular representative alleged to have been authorized by any competent authority to act on this estate's behalf. The Complaint alleges that Plaintiff's decedent, a resident of Baghdad, died in Baghdad during an altercation on the streets of Baghdad on or about October 9, 2007 with certain employees of defendant Unity, which is alleged to have been providing security services to defendant RTI International, a company engaged by the United States Department of State to assist in rebuilding local communities in Iraq. (Compl. ¶¶ 9, 12-15, 23.) Unity is a corporation organized under the laws of Singapore, with its principal offices in Dubai, United Arab Emirates. (Declaration of Jinson Stephen, dated March 27, 2008 ("Stephen Decl.") ¶ 2; see also Compl. ¶ 6.)

This action was commenced on January 17, 2008, and on February 11, 2008, Plaintiff filed its First Amended Complaint. (Declaration of Thomas E. Butler, dated

2

March 27, 2008 ("Butler Decl.") ¶ 2, Exh. A.) The Complaint asserts claims against Unity and RTI under the Alien Tort Statute, 28 U.S.C. § 1350 (Compl. ¶¶ 30-43), as well as various common-law claims for assault and battery, wrongful death, intentional and negligent infliction of emotional distress, various forms of negligence, and various related counts alleging aiding and abetting and civil conspiracy (Compl. ¶¶ 44-91), all supposedly arising from the alleged incident that resulted in the decedent's death. The Complaint also alleges certain purported contacts between Unity and this District (Compl. ¶¶ 4, 5, 7), presumably in an attempt to establish a basis for asserting personal jurisdiction in this District over the defendant foreign corporation Unity for the foreign Plaintiff's claims arising from this alleged Baghdad incident.

On March 4, 2008, Plaintiff filed a "Notice of Service" purporting to show that service of process had been made upon Unity. This document asserted that Plaintiff had served process by having its counsel send a package of documents, including the summons, original complaint, and the Complaint, purportedly to Unity's offices in Dubai, by DHL and Federal Express. (Butler Decl. ¶ 4, Exh. D.)

Unity now moves to dismiss this action as against it pursuant to Rules 12(b)(2) and 12(b)(5) of the Federal Rules of Civil Procedure, for insufficient service of process and lack of personal jurisdiction.[1]

## ARGUMENT

## I

## THE COMPLAINT SHOULD BE DISMISSED
## AS AGAINST UNITY FOR IMPROPER SERVICE

The Plaintiff has failed properly to effectuate service of process upon Unity, and for that reason alone, the Complaint should be dismissed.

Rules 4(f) and 4(h) of the Federal Rules of Civil Procedure set forth the permissible methods of effecting service of process upon foreign corporations outside of the judicial districts of the United States.  Rule 4(h)(2) provides that such foreign corporations shall be served "in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i)."  Plaintiff on March 4, 2008 filed

---

[1]    The present motion is limited to the threshold issues of service of process and personal jurisdiction.  In the event that the Court decides that personal jurisdiction exists over Unity, Unity advises the Court and the parties that it will, reserves the right to, move thereafter for dismissal by reason of forum non conveniens and to move for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) in view of Plaintiff's failure to adequately plead or show that this action is being prosecuted by and for a "real party in interest" duly authorized to act for the purported plaintiff estate, and on various other substantive grounds relating to the specific counts of the Complaint.

4

a "Notice of Service" in which it expressly contended that it had served Unity pursuant to Fed. R. Civ. P. 4(f)(2)(C)(ii).[2] Rule 4(f)(2)(C)(ii) provides that if service is to be made in a country that is not a party to any international service agreement with the United States,[3] and provided there is no prohibition under local law, service may be made upon a foreign party in that country by "using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt."

"The party on whose behalf service is made has the burden of establishing its validity when challenged; to do so, he must demonstrate that the procedure employed satisfied the requirements of the relevant portions of Rule 4 and any other applicable provision of law." McManus v. District of Columbia, 530 F. Supp. 2d 46, 63 (D.D.C.

---

[2]   Presumably this "Notice of Service" was intended by Plaintiff to constitute proof of service under Fed. R. Civ. P. 4(l), but if so it is defective on its face, because it is unsworn and Rule 4(l) provides that "[e]xcept for service by a United States marshal or deputy marshal, proof must be by the server's affidavit." Plaintiff's prior attempt at filing proof of service under Rule 4(l) — simply electronically filing on February 27, 2008 copies of a DHL tracking history for a package sent from some unspecified location in Rockville, Maryland to some unspecified location in Dubai, and some Federal Express receipts, all unaccompanied by anything else — was rejected by the Clerk of the Court the very next day. (See Butler Decl. ¶ 4, Exhs. B, D.)

[3]   As noted previously, Unity is a Singapore entity with its principal place of business in Dubai, United Arab Emirates. Neither of those jurisdictions is a party to the Hague Convention on the Service Abroad of Judicial and Extra-judicial Documents in Civil and Commercial Matters, 20 U.S.T. 361; 28 U.S.C.A., Fed. R. Civ. P. 4 Appendix. See, e.g., http://travel.state.gov/law/info/judicial/judicial_686.html (U.S. State Department website).

NY2 - 492285.06

2007) (quoting <u>Light</u> v. <u>Wolf</u>, 816 F.2d 746, 750 (D.C. Cir. 1987)). Here, Plaintiff claims to have effectuated service properly by sending copies of the summons, original complaint, and Complaint to Unity by DHL delivery and to certain Unity officers by Federal Express delivery service. However, the claim of proper service is refuted by the Plaintiff's own Notice of Service.

Plaintiff's Notice of Service (Butler Decl. ¶ 4, Exh. C) states in pertinent part:

"On February 19, 2008, Plaintiffs requested that the Clerk of the Court prepare the summons, complaint and first amended complaint for service by DHL, pursuant to Fed.R.Civ.P. 4(f)(2)(c)(ii). See Exhibit 2 (Docket Sheet). The clerk's prepared package was delivered to DHL by Plaintiff's counsel on February 21, 2008, and a copy of the International Shipment Waybill prepared by the Clerk's office is attached as Exhibit 3. . . ."

"Separately, counsel for Plaintiff served additional copies of the summons, complaint and first amended complaint by Federal Express on Gordon Conroy and Michael Pridden, both executives with Unity Resources Group in Dubai. . . ."

The purported service recounted in Plaintiff's Notice of Service in insufficient in several respects.

<u>First</u>, the DHL package was not addressed to Unity's current address. Rather, the package's address label listed only a former address in Dubai where Unity no longer maintained any offices. (Declaration of Kerry Powdrill, dated March 27, 2008 ("Powdrill Decl.") ¶ 2.) The package thus ended up being delivered by DHL to the offices of a

6

Unity affiliate (not the defendant) also located in Dubai, and from there it was eventually forwarded to Unity's current offices in Dubai.  (Powdrill Decl. ¶ 2.)[4]  Thus, the purported service of process failed the most fundamental requirement under Rule 4(f)(2)(C)(ii) — being properly addressed to the defendant.[5]

Second, Plaintiff admits that "[t]he clerk's prepared package was delivered to DHL by Plaintiff's Counsel" (emphasis added).  Plaintiff thus acknowledges that the package was not sent "using any form of mail that the clerk addresses and sends," as is required under Rule 4(f)(2)(C)(ii), but rather, was sent by the non-neutral offices of Plaintiff's counsel.  For this reason alone, the attempted service was defective.  See Brockmeyer v. May, 383 F.3d 798, 805 (9th Cir. 2004) (holding service ineffective under Fed. R. Civ. P. 4(f)(2)(C)(ii) where notice was not sent by the clerk of the court); Lampe v. Xouth, Inc. 952 F.2d 697, 702 (3d Cir. 1991) (holding service of process ineffective

---

[4]  That Unity received the package, and therefore had notice of the lawsuit, is not a substitute for technically correct service under Fed. R. Civ. P. 4.  Moskovits v. Drug Enforcement Admin., 774 F. Supp. 649, 652 (D.D.C. 1991).

[5]  Unity's U.S. litigation counsel had not learned of this address change before filing Unity's March 13, 2008 Unopposed Motion to Extend Time, and thus that document incorrectly set forth Unity's old Dubai address in the caption box in response to Local Civil Rules 5.1(e)(1) and 11.1.  Counsel apologizes to the Court and to fellow counsel for this error, but notes that this error in the March 13, 2008 filing long postdated Plaintiff's purported service of process upon Unity and thus was not the cause of the mailing address used by Plaintiff.  The corrected information has now been provided to the Court by this motion, and Unity is filing today a corrected disclosure.

7

where plaintiff's attorney, rather than the clerk of the court, mailed documents to foreign defendant); Export-Import Bank of U.S. v. Asia Pulp & Paper Co., No. 03 Civ. 8554, 2005 WL 1123755, at *2 (S.D.N.Y. May 11, 2005) (holding purported DHL service defective under Rule 4(f)(2)(C)(ii) where "the Clerk of the Court was not responsible for dispatching the summons and complaint") (Appendix of Cases, Exh. A); G & H Partners, Ltd. v. Boer Goats Int'l Ltd., 896 F. Supp. 660, 663 (W.D. Tex. 1995) (holding service ineffective where documents were addressed and dispatched by plaintiffs rather than clerk of the court).

Third, Plaintiff's account of how the documents came to be sent to Unity — the Clerk "preparing" the package in some unspecified way and addressing the DHL waybill but then supposedly handing it off to Plaintiff's counsel — not only is contrary to the requirements of the Rule but also conflicts with information provided by the Clerk's Office's as to how Rule 4(f)(2)(C)(ii) service of process is typically handled by that Office. A representative of that Office informed counsel for Unity that the Clerk's Office handles such deliveries itself, using the Court's envelopes, which bear a return address making clear that the sender of the package was the Court. (Butler Decl. ¶ 5.) Here, however, there was no indication on or in the package received by Unity that the sender was this Court or its Clerk's Office. (Powdrill Decl. ¶ 3.) Rather, as the DHL waybill attached to Plaintiff's Notice of Service makes clear, the sender of this package was identified as "EZ Business Centers," with an address of "Linkage, 1929 18th St NW, Washington, DC 20009 1710." (Powdrill Decl. ¶ 3, Exh. A.)

8

<u>Fourth</u>, the contents of the Court's own docket sheet fail to provide any support for Plaintiff's contention in its Notice of Service that the Clerk's Office was purporting to effect Rule 4(f)(2)(C)(ii) service here. While the docket sheet indicates that a <u>request</u> for service pursuant to Rule 4(f)(2)(C)(ii) was <u>made</u> on February 19, 2008, it provides no indication that the Clerk's Office ever acted to make any mailing or take any other step to effectuate such service. (<u>See</u> Butler Decl. ¶ 3, Exh. B.)

<u>Finally</u>, delivery by a private courier service such as DHL is not "a form of mail" as required by Rule 4(f)(2)(C)(ii), even if such delivery does require a signed receipt. When Rule 4 authorizes means of delivery other than postal mail, it does so explicitly rather than treating such other methods as if they were implicitly subsumed in the term "mail." <u>See</u> Fed. R. Civ. P. 4(d)(1)(G) (allowing documents to be "sent by first-class mail <u>or other reliable means</u>" (emphasis added)). Likewise Fed. R. App. P. 25(c)(1)(B)-(C) expressly distinguishes "mail" from "third-party commercial carrier" as a means of effecting interlocutory service of appellate papers.

Thus, in <u>Magnuson</u> v. <u>Video Yesteryear</u>, 85 F.3d 1424, 1430-31 (9th Cir. 1996), the Ninth Circuit concluded that private courier service does not constitute "mail" under Rules 4, 5 or 6 of the Federal Rules of Civil Procedure. Similarly, the Seventh Circuit in <u>Audio Enters., Inc.</u> v. <u>B&W Loudspeakers of America</u>, 957 F.2d 406, 409 (7th Cir. 1992), held that delivery by Federal Express is not "mail" for the purposes of Rule 4. The Court in <u>NSM Music, Inc.</u> v. <u>Villa Alvarez</u>, No. 02 C 6482, 2003 WL 685338, at *2 (N.D. Ill. Feb. 25, 2003), likewise held that service of process on Mexican defendants

9

was flawed because plaintiffs used a private courier service, which constituted neither a "postal channel" nor "mail." (Appendix of Cases, Exh. C.)  Accord Magnuson, 85 F.3d at 1430 (defining mail as "letters . . . conveyed under public authority") (quoting Prince v. Poulos, 876 F.2d 30, 32 n.1 (5th Cir. 1989) (quoting Webster's New Collegiate Dictionary (1973) (ellipsis in original))).[6]

While Plaintiff's Notice of Service also references delivering additional copies of the summons and Complaint to Unity executives in Dubai via Federal Express (which packages likewise were addressed to the location of Unity's former offices), the Notice of Service does not contend that the Clerk of the Court participated in any way in such deliveries.  (See Butler Decl. ¶ 4, Exh. C.)  An entirely private Federal Express package sent by counsel, and misaddressed at that, plainly does not constitute proper service of process under Rule 4.  See pp. 6-7, supra.

---

[6]    In cases where the sufficiency under Rule 4(f)(2)(C)(ii) of using non-postal delivery means was actually raised and decided, the only cases taking a contrary position to the Courts of Appeals and other courts cited above appear to be Dee-K Enters. Inc. v. Heveafil Sdn. Bhd., 174 F.R.D. 376, 379-80 (E.D. Va. 1997), and a short summary ruling on an unopposed default judgment application in Stiefel Labs., Inc. v. Galenium USA, LLC, No. 05-23108-CIV, 2006 WL 1548006, at *1 (S.D. Fla. Apr. 11, 2006) (citing only Dee-K without further discussion) (Appendix of Cases, Exh. F), and several pre-Magnuson cases from within the Ninth Circuit which now are no longer good law.

Because the Plaintiff has failed to show satisfaction of the requirements for service under Rule 4(f)(2)(C)(ii) or any of the other Rule 4 service methods, the Complaint as against Unity should be dismissed.  "These points might seem technical, but the plaintiffs are asking this Court to extend its reach abroad, and thus careful adherence to the requirements of international treaties and the Federal Rules of Civil Procedure is called for." NSM Music, Inc., 2003 WL 685338, at *2.

## II

## UNITY IS NOT SUBJECT TO PERSONAL JURISDICTION IN THIS DISTRICT

In order for a federal district court in the District of Columbia to "maintain personal jurisdiction over a non-resident defendant, jurisdiction must be proper" under the jurisdictional statutes of the District of Columbia, and the exercise of jurisdiction must be "consistent with the demands of due process." Blumenthal v. Drudge, 992 F. Supp. 44, 53 (D.D.C. 1998).  Personal jurisdiction may be "general," conferring "authority to entertain a suit against a defendant without regard to the claim's relationship vel non to the defendant's forum-linked activity," or "specific," conferring authority to "entertain controversies based on acts of a defendant that touch and concern the forum." Steinberg v. Int'l Criminal Police Org., 672 F.2d 927, 928 (D.C. Cir. 1981).

It is the Plaintiff's burden to "establish[] that this Court has personal jurisdiction over defendant[s] . . . and alleg[e] specific facts upon which personal jurisdiction may be based." Blumenthal, 992 F. Supp. at 53.  The Plaintiff may not "rely on conclusory allegations" to establish personal jurisdiction. Kopff v. Battaglia, 425 F. Supp. 2d 76, 80-

11

81 (D.D.C. 2006). Moreover, on a Rule 12(b)(2) motion, "the Court need not treat all of plaintiffs allegations as true," but rather "may receive and weigh affidavits and any other relevant matter to assist it in determining the jurisdictional facts." Id. at 81.

There is no basis upon which Unity is subject to personal jurisdiction, either general or specific, in this District. Indeed, Plaintiff has failed even to properly allege, much less establish, a sufficient basis for this Court to exercise personal jurisdiction over Unity under any of the potentially relevant jurisdictional statutes — and a number of Plaintiff's jurisdictional allegations are flatly wrong, as shown by sworn declarations that Unity has submitted on this motion.

**A.    There Is No Basis For an Assertion
of General Jurisdiction Over Unity**

There are two District of Columbia statutes which set forth the permissible bases for the exercise of general jurisdiction over a defendant: D.C. Code § 13-422 provides for personal jurisdiction based upon a defendant's "enduring relationship" with the District of Columbia, while D.C. Code § 13-334 provides for general personal jurisdiction over foreign corporations who are "served . . . in the District" if they are "doing business in the District."

**1.    Unity Has No "Enduring Relationship"
With the District of Columbia Under § 13-422**

The "enduring relationship" provision of D.C. Code § 13-422 states:

"A District of Columbia court may exercise personal jurisdiction over a person domiciled in, organized under the laws of, or maintaining his or its principal place of business in, the District of Columbia as to any claim or relief."

12

However, Unity is a Singapore corporation with its principal place of business in Dubai. (<u>See</u> Stephen Decl. ¶ 2; <u>see also</u> Compl. ¶ 6 (alleging that Unity maintains its "head office" in Dubai).)  D.C. Code § 13-422 thus does not provide any basis for general jurisdiction over Unity.  <u>See</u> <u>El-Fadl</u> v. <u>Central Bank of Jordan</u>, 75 F.3d 668, 672 n.6 (D.C. Cir. 1996) (court "lacked jurisdiction under § 13-422 because the record shows that [the defendant] is organized under the laws of Jordan and maintains its principal place of business there"); <u>Fasolyak</u> v. <u>The Cradle Society, Inc.</u>, No. 06-01126, 2007 WL 2071644, at *3 n.5 (D.D.C. July 19, 2007) ("jurisdiction under [§ 13-422] is inappropriate when the defendant is organized under the laws of another jurisdiction and maintains its principal place of business in that other jurisdiction"). (Appendix of Cases, Exh. B.)

> **2.  Unity Is Not Subject to General**
> **     Jurisdiction Under § 13-334**

Under D.C. Code § 13-334, general personal jurisdiction may also be asserted where a foreign corporation (i) is served with process within the District of Columbia, <u>and</u> (ii) is "doing business in the District."  <u>See</u> <u>Gorman</u> v. <u>Ameritrade Holding Corp.</u>, 293 F.3d 506, 510, 516 (D.C. Cir. 2002).  Neither requirement is satisfied here.

> **a.  Unity Was Not Served With**
> **     Process Within the District of Columbia**

As Plaintiff's Notice of Service concedes, the only purported service of process upon Unity in this action was via the delivery of DHL and Federal Express packages to Unity's headquarters in Dubai, United Arab Emirates.  (Butler Decl. ¶ 4, Exh. C.)  It is well-established, however, that jurisdiction under D.C. Code § 13-334 is proper only

13

where a defendant is physically served within the District of Columbia. Gonzalez v. Internacional de Elevadores, S.A., 891 A.2d 227, 233 (D.C. 2006) (holding that there is "no occasion to consider or decide whether [the defendant] is 'doing business' in the District of Columbia" where service occurred outside of the District); Gorman, 293 F.3d at 514 ("[w]here the basis for obtaining jurisdiction over a foreign corporation is § 13-334(a) . . . a plaintiff who serves the corporation by mail outside the district is foreclosed from benefitting from the statute's jurisdictional protection") (internal quotation marks omitted). Accordingly, Plaintiff cannot ground general jurisdiction over Unity upon D.C. Code § 13-334.

      **b.    Unity Is Not "Doing Business"**
                **in the District of Columbia**

Even if Unity had been physically served with process within this District, it still would not be subject to general jurisdiction under § 13-334 because Unity is not "doing business in the District." General jurisdiction under D.C. Code § 13-334 "is only permissible if the defendant's business contacts with [the District of Columbia] are 'continuous and systematic,'" Gorman, 293 F.3d at 510 (quoting Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 415 (1984) (quoting Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 438 (1952))), and "substantial" in nature. Id. There are no allegations here as to Unity that even begin to meet this standard.

The "doing business" test "requires an examination of the frequency and volume of the [defendants'] transactions with District [of Columbia] residents." AGS Int'l Servs.

14

S.A. v. Newmont USA Ltd., 346 F. Supp. 2d 64, 74 (D.D.C. 2004) (quoting Gorman, 293 F.3d at 513) (alteration in original). When the injury complained of by the Plaintiff is unrelated to the forum, the Plaintiff's jurisdictional burden under § 13-334 is "fairly extensive." Hughes v. A.H. Robins Co., 490 A.2d 1140, 1149-51 (D.C. 1985) (holding that defendant's continuous solicitation of sales in the District, $3.2 million in revenue from sales in the District, advertising in the District, and sending of marketing letters to doctors in the District were not sufficient to support "doing business" jurisdiction).

The Complaint makes only the most conclusory and general allegations regarding Unity's purported jurisdictional contacts with this District. These allegations are not sufficient, individually or in the aggregate, to make a prima facie showing of jurisdiction under D.C. Code § 13-334.

First, the Complaint alleges that Unity "does business in the Americas (including the United States), . . . ." (Compl. ¶ 4.) This allegation merely parrots the legal conclusion of "doing business," and alleges no contacts whatsoever with the District of Columbia, as opposed to "the Americas (including the United States)," an allegation so geographically nonspecific as to span two continents. Such an allegation provides no basis for asserting jurisdiction here. Fasolyak, 2007 WL 2071644, at *3 (prima facie showing of personal jurisdiction must be grounded in "specific facts" and "cannot be based on mere conclusory allegations").

Second, while the Complaint alleges that Unity "entered into a contract with defendant RTI International in this District" (Compl. ¶ 7), an allegation of a single

15

isolated commercial transaction is insufficient to show the kind of "substantial" and "continuous and systematic" contacts necessary to make out "doing business" under § 13-334, see Gorman, 293 F.3d at 510, particularly when this allegation contains no specification as to the amount or subject-matter of the contract or when it allegedly was made.

    Third, the Complaint alleges that Unity has "established employee Mike Fiacco . . . as the company point of contact in the United States and this District." (Compl. ¶ 4.) In fact, at the time this lawsuit was filed,[7] Mr. Fiacco had been gone from Unity's employ for nearly a year (and for several years previously had been based variously in Dubai, in Amman, Jordan and in Iraq, but never the District of Columbia), and Unity did not have any employee established as a "point of contact" in the District of Columbia.[8] (Stephen Decl. ¶ 3.)

    Fourth, the Complaint alleges that Unity "maintains a website in the United States and this District in order to obtain business." (Compl. ¶ 5.) In fact, Unity's website is

---

[7]  "Under District of Columbia law, personal jurisdiction is determined as of the commencement of an action." Roz Trading Ltd v. Zeromax Group, Inc., 517 F. Supp. 2d 377, 384 (D.D.C. 2007); see also In re Orshansky, 804 A.2d 1077, 1091-92 (D.C. 2002).

[8]  In ruling on a Rule 12(b)(2) motion, the Court need not treat Plaintiff's claims as true where they are directly contradicted by an affidavit. Kopff, 425 F. Supp. 2d at 81.

16

hosted on a server found in Singapore — not in the District of Columbia, or even in the United States. (Stephen Decl. ¶ 4.) Moreover, the mere accessibility of Unity's website by users within the District is not sufficient even to establish "minimum contacts" with the forum, let alone the "continuous and systematic" contacts necessary to establish that Unity is "doing business" in the District. FC Inv. Group LC v. IFX Markets Ltd., 479 F. Supp. 2d 30, 36 (D.D.C. 2007) (the "mere accessibility of the defendants' websites . . . does not establish the necessary minimum contact with this forum") (internal quotation marks omitted).

In addition, even a simple inspection of Unity's website (URL *www.unityresourcesgroup.com*) makes clear that it is entirely "passive" and lacking any of the features that courts have held sufficient to support personal jurisdiction based upon a defendant's Internet "presence." See Atlantigas Corp. v. Nisource, Inc., 290 F. Supp. 2d 34, 51 (D.D.C. 2003) (distinguishing between "passive" websites that are "merely informational in nature" and "active" websites "whereby the defendant actually transacts business of a systematic and continuous nature with customers in the District of Columbia through the website"). Unity's website serves only to provide information and includes no interactive features (such as online forms, tools for purchasing goods or

17

services, or other mechanisms) of the sort that have been held to support personal jurisdiction. (Stephen Decl. ¶ 4.)[9]

Finally, the Complaint alleges that Unity "directly and continuously solicits business from the United States Government via a website called "BuyUSA.gov," and more generally that Unity "routinely solicits business in the United States and this District." (Compl. ¶¶ 5, 7.) These allegations are insufficient for several reasons.

To begin with, like the Complaint's allegations regarding Unity's own website, the allegation regarding "BuyUSA.gov" fails to support a finding of personal jurisdiction because simple inspection of the Unity listing on the "BuyUSA.gov" website shows that it likewise is passive and merely informational. See Atlantigas Corp., 290 F. Supp. 2d at 51. Moreover, under the District of Columbia's "government contacts" exception to personal jurisdiction, it is well-established that "contacts with federal agencies and instrumentalities located in the District of Columbia will not give rise to personal jurisdiction." Fasolyak, 2007 WL 2071644, at *10 (internal quotation marks omitted); see also Fandel v. Arabian Am. Oil Co., 345 F.2d 87, 88-89 (D.C. Cir. 1965) (maintenance of six-room office in District staffed by five employees insufficient to

---

[9]    The Court may take judicial notice of the degree of interactivity of a website. Oldham v. U.S., No. 01-1410, 2002 WL 850205, at *2 (D. Or. Mar. 21, 2002). (Appendix of Cases, Exh. D.)

18

confer personal jurisdiction where purpose of office was to maintain contacts with United States government). Lastly, solicitation of business, in and of itself, is insufficient to provide a basis for personal jurisdiction over a defendant. Landell v. Northern Pac. Ry. Co., 98 F. Supp. 479, 482 (D.D.C. 1951); see also Ghanem v. Kay, 624 F. Supp. 23, 24-25 (D.D.C. 1984) (holding mere solicitation insufficient under the D.C. long-arm statute, and thus a fortiori insufficient under the more demanding showing needed to establish "doing business").

Thus, in sum, there would be no basis to hold that Unity is "doing business" in the District under § 13-334 even if Unity had been served within the District, and Unity plainly was not.

**B.      There is No Basis For Exercising**
         **Specific Jurisdiction Over Unity**

There is no allegation in the Complaint that even purports to provide any basis for an assertion of specific jurisdiction over Unity in this matter, except perhaps Plaintiff's previously-noted allegation that "Unity . . . entered into a contract with Defendant RTI International in this district." (Compl. ¶ 7.) In fact, Unity executed no such contract with RTI in the District of Columbia. (Stephen Decl. ¶ 5.) Even if credited, however, this allegation provides no foundation for the exercise of specific jurisdiction over Unity.

The District of Columbia "long-arm" statute, D.C. Code § 13-423, contains two provisions relating to jurisdiction over tort claims, § 13-423(a)(3) and § 13-423(a)(4). Both of these provisions by their own terms require that the Defendant have "caus[ed]

tortious injury in the District of Columbia." The Complaint alleges no tortious injury in the District of Columbia, and these provisions accordingly cannot provide a basis for exercising specific jurisdiction over Unity.

The "long-arm" statute also provides for "personal jurisdiction over a person . . . as to a claim for relief <u>arising from the person's</u> -- (1) transacting any business in the District of Columbia. . . ." (emphasis added). However, § 13-423(b) clearly provides that "only a claim for relief <u>arising from</u> acts enumerated in this section may be asserted" based on the jurisdictional authority of the long-arm statute. <u>Willis</u> v. <u>Willis</u>, 655 F.2d 1333, 1336 (D.C. Cir. 1981) (holding that § 13-423(b) operates as a "bar to claims unrelated to the acts forming the basis for personal jurisdiction"). Thus, in order to establish personal jurisdiction under D.C. Code § 13-423(a)(1),

> "a plaintiff must demonstrate that: (1) the defendant transacted business in the District of Columbia; (2) the claim arose from the business transacted in the District; (3) the defendant had minimum contacts with the District; and (4) the Court's exercise of personal jurisdiction would not offend 'traditional notions of fair play and substantial justice.'"

<u>FC Inv. Group LC</u>, 479 F. Supp. 2d at 38 (citing <u>Atlantigas Corp.</u>, 290 F. Supp. 2d at 43). "Because the 'arising from' requirement serves to ensure that states do not exceed their powers under the due process clause . . . it has been strictly enforced by courts in this jurisdiction." <u>Bayles</u> v. <u>K-Mart Corp.</u>, 636 F. Supp. 852, 854 (D.D.C. 1986) (internal citation omitted).

Notably, while the Complaint here alleges that Unity and RTI entered into some unspecified contract in this District, it never alleges that this supposed contract was one

20

that had any connection to the events in Baghdad from which the Plaintiff's purported claims arise. But even if Plaintiff had alleged that this contract supposedly made in the District were somehow connected to the alleged events in Baghdad, it still would have been insufficient to create long-arm jurisdiction over tort claims arising from the incident Plaintiff alleges.

The Plaintiff alleges that Unity employees, acting in Baghdad, Iraq, caused the death of Plaintiff's decedent while providing services to RTI International's staff in Iraq. (Compl. ¶¶ 9, 12-15.) On their face, such tort claims clearly "arise" from alleged actions and occurrences in Iraq, rather than from the making of any contract between Unity and RTI. Such tort claims cannot find a jurisdictional basis in an alleged contract between strangers to the Plaintiff that allegedly was executed in the District of Columbia. See Gowens v. Dyncorp, 132 F. Supp. 2d 38, 42 (D.D.C. 2001) (long-arm jurisdiction inappropriate because wrongful discharge, fraud and other claims asserted against government contractor by one of its employees were not sufficiently connected to contractor's agreement with United States Government); cf. Gonzalez, 891 A.2d at 231 n.6 (personal jurisdiction lacking because "[t]he present dispute . . . cannot be said to arise under the 1996 maintenance contract [containing a District of Columbia choice-of-forum clause], since it is a tort claim rather than a breach of contract claim").

Moreover, Plaintiff does not allege any "substantial connection" between the alleged Unity-RTI contract and the District of Columbia, such as is required to show that the alleged contract constitutes sufficient "minimum contacts" with the forum. See

21

Helmer v. Doletskaya, 393 F.3d 201, 207 (D.C. Cir. 2004) (holding that a contract formed with a District of Columbia resident in the District to purchase an apartment in Moscow did not have the requisite "substantial connection with the District of Columbia" when "the contemplated future consequences of the contract took place in Russia"); Schutter v. Herskowitz, No. 06-1846, 2007 WL 1954416, at *3 (D.D.C. July 5, 2007) (minimum contacts lacking where contract executed in District of Columbia had no "'substantial connection' with the District of Columbia" because, inter alia, it "dealt exclusively with business and property interests in Pennsylvania"). (Appendix of Cases, Exh. E.)

In sum, because the Plaintiff's claims lack a "substantial connection" to any alleged Unity contacts with the District of Columbia, there is no basis for exercising long-arm jurisdiction over Unity here. Shoppers Food Warehouse v. Moreno, 746 A.2d 320, 335 (D.C. 2000).

**C.      Exercising Personal Jurisdiction Over Unity
         Would Contravene Due Process In Any Event**

For the exercise of personal jurisdiction to be permissible under the Due Process Clause, the defendant not only must have sufficient contacts with the forum to support either general or specific jurisdiction, but defendant's conduct and connection with the forum State also must be "such that he should reasonably anticipate being haled into court there." See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291, 297 (1980). This reasonableness inquiry is warranted as to the exercise of both general and

22

specific jurisdiction.  See Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 573 (2d Cir. 1996); Bayles, 636 F. Supp. at 855-56 (applying reasonableness factors in rejecting claims of both specific and general jurisdiction).

Even if Unity were deemed to have the "contacts" to support general or specific jurisdiction, there is no basis for Unity — a corporation organized and headquartered thousands of miles and oceans away from this District — to have reasonably anticipated being haled into court in this District for claims over an alleged incident in Baghdad involving a Baghdad resident, brought by the claimed representatives of the decedent's Baghdad estate.  The exercise of personal jurisdiction here would therefore violate the principles of due process even if it were somehow permissible under the jurisdictional statutes of the District of Columbia.

## CONCLUSION

For the foregoing reasons, Unity respectfully requests that its motion to dismiss be granted in all respects.

Dated:  March 28, 2008

23

Respectfully submitted,

CHADBOURNE & PARKE LLP

By_____/s/ David T. Blonder_____
        William S. D'Amico (Bar No. 2694)
        David T. Blonder (Bar No. 501602)
    Attorneys for Defendant
        Unity Resources Group Pte. Ltd.
    1200 New Hampshire Avenue, N.W.
    Washington, D.C.  20036
    Tel. (202) 974-5600
    Fax (202) 974-5602

Of Counsel:

Robert A. Schwinger
    (Bar admission to this Court pending)
CHADBOURNE & PARKE LLP
30 Rockefeller Plaza
New York, NY  10112
Tel.  (212) 408-5100
Fax  (212) 541-5369

Daniel J. Greenwald III
CHADBOURNE & PARKE LLC
City Tower I
Sheikh Zayed Road
P.O. Box 23927
Dubai
United Arab Emirates
Tel:  +971 (4) 331-6123
Fax  +971 (4) 331-0844

24

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

ESTATE OF MARANI AWANIS MANOOK,

Plaintiff,

-against-

UNITY RESOURCES GROUP and RTI
INTERNATIONAL,

Defendants.

Civil Case No. 1:08-cv-00096 (PLF)

Hon. Paul L. Friedman

## DECLARATION OF JINSON STEPHEN

JINSON STEPHEN hereby declares, under penalty of perjury under the laws of
the United States of America, as follows:

1.    I am the Finance Manager for Defendant Unity Resources Group Pte.
Ltd. ("Unity"), and am based at Unity's offices in Dubai, United Arab Emirates. I make
this Declaration on the basis of my personal knowledge, in support of Unity's motion to
dismiss the first amended complaint in this action for insufficient service of process and
lack of personal jurisdiction.

2.    Unity is a corporation that is organized under the laws of Singapore, and
has its principal offices in Dubai, United Arab Emirates.

3.    I have seen that the original complaint in this action dated January 17,
2008, as well as the subsequent first amended complaint, which alleges that Unity "has
established employee Mike Fiacco … as the company point of contact in the United
States and th[e] District [of Columbia]." This is incorrect. At the time this action was
filed, Mr. Fiacco had been gone from Unity's employ for nearly a year, and Unity had
not established <u>any</u> employee as a "point of contact" in the District of Columbia.

Indeed, for several years prior to the filing of this lawsuit, Mr. Fiacco had been based in

Dubai, in Amman, Jordan, and in Iraq while working for Unity, but never in the District

of Columbia.

     4.  Unity's website, www.unityresourcesgroup.com, is hosted on a server that

is physically located in Singapore.  Unity's website is passive in nature, serving merely

to provide information regarding Unity.  The website lacks any "interactive" features

such as online forms or electronic commerce tools.

     5.  The contract documents pursuant to which Unity provides certain security

services to Defendant RTI International in Iraq were executed by Unity in Dubai.

     I declare under penalty of perjury under the laws of the United States of America

that the forgoing is true and correct.

     Executed on March 27, 2008.

 

_____

Jinson Stephen

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ESTATE OF MARANI AWANIS MANOOK, | |
| Plaintiff, | Civil Case No. 1:08-cv-00096 (PLF) |
| -against- | |
| UNITY RESOURCES GROUP and RTI INTERNATIONAL, | |
| Defendants. | Hon. Paul L. Friedman |

## DECLARATION OF KERRY POWDRILL

KERRY POWDRILL hereby declares, under penalty of perjury under the laws of the United States of America, as follows:

1.  I am the Office Manager for Defendant Unity Resources Group Pte. Ltd. ("Unity"), and am based at Unity's offices in Dubai, United Arab Emirates.  I make this Declaration on the basis of my personal knowledge, in support of Unity's motion to dismiss the first amended complaint in this action for insufficient service of process and lack of personal jurisdiction.

2.  On or about February 25, 2008, a DHL package was delivered by DHL to the offices of Unity Resources Group FZCO, an affiliated entity of defendant Unity that is organized under Dubai law, whose offices are located at F20, Dubai Airport Free Zone, P.O. Box 121026, Dubai, United Arab Emirates.  The DHL package was then forwarded to defendant Unity's offices at Al Murooj Rotana Hotel and Suites, Office No. 7, P.O. Box 117546, Dubai, United Arab Emirates.  The DHL package label bore the name of defendant Unity but listed only a former address where Unity no longer maintained any offices.

3.   I opened the package and reviewed its contents.  The package contained certain papers relating to this lawsuit, including a summons, complaint, and first amended complaint.  However, the DHL package did not bear or contain any indication whatsoever that it had been sent by the Clerk of the United States District Court for the District of Columbia, or by the Court itself.  There was no return address, official envelope, or transmittal letter to indicate such a sender.  Attached hereto as Exhibit A is a copy of the DHL package label including the delivery and return addresses that were actually provided.

I declare under penalty of perjury under the laws of the United States of America that the forgoing is true and correct.

Executed on March 27, 2008.

_____
Kerry Powdrill

2

# EXHIBIT A



IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ESTATE OF MARANI AWANIS MANOOK, | |
| Plaintiff, | Civil Case No. 1:08-cv-00096 (PLF) |
| -against- | |
| UNITY RESOURCES GROUP and RTI INTERNATIONAL, | Hon. Paul L. Friedman |
| Defendants. | |

## DECLARATION OF THOMAS E. BUTLER

THOMAS E. BUTLER hereby declares, under penalty of perjury, as follows:

1. I am a member of the law firm of Chadbourne & Parke LLP, attorneys for Defendant Unity Resources Group Pte., Ltd. ("Unity") in the above-referenced action, based in the firm's New York office. I make this declaration on the basis of personal knowledge, in support of Unity's motion, pursuant to Rule 12(b)(2) and 12(b)(5) of the Federal Rules of Civil Procedure, to dismiss the first amended complaint in this action (the "Complaint") for improper service of process and lack of personal jurisdiction.

2. A copy of the Complaint is attached hereto as Exhibit A.

3. A copy of a printout of the electronic docket sheet in this action, obtained from PACER, is attached hereto as Exhibit B.

4. A copy of the Notice of Service that was filed by counsel for Plaintiff on or about March 4, 2008 in this action is attached hereto as Exhibit C. A copy of an earlier purported "proof of service," filed by Plaintiff's counsel on or about February 27, 2008, is attached hereto as Exhibit D.

5.   On or about February 25, 2008, I contacted the Clerk's office to ask about the manner in which service of process under Fed. R. Civ. P. 4(f)(2)(C)(ii) is handled by that office.  The person to whom I was directed told me that the Clerk's office handles such mailings itself, and does not utilize outside persons or entities to handle such mailings.  I was also told that the Clerk's office makes certain that the Court's address appears on the envelope in which process is dispatched.

I declare, under penalty of perjury, that the foregoing is true and correct. Executed on March 27, 2008.

_____
Thomas E. Butler

# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| Estate of Marani Awanis Manook<br>Hay Al-Ghadeer 706/18/60<br>Baghdad, Iraq<br><br>Plaintiffs,<br><br>v.<br><br>Unity Resources Group<br>First Gulf Bank Building<br>Dubai, United Arab Emirates<br><br>RTI International<br>3040 Cornwallis Road<br>Research Triangle Park, NC 12194<br><br>Defendants. | Case No. 08-0096<br><br>**JURY DEMAND** |

### FIRST AMENDED COMPLAINT

1.      On October 9, 2007, heavily-armed Unity Resources Group mercenaries sent to Iraq by RTI International shot and killed for no reason two women, Marani Awanis Manook and Genevia Jalal Antranick.   This senseless slaughter on October 9, 2007 was only the latest incident in a pattern of egregious misconduct, including killings and woundings by RTI's agent, Unity Resources.  This action seeks compensatory and punitive damages for the estate and family of Marani Awanis Manook.

### PARTIES

2.      Plaintiff is the Estate of Marani Awanis Manook.  Ms. Manook was a resident of Baghdad until she was shot to death by Defendants on October 9, 2007.   She was the mother of three daughters, now left orphans.

3.      Defendants were in Iraq pursuant to and under a contract with the United States Department of State.

4.      Defendant Unity Resources Group does business in the Americas (including the United States), the Middle East, Australia, Asia Pacific and Africa.  Unity Resources Group has established employee Mike Fiacco (email mfiacco@unity resource group.com) as the company point of contact in the United States and this District.

5.      Unity Resources Group maintains a website in the United States and this District in order to obtain business.  Unity Resources Group also directly and continuously solicits business from the United States government via a website service called "BuyUSA.gov."

6.      Unity Resources Group maintains an office designated as "head office" in the First Gulf Bank Building in Dubai, United Arab Emirates.

7.      Reasonable discovery will establish that Unity Resources Group routinely solicits business in the United States and this District.  Reasonable discovery will establish that Unity Resources Group entered into a contract with Defendant RTI International in this District.

8.      Defendant RTI International is an American not-for-profit entity that has offices at 3040 Cornwallis Road, Research Triangle Park, North Carolina and One Metro Center, 701 13th Street, N.W., Washington, D.C. 20005.  Reasonable discovery will establish that RTI International was formed pursuant to North Carolina law.

9.      Defendant Unity Resources Group works as an agent for RTI International in Iraq providing security services as needed.  RTI International directly oversaw and supervised the work performed by Unity Resources Group in Iraq.  Among other things, RTI International drafted the policies and procedures that controlled Unity Resources Group's actions.

## JURISDICTION AND VENUE

10.     This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1332 (diversity jurisdiction); 28 U.S.C. § 1350 (Alien Tort Statute); and 28 U.S.C. § 1367 (supplemental jurisdiction).

11.     Venue is proper pursuant to 28 U.S.C. § 1391(a)(3) and § 1391(b)(2) and (b)(1).

## DEFENDANTS KILLED AND INJURED PLAINTIFF AND ANOTHER WOMAN ON OCTOBER 9, 2007

12.     On or about October 9, 2007, Defendants killed Marani Awanis Manook and Genevia Jalal Antranick on Karrada Street in Baghdad, Iraq.

13.     Ms. Manook was driving her car down Karrada Street when Unity Resources Group personnel opened fire on her vehicle, from over 90 meters away, spraying the car with at least 40 bullets, 17 of which hit Ms. Manook.  Both Ms. Manook and Ms. Antranick, the passenger in the front seat, were killed in the hail of gunfire.

14.     Unity Resources Group began firing at Ms. Manook's vehicle without any provocation.  Neither Ms. Manook nor any of her passengers posed any threat to the Unity Resources personnel.

15.     The identities of the Unity Resources Group mercenaries who killed and injured civilians on or about October 9, 2007, are known to Defendants and able to be discovered in this litigation.

## DEFENDANTS PERMITTED EXCESSIVE AND UNNECESSARY USE OF DEADLY FORCE

16.     Although both Defendants knew that Unity Resource Group mercenaries deployed in Iraq were continually operating in an unsafe and aggressive manner, neither Defendant exercised any oversight or control over the heavily-armed personnel.

17.     Defendants permitted a pattern and practice of recklessness in the use of deadly force to flourish among its personnel in Iraq.

18.     There were multiple past incidents that put both Defendants on notice that they needed to exercise oversight to prevent killings and injuries.

19.     On or about June 24, 2007, Defendants' agents shot and wounded a civilian on Karrada Street.  Yet Defendants failed to investigate, and failed to take the necessary remedial steps to prevent a reoccurrence of the unjustified violence.

20.     In or around March 2006, Defendants' agents shot and killed a civilian at a security checkpoint.  Yet Defendants failed to investigate, and failed to take the necessary remedial steps to prevent a reoccurrence of the unjustified violence

21.     Reasonable discovery is likely to produce evidence of additional killings, additional injuries, and additional failures to investigate by Defendants.

22.     Reasonable discovery is likely to produce evidence that Defendants significantly and consistently underreported excessive use of force by its agents.  Reasonable discovery is likely to provide evidence that Defendants have not taken effective steps to discipline those mercenaries who acted with unnecessary violence.

## DEFENDANTS' ACTIONS HARM THE UNITED STATES

23.     Defendants are in Iraq at the behest of the United States Department of State. Their actions are supposed to be assisting the United States' effort to rebuild local communities. Instead, their actions are creating serious and substantial difficulties for the United States' diplomatic relationship with Iraq.

24.     Unity Resources and RTI International are harming the United States by their repeated and consistent failures to act in accord with the law of war, the laws of the United States, and international law.

25.     Defendants have earned millions of dollars from the United States government during the years 2001 to 2006.

### DAMAGES

26.     Defendants are jointly and severally liable for killing Marani Awanis Manook.

27.     Defendants intentionally and knowingly agreed to and did work in concert with each other.  To the extent that any particular act relevant to this action was perpetrated by one Defendant, the other Defendant confirmed and ratified the same.

28.     Defendants are liable for the pain and suffering caused to Ms. Manook, as well as the pain and suffering caused to the family members.

29.     Plaintiff seeks compensatory and punitive damages in an amount in excess of the jurisdictional amount set forth in 28 U.S.C. §1332.  Plaintiff also seeks any and all additional remedies (such as attorneys' fees) available under law and equity.

### COUNT ONE
### CLAIM UNDER THE ALIEN TORT STATUTE – WAR CRIMES

30.     All preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

31.     Defendants' acts were deliberate, willful, intentional, wanton, malicious and oppressive and constitute war crimes.

32.     Defendants' acts took place during a period of armed conflict.

33.     Defendants committed war crimes against Ms. Manook, causing injury to Plaintiff.

34.     Defendants are liable for their conduct that constitutes war crimes.

35.     Defendants' misconduct caused grave and foreseeable injuries to Plaintiff.

**COUNT TWO**
**CLAIM UNDER THE ALIEN TORT STATUTE – CIVIL CONSPIRACY TO COMMIT**
**WAR CRIMES**

36.     All preceding paragraphs are hereby incorporated by reference as if fully set forth

herein.

37.     Defendants conspired with each other to commit war crimes.

38.     Defendants' acts took place during a period of armed conflict.

39.     Defendants' misconduct caused grave and foreseeable injuries to Plaintiff.

**COUNT THREE**
**CLAIM UNDER THE ALIEN TORT STATUTE – AIDING AND ABETTING**
**WAR CRIMES**

40.     All preceding paragraphs are hereby incorporated by reference as if fully set forth

herein.

41.     Defendants' acts aided and abetted the commission of war crimes against Ms.

Manook.

42.     Defendants' acts took place during a period of armed conflict.

43.     Defendants' misconduct caused grave and foreseeable injuries to Plaintiff.

**COUNT FOUR**
**ASSAULT AND BATTERY**

44.     All preceding paragraphs are hereby incorporated by reference as if fully set forth

herein.

45.     Defendants unlawfully intended to and did inflict immediate injury upon Ms.

Manook.

46.     Defendants intentionally assaulted, battered, and made other offensive contacts; and aided and abetted the assaulting, battering and offensively contacting, of Ms. Manook.

47.     Ms. Manook did not consent to the offensive contacts.  Ms. Manook feared for her personal safety and felt threatened by Defendants' actions.

48.     Defendants committed the assaults and batteries.

49.     Defendants' acts caused grave and foreseeable damages to Plaintiff.

**COUNT FIVE**
**CIVIL CONSPIRACY TO ASSAULT AND BATTERY**

50.     All preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

51.     Defendants unlawfully intended to and did conspire to commit an assault and battery upon Ms. Manook.

52.     Defendants' acts caused grave and foreseeable damages to Plaintiff.

**COUNT SIX**
**AIDING AND ABETTING AN ASSAULT AND BATTERY**

53.     All preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

54.     Defendants unlawfully intended to and did aid and abet an assault and battery upon Ms. Manook.

55.     Defendants' acts caused grave and foreseeable damages to Plaintiff.

**COUNT SEVEN**
**WRONGFUL DEATH**

56.     All preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

57. Defendants' wrongful acts and omissions caused the death of Marani Awanis Manook.

58. Defendants set the conditions, directly and/or indirectly facilitated, ordered, acquiesced, confirmed, ratified and/or conspired with others to act in the manner that led to the wrongful deaths.

59. The death of Marani Awanis Manook was the foreseeable result of Defendants' wrongful acts and omissions.

## COUNT EIGHT
## CIVIL CONSPIRACY TO CAUSE WRONGFUL DEATH

60. All preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

61. Defendants' wrongful acts and omissions caused the death of Marani Awanis Manook.

62. Defendants conspired with each other to set the conditions, directly and/or indirectly facilitated, ordered, acquiesced, confirmed, ratified and/or conspired with others to act in the manner that led to the wrongful deaths.

63. The death of Marani Awanis Manook was a foreseeable result of Defendants' wrongful acts and omissions.

## COUNT NINE
## AIDING AND ABETTING WRONGFUL DEATH

64. All preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

65. Defendants' wrongful acts and omissions caused the death of Marani Awanis Manook.

66.     Defendants set the conditions, directly and/or indirectly facilitated, ordered, acquiesced, confirmed, ratified and/or conspired with others to act in the manner that led to the wrongful deaths.

67.     The death of Marani Awanis Manook was a foreseeable result of Defendants' wrongful acts and omissions.

## COUNT TEN
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

68.     All preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

69.     Defendants intentionally inflicted severe emotional distress by way of extreme and outrageous conduct on Plaintiff.

70.     Defendants set the conditions, directly and/or indirectly facilitated, ordered, acquiesced, confirmed, ratified and/or conspired with others to inflict emotional distress on Plaintiff.

71.     Defendants' acts caused grave and foreseeable injuries to Plaintiff.

## COUNT ELEVEN
## CIVIL CONSPIRACY TO INFLICT EMOTIONAL DISTRESS

72.     All preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

73.     Defendants conspired with each other to intentionally inflict severe emotional distress by way of extreme and outrageous conduct on Plaintiff.

74.     Defendants set the conditions, directly and/or indirectly facilitated, ordered, acquiesced, confirmed, ratified and/or conspired with others to inflict emotional distress on Plaintiff.

75. Defendants' acts caused grave and foreseeable injuries to Plaintiff.

## COUNT TWELVE
## AIDING AND ABETTING THE INTENTIONAL INFLICTION
## OF EMOTIONAL DISTRESS

76. All preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

77. Defendants aided and abetted the intentional infliction of emotional distress.

78. Defendants' acts caused grave and foreseeable injuries to Plaintiff.

## COUNT THIRTEEN
## NEGLIGENCE

79. All preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

80. Defendants breached a duty to Plaintiff and others present at the scene of the killings and infliction of bodily injury.

81. Defendants' negligence directly and foreseeably harmed Plaintiff.

## COUNT FOURTEEN
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

82. All preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

83. Defendants negligently inflicted severe emotional distress on Plaintiff.

84. Defendants' negligence directly and foreseeably harmed Plaintiffs.

## COUNT FIFTEEN
## NEGLIGENT HIRING, TRAINING AND SUPERVISION

85. All preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

86. Defendants acted negligently and directly harmed Plaintiff by:

(a)     failing to take the appropriate steps in hiring proper personnel to perform

services;

(b)     failing to properly screen personnel before their hiring;

(c)     failing to train and supervise personnel properly;

(d)     failing to investigate allegations of wrongdoing;

(e)     failing to reprimand for wrongful actions; and

(f)     negligently permitting repeated lawlessness by employees.

87.     Defendants' negligence directly and foreseeably harmed Plaintiff.

### COUNT SIXTEEN
### CIVIL CONSPIRACY

88.     All preceding paragraphs are hereby incorporated by reference as if fully set forth

herein.

89.     Defendants took overt acts (set forth above in detail) pursuant to and in

furtherance of the common scheme.

90.     Defendants are liable for all of the unlawful acts performed by members of the

conspiracy (war crimes, assault and battery, intentional infliction of emotional distress, negligent

infliction of emotional distress, wrongful death and negligent hiring, training and supervision)

because they set the condition, directly or indirectly facilitated, ordered, acquiesced, confirmed,

ratified and or conspired with others to commits the unlawful acts.

91.     Defendants knowing participation in the conspiracy to perform unlawful acts

caused grave and foreseeable damages to Plaintiff.

### PRAYER FOR DAMAGES

92.     Plaintiff is the authorized representative and entitled to any and all remedies

available to them as a result of the conduct alleged herein, including, but not limited to:

      (a)     compensatory damages for death, physical, mental and economic injuries;

      (b)     punitive damages in an amount sufficient to strip Defendants of all of the revenue and profits earned from their pattern of constant misconduct and callous disregard for human life; and

      (c)     any attorneys' fees and costs permitted by law.


Date: February 11, 2008

                                    _____/s/ William T. O'Neil_____

Susan L. Burke (D.C. Bar # 414939)
William T.  O'Neil (D.C. Bar # 426107)
Elizabeth M. Burke
Katherine R. Hawkins
BURKE O'NEIL LLC
4112 Station Street
Philadelphia, PA 19127
Telephone:    (215) 971-5058
Facsimile:    (215) 482-0874

Michael Ratner
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
Telephone:    (212) 614-6439
Facsimile:    (212) 614-6499

Shereef Hadi Akeel
AKEEL & VALENTINE, P.L.C.
Suite 910
888 West Big Beaver Road
Troy, Michigan 48084-4736
Telephone (248) 269-9595
Fax (248) 269-9119


*Counsel for Plaintiff*

# EXHIBIT B

JURY, TYPE-B

# U.S. District Court
## District of Columbia (Washington, DC)
### CIVIL DOCKET FOR CASE #: 1:08-cv-00096-PLF

ESTATE OF MARANI AWANIS MANOOK v. UNITY
RESOURCES GROUP et al
Assigned to: Judge Paul L. Friedman
Cause: 28:1331 Fed. Question

Date Filed: 01/17/2008
Jury Demand: Plaintiff
Nature of Suit: 320 Assault Libel &
Slander
Jurisdiction: Federal Question

**Plaintiff**

**ESTATE OF MARANI AWANIS
MANOOK**

represented by **William T. O'Neil**
BURKE O'NEIL LLC
1718 20th Street
Washington, DC 20009
(202) 232-5504
Fax: (202) 232-5513
Email: woneil@burkeoneilllc.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**UNITY RESOURCES GROUP**

represented by **David T. Blonder**
CHADBOURNE & PARKE
1200 New Hampshire Avenue, NW
Suite 300
Washington, DC 20036
(202) 974-5731
Email: dblonder@chadbourne.com
*ATTORNEY TO BE NOTICED*

**William S D'Amico**
CHADBOURNE & PARKE LLP
1200 New Hampshire Avenue, NW
Washington, DC 20036
(202) 974-5616
Email: wd'amico@chadbourne.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**RTI INTERNATIONAL**

represented by **Eric W. Bloom**
WINSTON & STRAWN LLP

1700 K Street, NW
Washington, DC 20006
(202) 282-5000
Fax: (202) 371-5950
Email: ebloom@winston.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Karen Sugden Manley**
WINSTON & STRAWN LLP
1700 K Street, NW
Washington, DC 20006
(202) 282-5826
Email: kmanley@winston.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 01/17/2008 | 1 | COMPLAINT against UNITY RESOURCES GROUP, RTI INTERNATIONAL ( Filing fee $ 350, receipt number 4616009689) filed by ESTATE OF MARANI AWANIS MANOOK. (Attachments: # 1 Civil Cover Sheet)(td, ) (Entered: 01/22/2008) |
| 01/17/2008 | | Summons (2) Issued as to UNITY RESOURCES GROUP, RTI INTERNATIONAL. (td, ) (Entered: 01/22/2008) |
| 01/31/2008 | 2 | MINUTE ORDER that plaintiff file an amended complaint that includes in the caption plaintiff's full residence address on or before February 11, 2008.Signed by Judge Paul L. Friedman on January 31, 2008. (MA) (Entered: 01/31/2008) |
| 01/31/2008 | | Set/Reset Deadlines: Amended Complaint due by 2/11/2008. (mm) (Entered: 01/31/2008) |
| 02/11/2008 | 3 | FIRST AMENDED COMPLAINT against UNITY RESOURCES GROUP, RTI INTERNATIONAL filed by ESTATE OF MARANI AWANIS MANOOK.(nmw, ) (Entered: 02/12/2008) |
| 02/12/2008 | 4 | AFFIDAVIT REQUESTING FOREIGN MAILING by ESTATE OF MARANI AWANIS MANOOK. (Attachments: # 1 Supplement)(O'Neil, William) (Entered: 02/12/2008) |
| 02/13/2008 | 5 | Unopposed MOTION for Extension of Time to *Answer or Otherwise Plead* by RTI INTERNATIONAL (Attachments: # 1 Text of Proposed Order)(Manley, Karen) (Entered: 02/13/2008) |
| 02/13/2008 | 6 | NOTICE of Appearance by Eric W. Bloom on behalf of RTI INTERNATIONAL (Bloom, Eric) (Entered: 02/13/2008) |
| 02/13/2008 | 7 | NOTICE of Appearance by Karen Sugden Manley on behalf of RTI INTERNATIONAL (Manley, Karen) (Entered: 02/13/2008) |
| | | |

| 02/14/2008 | | MINUTE ORDER granting 5 defendant RTI's unopposed motion for extension of time up to and including March 28, 2008 to answer. Signed by Judge Paul L. Friedman on Febraury 14, 2008. (MA) (Entered: 02/14/2008) |
|---|---|---|
| 02/14/2008 | | Set/Reset Deadlines: Defendant RTI's Answer due by 3/28/2008. (mm) (Entered: 02/19/2008) |
| 02/19/2008 | | REQUEST for the Clerk from plaintiff to effect service of one copy of the summons and complaint upon UNITY RESOURCES GROUP by DHL, pursuant to FRCP 4(f)(2)(C)(ii). (td, ) (Entered: 02/19/2008) |
| 02/27/2008 | 8 | ENTERED IN ERROR.....RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. UNITY RESOURCES GROUP served on 2/25/2008, answer due 3/17/2008 (O'Neil, William) Modified on 2/28/2008 (nmw, ). (Entered: 02/27/2008) |
| 02/28/2008 | | NOTICE OF CORRECTED DOCKET ENTRY: Docket Entry 8 Summons Returned Executed was entered in error and counsel was instructed to refile said pleading with appropriate cover/title page. (nmw, ) (Entered: 02/28/2008) |
| 03/04/2008 | 9 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. (Attachments: # 1 Exhibit 1 to Notice of Service, # 2 Exhibit 2 to Notice of Service, # 3 Exhibit 3 to Notice of Service, # 4 Exhibit 4 to Notice of Service, # 5 Exhibit 5 to Notice of Service, # 6 Exhibit 6 to Notice of Service)(O'Neil, William) (Entered: 03/04/2008) |
| 03/13/2008 | 10 | NOTICE of Appearance by David T. Blonder on behalf of UNITY RESOURCES GROUP (Blonder, David) (Entered: 03/13/2008) |
| 03/13/2008 | 11 | Unopposed MOTION for Extension of Time to *Answer or Otherwise Plead* by UNITY RESOURCES GROUP (Attachments: # 1 Text of Proposed Order)(Blonder, David) (Entered: 03/13/2008) |
| 03/14/2008 | | MINUTE ORDER granting 11 defendant Unity Resources Group's unopposed motion for extension of time up to and including March 28, 2008 to respond to the first amended complaint. Signed by Judge Paul L. Friedman on March 14, 2008.(MA) (Entered: 03/14/2008) |
| 03/14/2008 | 12 | NOTICE of Appearance by William S D'Amico on behalf of UNITY RESOURCES GROUP (D'Amico, William) (Entered: 03/14/2008) |
| 03/17/2008 | | Set/Reset Deadlines: Answer due by 3/28/2008. (lin, ) (Entered: 03/17/2008) |

| **PACER Service Center** | | |
|---|---|---|
| **Transaction Receipt** | | |
| 03/27/2008 14:44:04 | | |
| **PACER Login:** | cp0002 | **Client Code:** | 18576.010 |
| **Description:** | Docket Report | **Search Criteria:** | 1:08-cv-00096-PLF |

| Billable Pages: | 2 | Cost: | 0.16 |

# EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| Estate of Marani Awanis Manook | ) | |
| Plaintiff, | ) | Case No. 08-0096 (PF) |
| | ) | |
| v. | ) | |
| | ) | |
| Unity Resources Group and RTI International, | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

**NOTICE OF SERVICE**

Plaintiff the Estate of Marani Awanis Manook files this Notice of Service of the Summons, Complaint and First Amended Complaint upon Defendant Unity Resources Group. On January 17, 2008, the Clerk of the Court for the United States District Court for the District of Columbia ("the Clerk") issued a summons to Defendant Unity Resources Group. See Exhibit 1. On February 19, 2008, Plaintiffs requested that the Clerk of the Court prepare the summons, complaint and first amended complaint for service by DHL, pursuant to Fed.R.Civ.P. 4(f)(2)(c)(ii). See Exhibit 2 (Docket Sheet). The clerk's prepared package was delivered to DHL by Plaintiff's counsel on February 21, 2008, and a copy of the International Shipment Waybill prepared by the Clerk's office is attached as Exhibit 3. The DHL tracking detail shows that the clerk's package was delivered to Defendant Unity Resources Group on February 25, 2008, and signed for by "Carry" at the Unity Resources Group office in Dubai, United Arab Emirates. See Exhibit 4.

Separately, counsel for Plaintiff served additional copies of the summons, complaint and first amended complaint by Federal Express on Gordon Conroy and Michael Pridden, both executives with Unity Resources Group in Dubai.  These packages were delivered to these individuals on February 24, 2008, and signed for by "P. Karry." See Exhibits 5 and 6.

Respectfully submitted,

Date:  March 4, 2008

　　　　　　　　　　　　/s/ William T. O'Neil
Susan L. Burke (D.C. Bar # 414939)
William T.  O'Neil (D.C. Bar # 426107)
Elizabeth M. Burke
Katherine R. Hawkins
BURKE O'NEIL LLC
4112 Station Street
Philadelphia, PA 19127
Telephone:     (215) 971-5058
Facsimile:     (215) 482-0874

Michael Ratner
CENTER FOR CONSTITUTIONAL
RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
Telephone:     (212) 614-6439
Facsimile:     (212) 614-6499

Shereef Hadi Akeel
AKEEL & VALENTINE, P.L.C.
Suite 910
888 West Big Beaver Road
Troy, Michigan 48084-4736
Telephone (248) 269-9595
Fax (248) 269-9119

*Counsel for Plaintiff*

2

**Exhibit 1**

AO 440 (Rev. DC - September 2003) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
## District of Columbia

Estate of Marani Awanis Manook

**SUMMONS IN A CIVIL CASE**

V.

Unity Resources Group and RTI International

CASE

Case: 1:08-cv-00096
Assigned To : Friedman, Paul L.
Assign. Date : 1/17/2008
Description: PI/Malpractice

TO: (Name and address of Defendant)

Unity Resources Group
First Gulf Bank Building
Dubai, United Arab Emirates

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

William T. O'Neil
Burke O'Neil LLC
1718 20th Street, N.W.
Washington, D.C. 20009

an answer to the complaint which is served on you with this summons, within _____20_____ days after service
of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for
the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this
Court within a reasonable period of time after service.

NANCY MAYER-WHITTINGTON                     JAN 17 2008

CLERK                                        DATE

(By) DEPUTY CLERK

**Exhibit 2**

JURY, TYPE-B

# U.S. District Court
## District of Columbia (Washington, DC)
### CIVIL DOCKET FOR CASE #: 1:08-cv-00096-PLF

ESTATE OF MARANI AWANIS MANOOK v. UNITY
RESOURCES GROUP et al
Assigned to: Judge Paul L. Friedman
Cause: 28:1331 Fed. Question

Date Filed: 01/17/2008
Jury Demand: Plaintiff
Nature of Suit: 320 Assault Libel &
Slander
Jurisdiction: Federal Question

**Plaintiff**

**ESTATE OF MARANI AWANIS
MANOOK**

represented by **William T. O'Neil**
BURKE O'NEIL LLC
1718 20th Street
Washington, DC 20009
(202) 232-5504
Fax: (202) 232-5513
Email: woneil@burkeoneilllc.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**UNITY RESOURCES GROUP**

**Defendant**

**RTI INTERNATIONAL**

represented by **Eric W. Bloom**
WINSTON & STRAWN LLP
1700 K Street, NW
Washington, DC 20006
(202) 282-5000
Fax: (202) 371-5950
Email: ebloom@winston.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Karen Sugden Manley**
WINSTON & STRAWN LLP
1700 K Street, NW
Washington, DC 20006
(202) 282-5826
Email: kmanley@winston.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 01/17/2008 | 1 | COMPLAINT against UNITY RESOURCES GROUP, RTI INTERNATIONAL ( Filing fee $ 350, receipt number 4616009689) filed by ESTATE OF MARANI AWANIS MANOOK. (Attachments: # 1 Civil Cover Sheet)(td, ) (Entered: 01/22/2008) |
| 01/17/2008 | | Summons (2) Issued as to UNITY RESOURCES GROUP, RTI INTERNATIONAL. (td, ) (Entered: 01/22/2008) |
| 01/31/2008 | 2 | MINUTE ORDER that plaintiff file an amended complaint that includes in the caption plaintiff's full residence address on or before February 11, 2008.Signed by Judge Paul L. Friedman on January 31, 2008. (MA) (Entered: 01/31/2008) |
| 01/31/2008 | | Set/Reset Deadlines: Amended Complaint due by 2/11/2008. (mm) (Entered: 01/31/2008) |
| 02/11/2008 | 3 | FIRST AMENDED COMPLAINT against UNITY RESOURCES GROUP, RTI INTERNATIONAL filed by ESTATE OF MARANI AWANIS MANOOK.(nmw, ) (Entered: 02/12/2008) |
| 02/12/2008 | 4 | AFFIDAVIT REQUESTING FOREIGN MAILING by ESTATE OF MARANI AWANIS MANOOK. (Attachments: # 1 Supplement)(O'Neil, William) (Entered: 02/12/2008) |
| 02/13/2008 | 5 | Unopposed MOTION for Extension of Time to *Answer or Otherwise Plead* by RTI INTERNATIONAL (Attachments: # 1 Text of Proposed Order)(Manley, Karen) (Entered: 02/13/2008) |
| 02/13/2008 | 6 | NOTICE of Appearance by Eric W. Bloom on behalf of RTI INTERNATIONAL (Bloom, Eric) (Entered: 02/13/2008) |
| 02/13/2008 | 7 | NOTICE of Appearance by Karen Sugden Manley on behalf of RTI INTERNATIONAL (Manley, Karen) (Entered: 02/13/2008) |
| 02/14/2008 | | MINUTE ORDER granting 5 defendant RTI's unopposed motion for extension of time up to and including March 28, 2008 to answer. Signed by Judge Paul L. Friedman on Febraury 14, 2008. (MA) (Entered: 02/14/2008) |
| 02/14/2008 | | Set/Reset Deadlines: Defendant RTI's Answer due by 3/28/2008. (mm) (Entered: 02/19/2008) |
| 02/19/2008 | | REQUEST for the Clerk from plaintiff to effect service of one copy of the summons and complaint upon UNITY RESOURCES GROUP by DHL, pursuant to FRCP 4(f)(2)(C)(ii). (td, ) (Entered: 02/19/2008) |
| 02/27/2008 | 8 | ENTERED IN ERROR.....RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. UNITY RESOURCES GROUP served on 2/25/2008, answer due 3/17/2008 (O'Neil, William) Modified on 2/28/2008 (nmw, ). (Entered: 02/27/2008) |

| 02/28/2008 | | NOTICE OF CORRECTED DOCKET ENTRY: Docket Entry 8 Summons Returned Executed was entered in error and counsel was instructed to refile said pleading with appropriate cover/title page. (nmw, ) (Entered: 02/28/2008) |

| PACER Service Center | | |
| --- | --- | --- |
| Transaction Receipt | | |
| 03/04/2008 10:13:10 | | |
| PACER Login: | bp1549 | Client Code: | 28-0 |
| Description: | Docket Report | Search Criteria: | 1:08-cv-00096-PLF |
| Billable Pages: | 2 | Cost: | 0.16 |

# Exhibit 3

DHL Express (USA), Inc., 1200 South Pine Island Road, Plantation, Florida 33324    **Shipper's Copy**

DHL EXPRESS

Process and Track your shipment online: http://www.dhl.com
1-800-CALL-DHL in USA only

**INTERNATIONAL SHIPMENT WAYBILL** (Non-negotiable)

ORIGIN   HGR

DESTINATION CODE   3

12/11/07

CMG CMG

863 9551 631

0809551631

**1 Payer account number and shipment value protection details**

Charge to ☐ Shipper ☐ Receiver ☐ 3rd Party

Payer Account No.

Shipment Value Protection (see reverse)
☐ Yes Declared Value for Carriage (in US $)

☐ Cash
☐ Check
☐ Credit Card
Not all payment options are available in all countries.

**2 From (Shipper)**

Shipper's Account Number    Contact Name
733150919

Shipper's Reference (up to 35 characters)
08CV916PLF

Company Name
XYZ BUSINESS CENTERS

Address
INKAGE
1899 18TH ST NW
WASHINGTON DC

Postal/ZIP Code (required)
200599210

Phone, Fax, or E-mail (required)
(202) 387-0031

**3 To (Receiver)**

Company Name
Unity Resources Group

Contact Person

Delivery Address DHL Cannot Deliver to a PO Box
First Gulf Bank Building

Dubai, United Arab Emirates
Country

Postal/ZIP Code (required)    Phone, Fax, or E-mail (required)

**4 Shipment Details**

Total number of packages

Total Weight
If DHL Express Document packaging used, enter XD.

Dimensions (in inches)
Pieces    Length  Width  Height
@    ×  ×
@    ×  ×
@    ×  ×

lbs

**5 Full Description of Contents**
Give Content and Quantity

**6 Dutiable Shipments Only (Customs required)**
Attach the original and four copies of a Proforma or Commercial Invoice.
Export License No./Symbol (if applicable)    Receiver's VAT/GST or Shipper's EIN/SSN

Schedule B Number / Harmonized Code (if applicable)

Declared Value for Customs (in US $)
(as on commercial/proforma invoice)

ABS TRANSACTION NUMBER

Destination Duties/Taxes - If left blank, Receiver pays duties/taxes.
☐ Receiver  ☐ Shipper  ☐ Other_____

TYPE OF EXPORT
☐ Permanent  ☐ Repair/Return  ☐ Temporary

The commodities, technology or software is being exported from the U.S. in compliance with the U.S. Bureau of Export Administration. Diversion to countries contrary to U.S. law prohibited.

**7 Shipper's Authorization (signature required)**

I/we agree that DHL's standard terms apply to this shipment and limit DHL's liability for loss or damage to U.S. $100. The Warsaw Convention may also apply (see reverse). I/we authorize DHL to complete other documents necessary to export this shipment. I/we understand that Shipment Value Protection is available on request. I/we agree to pay an extra charge for an extra charge, for an extra charge. I/we understand that DHL DOES NOT TRANSPORT CASH.

Signature (required)                                    Date    /    /

**8 Products & Services**

Not all products or service options are available in/from all locations.
☐ International Express
☐ Envelope
☐ Non-Dutiable (International Document Service)
☐ Dutiable (Worldwide Priority Express)
☐ Other_____

Service Options (extra charges may apply)
☐ Saturday Delivery  ☐ Saturday Pickup
☐ Delivery Notification  ☐ Signature Required

Other_____
Global Mail
☐ Int. Priority  ☐ Int. Standard  ☐ IPA  ☐ ISAL
☐ Dom. Priority  ☐ Dom. Standard

Other_____

DIMENSIONAL/CHARGEABLE WEIGHT    lbs

SERVICES    CHARGES

Drop Box #    TOTAL

TRANSPORT COLLECT STICKER No.

PAYMENT DETAILS (Check, Card No.)
No.:
Type    Expires
Auth.

PICKED UP BY
Route No.
Time    Date

**Exhibit 4**

DHL: Track details

Page 1 of 1

Case 4:08-cv-00096-LRLF   Document 15-45   Filed 03/28/2008   Page 33 of 41



# Track results detail

▶ Print this page

## Tracking results detail for 8639551631

**Tracking summary**

| | | |
|---|---|---|
| Current Status | ✓ | **Shipment delivered.** |
| Delivered on | | 2/25/2008  11:56 am |
| Delivered to | | |
| Signed for by | | **CARRY** |

## Tracking history

| Date and Time | | Status | Location |
|---|---|---|---|
| 2/25/2008 | 11:56 am | Shipment delivered. | Dubai, United Arab Emirates |
| | 9:50 am | With delivery courier. | Dubai, United Arab Emirates |
| | 8:26 am | Arrived at DHL facility. | Dubai, United Arab Emirates |
| | 8:00 am | Depart Facility | Express Logistics Centre, Dubai, United Arab Emirates |
| | 7:04 am | Processed at DHL Location. | Express Logistics Centre, Dubai, United Arab Emirates |
| 2/24/2008 | 6:30 am | Arrived at DHL facility. | Dubai, United Arab Emirates |
| | 7:11 am | Address information needed; contact DHL Customer Service. | Dubai, United Arab Emirates |
| 2/23/2008 | 11:14 pm | Transit through DHL facility | Express Logistics Centre, Dubai, United Arab Emirates |
| 2/22/2008 | 10:55 am | Depart Facility | New York City Gateway, NY |
| | 9:27 am | Transit through DHL facility | New York City Gateway, NY |
| | 8:14 am | Depart Facility | Wilmington, OH |
| | 3:04 am | In transit. | Wilmington, OH |
| | 12:08 am | Transit through DHL facility | Allentown Hub, PA |
| 2/21/2008 | 8:51 pm | Depart Facility | Rockville, MD |
| | 8:20 pm | Processed at DHL Location. | Rockville, MD |
| | 6:06 pm | Shipment picked up | Rockville, MD |

**Ship From:**
Rockville, MD
United States

**Ship To:**
Dubai, United Arab Emirates

**Shipment Information:**
Ship date: 2/21/2008
Pieces: 1
Total weight: 1 lb *
Ship Type:
Shipment Reference:
Service:
Special Service:
Description:

Tracking detail provided by DHL: 2/27/2008, 10:50:13 am pt.

You are authorized to use DHL tracking systems solely to track shipments tendered by or for you to DHL. Any other use of DHL tracking systems and information is strictly prohibited.

**\* Note on weight:**
The weights displayed on this website are the weights provided when the shipment was created. Actual chargeable weights may be different and will be provided on invoice.

http://track.dhl-usa.com/Track_PrintRslts.asp

2/27/2008

**Exhibit 5**



FedEx Express
Customer Support Trace
3875 Airways Boulevard
Module H, 4th Floor
Memphis, TN 38116

U.S. Mail: PO Box 727
Memphis, TN 38194-4643

Telephone: 901-369-3600

February 27, 2008

Dear Customer:

The following is the proof-of-delivery for tracking number **792008818406**.

## Delivery Information:

| | | | |
|---|---|---|---|
| **Status:** | Delivered | **Delivery location:** | DAFZA F20 UNITY RESOURCES DUBAI |
| **Signed for by:** | P.KARRY | **Delivery date:** | Feb 24, 2008 12:29 |
| **Service type:** | Priority Envelope | | |



## Shipping Information:

| | | | |
|---|---|---|---|
| **Tracking number:** | 792008818406 | **Ship date:** | Feb 20, 2008 |
| | | **Weight:** | 1.0 lbs. |

**Recipient:**
GORDON CONROY
UNITY RESOURCES GROUP
FIRST GULF BANK BUILDING
DUBAI AE

**Shipper:**
WILLIAM O'NEIL
BURKE O'NEIL LLC
1718 20TH STREET NW
WASHINGTON, DC 20009 US

**Reference**   26-0

Thank you for choosing FedEx Express.

FedEx Worldwide Customer Service
1.800.GoFedEx 1.800.463.3339

**Exhibit 6**



FedEx Express
Customer Support Trace
3875 Airways Boulevard
Module H, 4th Floor
Memphis, TN 38116

U.S. Mail: PO Box 727
Memphis, TN 38194-4643

Telephone: 901-369-3600

February 27, 2008

Dear Customer:

The following is the proof-of-delivery for tracking number **799275897378**.

## Delivery Information:

| | | | |
|---|---|---|---|
| Status: | Delivered | Delivery location: | DAFZA F20 UNITY RESOURCES DUBAI |
| Signed for by: | P.KARRY | Delivery date: | Feb 24, 2008 12:29 |
| Service type: | Priority Envelope | | |



## Shipping Information:

| | | | |
|---|---|---|---|
| Tracking number: | 799275897378 | Ship date: | Feb 20, 2008 |
| | | Weight: | 1.0 lbs. |

**Recipient:**
MICHAEL PRIDDEN
UNITY RESOURCES GROUP
FIRST GULF BANK BUILDING
DUBAI AE

**Shipper:**
WILLIAM O'NEIL
BURKE O'NEIL LLC
1718 20TH STREET NW
WASHINGTON, DC 20009 US

**Reference**

26-0

Thank you for choosing FedEx Express.

FedEx Worldwide Customer Service
1.800.GoFedEx 1.800.463.3339

# EXHIBIT D



# Track results detail

▶ Print this page

## Tracking results detail for 8639551631

**Tracking summary**

| | |
|---|---|
| Current Status | ✓ **Shipment delivered.** |
| Delivered on | 2/25/2008  11:56 am |
| Delivered to | |
| Signed for by | **CARRY** |

## Tracking history

| Date and Time | | Status | Location |
|---|---|---|---|
| 2/25/2008 | 11:56 am | Shipment delivered. | Dubai, United Arab Emirates |
| | 9:50 am | With delivery courier. | Dubai, United Arab Emirates |
| | 8:26 am | Arrived at DHL facility. | Dubai, United Arab Emirates |
| | 8:00 am | Depart Facility | Express Logistics Centre, Dubai, United Arab Emirates |
| | 7:04 am | Processed at DHL Location. | Express Logistics Centre, Dubai, United Arab Emirates |
| 2/24/2008 | 6:30 am | Arrived at DHL facility. | Dubai, United Arab Emirates |
| | 7:11 am | Address information needed; contact DHL Customer Service. | Dubai, United Arab Emirates |
| 2/23/2008 | 11:14 pm | Transit through DHL facility | Express Logistics Centre, Dubai, United Arab Emirates |
| 2/22/2008 | 10:55 am | Depart Facility | New York City Gateway, NY |
| | 9:27 am | Transit through DHL facility | New York City Gateway, NY |
| | 8:14 am | Depart Facility | Wilmington, OH |
| | 3:04 am | In transit. | Wilmington, OH |
| | 12:08 am | Transit through DHL facility | Allentown Hub, PA |
| 2/21/2008 | 8:51 pm | Depart Facility | Rockville, MD |
| | 8:20 pm | Processed at DHL Location. | Rockville, MD |
| | 6:06 pm | Shipment picked up | Rockville, MD |

| Ship From: | Ship To: | Shipment Information: |
|---|---|---|
| Rockville, MD | Dubai, United Arab Emirates | Ship date: 2/21/2008 |
| United States | | Pieces: 1 |
| | | Total weight: 1 lb * |
| | | Ship Type: |
| | | Shipment Reference: |
| | | Service: |
| | | Special Service: |
| | | Description: |

Tracking detail provided by DHL: 2/27/2008, 10:50:13 am pt.

You are authorized to use DHL tracking systems solely to track shipments tendered by or for you to DHL. Any other use of DHL tracking systems and information is strictly prohibited.

**\* Note on weight:**
The weights displayed on this website are the weights provided when the shipment was created. Actual chargeable weights may be different and will be provided on invoice.



FedEx Express
Customer Support Trace
3875 Airways Boulevard
Module H, 4th Floor
Memphis, TN 38116

U.S. Mail: PO Box 727
Memphis, TN 38194-4643

Telephone: 901-369-3600

February 27, 2008

Dear Customer:

The following is the proof-of-delivery for tracking number **792008818406**.

---

**Delivery Information:**

| | | | |
|---|---|---|---|
| Status: | Delivered | Delivery location: | DAFZA F20 UNITY RESOURCES |
| | | | DUBAI |
| Signed for by: | P.KARRY | Delivery date: | Feb 24, 2008 12:29 |
| Service type: | Priority Envelope | | |



---

**Shipping Information:**

| | | | |
|---|---|---|---|
| Tracking number: | 792008818406 | Ship date: | Feb 20, 2008 |
| | | Weight: | 1.0 lbs. |

**Recipient:**
GORDON CONROY
UNITY RESOURCES GROUP
FIRST GULF BANK BUILDING
DUBAI AE

**Reference**

**Shipper:**
WILLIAM O'NEIL
BURKE O'NEIL LLC
1718 20TH STREET NW
WASHINGTON, DC 20009 US

26-0

Thank you for choosing FedEx Express.

FedEx Worldwide Customer Service
1.800.GoFedEx 1.800.463.3339



FedEx Express
Customer Support Trace
3875 Airways Boulevard
Module H, 4th Floor
Memphis, TN 38116

U.S. Mail: PO Box 727
Memphis, TN 38194-4643

Telephone: 901-369-3600

February 27, 2008

Dear Customer:

The following is the proof-of-delivery for tracking number **799275897378**.

## Delivery Information:

| | | | |
|---|---|---|---|
| Status: | Delivered | Delivery location: | DAFZA F20 UNITY RESOURCES |
| | | | DUBAI |
| Signed for by: | P.KARRY | Delivery date: | Feb 24, 2008 12:29 |
| Service type: | Priority Envelope | | |



## Shipping Information:

| | | | |
|---|---|---|---|
| Tracking number: | 799275897378 | Ship date: | Feb 20, 2008 |
| | | Weight: | 1.0 lbs. |

**Recipient:**
MICHAEL PRIDDEN
UNITY RESOURCES GROUP
FIRST GULF BANK BUILDING
DUBAI AE

**Shipper:**
WILLIAM O'NEIL
BURKE O'NEIL LLC
1718 20TH STREET NW
WASHINGTON, DC 20009 US

**Reference**          26-0

Thank you for choosing FedEx Express.

FedEx Worldwide Customer Service
1.800.GoFedEx 1.800.463.3339

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ESTATE OF MARANI AWANIS MANOOK,<br><br>                                  Plaintiff,<br><br>               -against-<br><br>UNITY RESOURCES GROUP and RTI<br>INTERNATIONAL,<br><br>                                  Defendants. | Civil Case No. 1:08-cv-00096 (PLF)<br><br>Hon. Paul L. Friedman |

**APPENDIX OF UNREPORTED CASES CITED IN THE
MEMORANDUM OF LAW IN SUPPORT OF MOTION OF
DEFENDANT UNITY RESOURCES GROUP PTE. LTD.
TO DISMISS THE FIRST AMENDED COMPLAINT**

Defendant Unity Resources Group Pte. Ltd. ("Unity") respectfully submits the

attached copies of the following unreported cases cited in its memorandum of law in

support of its motion to dismiss the First Amended Complaint.

**Case**                                                                                            **Exhibit**

Export-Import Bank of U.S. v. Asia Pulp & Paper Co., No. 03 Civ.
     8554, 2005 WL 1123755 (S.D.N.Y. May 11, 2005) ............................... A

Fasolyak v. The Cradle Society, Inc., No. 06-01126, 2007 WL
     2071644 (D.D.C. July 19, 2007) ............................................................B

NSM Music, Inc. v. Villa Alvarez, No. 02 C 6482, 2003 WL 685338
     (N.D. Ill. Feb. 25, 2003).........................................................................C

Oldham v. U.S., No. 01-1410, 2002 WL 850205 (D. Or. Mar. 21, 2002)...... D

Schutter v. Herskowitz, No. 06-1846, 2007 WL 1954416
     (D.D.C. July 5, 2007)..............................................................................E

Stiefel Labs., Inc. v. Galenium USA, LLC, No. 05-23108-CIV,
     2006 WL 1548006 (S.D. Fla. Apr. 11, 2006)..........................................F

Dated:     March 28, 2008

                              CHADBOURNE & PARKE LLP

                              By_____/s/ David T. Blonder_____
                                   William S. D'Amico (Bar No. 2694)
                                   David T. Blonder (Bar No. 501602)
                                 Attorneys for Defendant Unity
                                   Resources Group Pte. Ltd.
                                 1200 New Hampshire Avenue, N.W.
                                 Washington, D.C.  20036
                                 Tel. (202) 974-5600
                                 Fax  (202) 974-5602

Of Counsel:

Robert A. Schwinger
   (Bar admission to this Court pending)
CHADBOURNE & PARKE LLP
30 Rockefeller Plaza
New York, NY  10112
Tel.  (212) 408-5100
Fax  (212) 541-5369

Daniel J. Greenwald III
CHADBOURNE & PARKE LLC
City Tower I
Sheikh Zayed Road
P.O. Box 23927
Dubai
United Arab Emirates
Tel:  +971 (4) 331-6123
Fax  +971 (4) 331-0844

# EXHIBIT A



Not Reported in F.Supp.2d                                                                                Page 1
Not Reported in F.Supp.2d, 2005 WL 1123755 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**Export-Import Bank of U.S. v. Asia Pulp & Paper Co., Ltd.
S.D.N.Y.,2005.
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
EXPORT-IMPORT BANK OF THE UNITED STATES,
Plaintiff,
v.
ASIA PULP & PAPER CO., LTD., PT Indah Kiat Pulp &
Paper Tbk, PT Pabrik Kertas Tjiwi Kimia Tbk, and PT
Pindo Deli Pulp & Paper Mills, Defendants.
**No. 03Civ.8554(LTS)(JCF).**

May 11, 2005.

*MEMORANDUM AND ORDER*

FRANCIS, Magistrate J.
   **\*1** The Export-Import Bank of the United States
("Ex-Im") brings this action under the Federal Debt
Collection Procedures Act (the "FDCPA"), 28 U.S.C. §
3001*etseq.,* to recover a judgment on debts allegedly due
to it from Asia Pulp & Paper Co., Ltd. ("APP") and its

| Subsidiary | Transaction No. |
|---|---|
| Indah Kiat | AP071268 |
| | AP069195 |
| | AP070292 |
| | AP067169 |
| Tjiwi Kimia | AP069899 |
| | AP070294 |
| Pindo Deli | AP071220 |

   The plaintiff commenced this action by filing a
Summons and Complaint on October 29, 2003.
(Declaration of Kenneth Puhala dated January 18, 2005
("Puhala Decl."), Exh. B, Docket No. 1). Ex-Im has not
asserted, however, that it attempted to serve this pleading

subsidiaries PT Indah Kiat Pulp & Paper Tbk ("Indah
Kiat"), PT Pabri Kertas Tjiwi Kimia Tbk ("Tjiwi Kimia"),
and PT Pindo Deli Pulp & Paper Mills ("Pindo Deli")
(collectively, the "Subsidiaries"). Ex-Im asserts that it has
attempted to serve the Subsidiaries by international
registered mail, return receipt requested, and that it has
successfully served them by DHL, an international courier
service. Ex-Im now moves to declare service valid
*nuncprotunc,* and for leave to serve its Second Amended
Complaint by DHL. For the reasons set forth below, the
plaintiff's motion is granted.

*Background*

   Ex-Im is a corporation organized and existing under
federal law as an agency of the United States of America.
*See*12 U.S.C. § 635. In this action, it asserts claims
against APP and the Subsidiaries for breach of loan and
guarantee agreements. (Declaration of Sarah E. Light
dated Dec. 30, 2004 ("Light Decl."), attached to Plaintiff's
Notice of Motion, ¶ 3). These agreements are embodied in
various transaction documents which contain service of
process provisions:

   Service Provisions
   Light Decl., Exh. A, ¶ 12.03 at
US-000637-38
   Light Decl., Exh. B, ¶ 8.4 at
US-000113-14
   Light Decl., Exh. C, ¶ 4(b) at
US-000503
   Light Decl., Exh. D, ¶ 11.03 at
US-000024
   Light Decl., Exh. J, ¶ 12.03 at
US-000375-76
   Light Decl., Exh. K, ¶ 4(b) at
US-000264
   Light Decl., Exh. O, ¶ 13 at
US-000159
on any of the Subsidiaries. (Specially Appearing
Indonesian Defendants' Memorandum in Opposition to
Plaintiff's Motion ("Def.Memo.") at 1-2). Rather, on
February 11, 2004, it informed the Court that it planned to
file a First Amended Complaint and requested an
extension of certain Court deadlines "in light of ...
complex rules for service of process."(Puhala Decl., Exh.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 2
Not Reported in F.Supp.2d, 2005 WL 1123755 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

A). The Court granted Ex-Im's request on Febrary 17, 2004. (Puhala Decl., Exh. B).

Ex-Im claims that it initially "attempted service of the First Amended Complaint on each of the Subsidiaries ... in accordance with the [parties'] agreements ... by international registered mail, return receipt requested, dispatched by the Clerk of [the] Court." (Light Decl., ¶ 4). Ex-Im acknowledges, though, that it did not receive return receipts. (Light Decl., ¶ 4). Subsequently, Ex-Im itself tried to serve the Subsidiaries by international mail, return receipt requested, using the address of the parent company and co-defendant, APP. (Plaintiff's Memorandum of Law In Support of Motion to Declare Service Valid *NuncProTunc,* and For Leave To Serve the Second Amended Complaint By DHL ("Pl.Memo.") at 10). But these packages were either "refused or [ ] otherwise undeliverable." (Light Decl., ¶ 4).

**\*2** Ex-Im then obtained addresses for the Subsidiaries from the World Wide Web, though these differed from the addresses contained in the parties' agreements. (Light Decl., ¶ 4; Pl. Memo. at 10). Copies of the Summons and First Amended Complaint were successfully delivered to the Subsidiaries at these addresses by the international courier service DHL. (Light Decl., ¶ 4).

*Discussion*

Ex-Im seeks an order under either Rule 4(f)(2)(C)(ii) or Rule 4(f)(3) of the Federal Rules of Civil Procedure declaring service on the Indonesian Subsidiaries valid *nuncprotunc* and granting leave to serve the Second Amended Complaint.

A. *Rule 4(f)(2)(C)(ii)*

Rule 4(f)(2)(C)(ii) provides that service may be effected outside the United States "by ... any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the party to be served."This Rule is limited to instances where "there is no internationally agreed means of service or the applicable international agreement allows other means of service."Fed.R.Civ.P. 4(f)(2). In addition, service cannot be effected under this Rule in a manner "prohibited by the law of the foreign country."Fed.R.Civ.P. 4(f)(2)(C). Ex-Im contends that its efforts at service both by international mail and by DHL courier were effective under this rule.

As a threshold matter, Indonesia is not party to any applicable treaty or agreement. *SeeDee-K Enterprises Inc. v. Heveafil Sdn. Bhd.,* 174 F.R.D. 376, 378 (E.D.Va.1997); *Graval v. P.T. Bakrie & Brothers,* 986 F.Supp. 1326, 1329 n. 2 (C.D.Cal.1996); United States Department of State, Treaties in Force, *available athttp://www.state.gov/s/l* (site last visited May 11, 2005). However, the attempted service by mail was ineffective here both because, in some instances, the service was initiated by the plaintiff rather than by the Clerk of the Court, and because the Subsidiaries never executed return receipts. (Light Decl., ¶ 4 & Pl. Memo. at 10).*SeeMarine Trading Ltd. v. Naviera Comercial Naylamp S.A.,* 879 F.Supp. 389, 392 (S.D.N.Y.1995) (service by mail not effective where no receipt returned).

The plaintiff has furnished proof of service by DHL. (Light Decl., Exhs. M, N, P, Q, R, S, T, U, V). Again, however, the Clerk of the Court was not responsible for dispatching the summons and complaint, as required by Rule 4(f)(2)(C)(ii). Furthermore, because Indonesia appears to prohibit service by international courier, service would not have been effective under this subsection in any event.[FN1]

> FN1. The parties have not addressed whether an international courier like DHL even qualifies as a "form of mail" within the terms of Rule 4(f)(2)(C)(ii).*Cf.In re Cinar Corp. Securities Litigation,* 186 F.Supp.2d 279, 304 (E.D.N.Y.2002) (questioning, without deciding, whether an international courier constituted a "postal channel" under the Hague Convention provisions for service). That question need not be decided here, however, as there are other grounds for finding service inadequate under that subsection of the Rule.

A court determines foreign law as a matter of law. *SeeVishipco Line v. Chase Manhattan Bank,* 660 F.2d 854, 859-60 (2d Cir.1981); *Norex Petroleum Ltd. v. Access Industries, Inc.,* 304 F.Supp.2d 570, 577 (S.D.N.Y.2004). In that determination, the court "may consider any relevant material or source."Fed. R. Civ. P. 44.1.

The Subsidiaries have presented the Declaration of Marx Andryan, an Indonesian attorney (Declaration of Marx Andryan dated Jan. 14, 2005 ("Andryan Decl.")), and §§ 6.1 and 6.2 of the "Guidelines to Carrying Out of the Task and Administration of the Court-Book II, the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                          Page 3
Not Reported in F.Supp.2d, 2005 WL 1123755 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

Supreme Court of the Republic of Indonesia" (the "Guidelines"). (Andryan Decl., Exh. A). The Guidelines state that "[s]ummons to parties to attend a court proceeding must be delivered by a bailiff."(Guidelines, § 6.1). Furthermore, according to Mr. Andryan, under Indonesian law, "service of legal proceedings commenced outside of Indonesia must and can only be effected through an Indonesian court-appointed bailiff."(Andryan Decl., ¶ 3). Accordingly, the Subsidiaries argue that "[s]ervice by private parties, including service by mail or courier service is prohibited and ineffective as it offends Indonesian law and sovereignty."(Andryan Decl., ¶ 3).

**\*3** The plaintiff, in turn, submits a flyer published by the United States Department of State entitled "Indonesia Judicial Assistance," (the "DOS Circular") (attached as Exh. W to Supplemental Declaration of Sarah E. Light dated Jan. 25, 2005). The DOS Circular states that "[s]ervice of process can be effected in Indonesia [by][i]nternational registered mail, return receipt requested."(DOS Circular, ¶ entitled "Service of Process"). But the flyer also states that "it is not an opinion on any aspect of ... foreign ... law," and that "[t]he U.S. Department of State does not intend by [its] contents ... to take a position on any aspect of any pending litigation."(DOS Circular, ¶ entitled "Proviso"). Therefore, the DOS Circular cannot be considered an authoritative source on Indonesian law for the purposes of this motion.

The caselaw is divided. The plaintiff argues that _Resource Ventures, Inc. v. Resources Management International, Inc., 42 F.Supp.2d 423, 430 (D.Del.1999),_ and _Dee-K, 174 F.R.D. at 381-82,_ hold that service of process by mail and by international courier are not prohibited methods of service in Indonesia. The _Resource Ventures_ opinion, however, was grounded on an Indonesian lawyer's affidavit which stated that a bailiff in Indonesia may serve process by registered mail. _Resource Ventures, 42 F.Supp.2d at 430._ In light of this, the court found that service of process by international registered mail was "not prohibited." _Id._ Here, Ex-Im has proffered no such evidence.

Similarly, in _Dee-K_ the court relied on an Indonesian lawyer's declaration that "service by any form of mail, including DHL, with or without a return receipt, is not effective service under Indonesian law."_174 F.R.D. at 381-82_ (internal quotations omitted). But, the court reasoned, "[a]n ineffective or invalid form of service is not necessarily a prohibited form of service."_Id. at_

_381._And, since "explicit permission for a form of return receipt mail service is not required by [_Rule 4(f) ](2)(C)(ii)_ ]," the court held that service in Indonesia by DHL was valid. _Id._

Here, by contrast, Mr. Andryan explicitly states in his affidavit that "service by mail or courier service is _prohibited"_ in Indonesia. (Andryan Decl., ¶ 3) (emphasis added). That construction is supported by the Guidelines, at least in the translation that has been submitted to the Court. If a summons "must" be delivered by a bailiff, then alternative forms of service are indeed prohibited, even if no penalty is imposed on the party who initiates them. It would be a different situation if Indonesian law merely provided that service "may" be effected by the bailiff; in that circumstance, alternative means of service, while not expressly authorized, would nevertheless not be prohibited. Based on similar evidence, the court in _Graval, 986 F.Supp. at 1329,_ concluded that service by mail could not be made in Indonesia pursuant to _Rule 4(f)(2)(C)(ii)._ There, Indonesian lawyers advised that Indonesian law "prohibits service by mail, including service by mail with a return receipt requested."_Id._

**\*4** In sum, while the authority is divided, the record in this case tips in favor of a determination that service made by mail in Indonesia would not be effective under _Rule 4(f)(2)(C)(ii)._

**B.** _Rule 4(f)(3)_

That conclusion, however, does not preclude a finding that service by mail or DHL may be effective under _Rule 4(f)(3)._ That subsection provides that service may be effected "by other means not prohibited by international agreement as may be directed by the court."As the Ninth Circuit Court of Appeals has observed,

service under _Rule 4(f)(3)_ must be (1) directed by the court; and (2) not prohibited by international agreement. No other limitations are evident from the text. In fact, as long as court-directed and not prohibited by an international agreement, service of process ordered under _Rule 4(f)(3)_ may be accomplished in contravention of the laws of the foreign country.

_Rio Properties, Inc. v. Rio International Interlink, 284 F.3d 1007, 1014 (9th Cir.2002)_ (citation omitted). Nevertheless, a district court may:require parties ... to show that they have reasonably attempted to effectuate service on the defendant(s) and that the circumstances are

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                          Page 4
Not Reported in F.Supp.2d, 2005 WL 1123755 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

such that the district court's intervention is necessary to obviate the need to undertake methods of service that are unduly burdensome or that are untried but likely futile. This threshold requirement, although not expressly provided by [Rule] 4(f)(3) is necessary in order to prevent parties from whimsically seeking alternative means of service and thereby increasing the workload of the courts.

*Ryan v. Brunswick Corp.*, No. 02-CV-0133, 2002 WL 1628933, at *2 (W.D.N.Y. May 31, 2002) (citation omitted). In the interests of comity, a district court exercising its discretion under Rule 4(f)(3) should indeed make "an earnest effort ... to devise a method of communication that is consistent with due process and minimizes offense to foreign law."Fed.R.Civ.P. 4 advisory committee's note, 1993 Amendment. This does not mean, however, that a district court should read Rule 4(f)(3) to require a party to "attempt[ ] every permissible means of service of process before petitioning the court for alternative relief."*Ryan, 2002 WL 1628933, at *2* (citation omitted).

Here, Ex-Im's application is hardly whimsical. It has repeatedly attempted to effect service in the manner provided for in each of the transaction documents, only to be frustrated by the Subsidiaries. For example, two signatory Subsidiaries-Indah Kiat and Tjiwi Kimia-were required to maintain an agent for service of process. Specifically, Indah Kiat irrevocably appointed CT Corporation system as its service agent pursuant to Agreements AP071268 (Light Decl., Exh. A, ¶ 12.03(a) at US-000637), AP069195 (Light Decl., Exh. B, ¶ 8.4 at US-000113), and AP070292 (Light Decl., Exh. C, ¶ 4(b) at US-000503). And, it was required to maintain a service agent in New York at all times pursuant to Agreements AP071268 (Light Decl., Exh. A, ¶ 12.03(d) US-000638), AP070292 (Light Decl., Exh. C, ¶ 4(b) at US-000503), and AP067169 (Light Decl., Exh. D, ¶ 11.03(d) at US-000024). Likewise, Tjiwi Kimia irrevocably appointed CT Corp. as it service agent-and was required to maintain a service agent at all times-pursuant to Agreements AP069899 (Light Decl., Exh. J, ¶ 12.03(a) at US-000375) and AP070294 (Light Decl., Exh K, ¶ 4(b) at US-000264). But, in the words of their counsel, these two "specially appearing Indonesian defendants breached a contractual obligation to maintain an agent."(Transcript of oral argument dated March 23, 2005 at 24).

**\*5** Similarly, two Subsidiaries agreed to service of process by international registered mail, return receipt requested: Indah Kiat consented in Agreement AP069195

FN2 (Light Decl., Exh. B, ¶ 8.4 at US-000113-14), and Pindo Deli consented in Agreement AP071220 (Light Decl., Exh. O, ¶ 13 at US-000159). Yet when the plaintiff tried to serve process at the addresses identified in the parties' agreements, either the defendants failed to return receipts or the packages were undeliverable to those addresses. (Light Decl., ¶ 4 & Pl. Memo. at 10).

FN2. Again, in this agreement, Indah Kiat also agreed to service of process by courier. (Light Decl., Exh. B, ¶ 8.4 at US-000113-14).

In short, the agreements between the parties provided for simple and inexpensive means of service. The Subsidiaries thwarted service under these agreements. It would therefore be unduly burdensome to require Ex-Im to initiate letters rogatory in order to have the pleadings served by a bailiff in Indonesia. The alternative-service by an international courier-has already proven effective. Even if it is technically in violation of Indonesian service requirements, any offense to that country's sovereignty is minimal. Such service is not disruptive, and any party that engages in international transactions must anticipate the use of generally accepted forms of service, especially where it has, through its own actions, frustrated the methods of service provided for in the underlying transaction documents.

*Conclusion*

For the reasons set forth above, the plaintiff's motion to declare service valid *nuncprotunc* and for leave to serve the Second Amended Complaint by DHL international courier is granted.
    SO ORDERED.

S.D.N.Y.,2005.
Export-Import Bank of U.S. v. Asia Pulp & Paper Co., Ltd.
Not Reported in F.Supp.2d, 2005 WL 1123755 (S.D.N.Y.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT B

Slip Copy                                                                                                      Page 1
Slip Copy, 2007 WL 2071644 (D.D.C.)
**(Cite as: Slip Copy)**

C

Fasolyak v. The Cradle Society, Inc.
D.D.C.,2007.
Only the Westlaw citation is currently available.
United States District Court,District of Columbia.
Dmitry FASOLYAK, Plaintiff,
v.
THE CRADLE SOCIETY, INC., Defendant.
**Civil Action No. 06-01126(TFH).**

July 19, 2007.

John David Quinn, Claxton, Sale & Quinn, P.C., Washington, DC, for Plaintiff.
Robert P. Lynch, Macleay, Lynch, Gregg & Lynch, PC, Washington, DC, for Defendant.

### MEMORANDUM OPINION

THOMAS F. HOGAN, Chief Judge.

**\*1** Pending before the Court are two motions filed by the defendant, The Cradle Society, Inc., the first of which requests that this case be dismissed for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) and the second of which seeks a protective order prohibiting the plaintiff, Dmitry Fasolyak, from conducting any discovery, presumably until the Court makes this determination about whether it has personal jurisdiction over the defendant. Also pending before the Court is the plaintiff's Motion to Compel Discovery and Alternative Motion to Compel Rule 26(f) Conference and Motion for Emergency Hearing, which requests that the Court enter an order permitting discovery to proceed immediately and compelling the defendant to attend a scheduling conference. For the reasons set forth below, the Court finds that it lacks personal jurisdiction but that jurisdiction may be appropriate in the United States District Court for the Northen District of Illinois. Accordingly, this case will be transferred to the United States District Court for the Northern District of Illinois pursuant to 28 U.S.C. § 1631.

### BACKGROUND

This case is traveling a road to resolution that involves detours through multiple jurisdictions. The plaintiff is an individual who resides in Maryland and the defendant is a not-for-profit corporation incorporated in Illinois, which also is where its principal office is located. Compl. ¶¶ 1-2. The plaintiff alleges that he and the defendant entered into a contract according to which the defendant agreed to pay the plaintiff a fee for consulting services to establish and coordinate an international adoption program in the Russian Federation for the purpose of placing Russian children with adoptive parents in the United States.[FN1] Compl. ¶¶ 8-11; Rule 16(b) Statement 1 (Plaintiff's Statement of Fact). The plaintiff claims that he set up an office in Moscow for the defendant, identified individuals the defendant could employ to process adoptions in Russia, and assisted to secure accreditation from the Russian government to authorize the defendant to conduct adoptions in that country, among other services performed. Rule 16(b) Statement 2. According to the plaintiff, however, after the Moscow office became operational the defendant engaged in a number of activities that were intended to "circumvent" the plaintiff "to avoid paying his fee" and otherwise interfere with his contract performance, which allegedly culminated in the defendant wrongfully terminating the contract and defaming the plaintiff. Id.; Compl. ¶¶ 92-100, 155. Accordingly, the plaintiff filed the instant lawsuit against the defendant seeking (1) damages for breach of contract, intentional misrepresentation (fraud and deceit), negligent misrepresentation, unjust enrichment, quantum meruit, and tortious interference with prospective economic advantage, (2) an injunction to prevent the defendant from further defaming or disparaging him, and (3) "a full accounting of the operations at the Moscow office and of defendant related to Russian adoptions."Compl. ¶¶ 101-166; Rule 16(b) Statement 3.

FN1. The Agreement between the parties,

Slip Copy
Slip Copy, 2007 WL 2071644 (D.D.C.)
**(Cite as: Slip Copy)**

which is dated January 1, 2004, provides that the defendant would "cause" adoptive families to pay a fee in the amount of $16,500.00. Agreement ¶ 2(a) (Jan. 1, 2004). The Court presumes this fee benefited the defendant, notwithstanding the fact that the fee was to be made payable to a different name, *i.e.,* Alexander Sukharev. *Id.*

**\*2** This is not the first jurisdiction where the plaintiff filed suit, however. The plaintiff originally filed a lawsuit against the defendant in the United States District Court for the District of Maryland, asserting what appear to be the very same claims advanced in the present case. *Fasolyak v. The Cradle Society, Inc.,* No. 06-CV-00622-AW, slip op. at 4 (D. Md. June 14, 2006). On June 15, 2006, Judge Alexander Williams, Jr. issued a Revised Memorandum Opinion in the Maryland case granting the defendant's Motion to Dismiss for lack of personal jurisdiction and indicating the court's intent to transfer the case to the Northern District of Illinois. *Id.* at 1. Judge Williams determined that the contract's place of performance was Russia, the fact that the defendant sent letters, e-mails, and made telephone calls to the plaintiff in Maryland did not establish substantial contacts sufficient to exercise personal jurisdiction over the defendant, the plaintiff failed to prove "to a sufficient degree" that the defendant was ever in Maryland, the acts that caused the alleged injuries occurred in Russia, "the technical fact that Maryland served as the place of contracting is not a sufficient contact ... to have personal jurisdiction over the [d]efendant," and the other factors outlined in *Burger King Corp. v. Rudzewicz,* 471 U.S. 462 (1985), favored jurisdiction in Russia and weighed against the exercise of personal jurisdiction by the court in Maryland. Judge Williams ultimately concluded that "although a choice of law provision is not a part of the contacts analysis from *International Shoe* or *Burger King,* having a choice of law provision weighs in favor of giving jurisdiction over a case to the forum specified by the contract. Here, the parties have

stipulated that the contract should be governed by the law of the state of Illinois, so Illinois would be a more appropriate forum to litigate this dispute."*Fasolyak,* No. 06-CV-00622-AW, at 12.At the plaintiff's request, however, the court eventually dismissed the case rather than transfer it. Meanwhile, the defendant reportedly filed a lawsuit against the plaintiff in an Illinois state circuit court alleging that the plaintiff failed to perform the contract as promised. Pl.'s Mem. of Law In Opp'n to Def .'s Mot. to Dismiss 7-8 [hereinafter "Pl.'s Opp'n Br. ----"].

The case subsequently found its way to this Court on June 21, 2006, when the plaintiff essentially refiled his Complaint in this jurisdiction. The defendant responded to the instant lawsuit in the same fashion that it responded to the previous one filed in Maryland-the defendant moved for dismissal on the ground that, like the federal district court in Maryland, this Court lacks personal jurisdiction over the defendant because the defendant "is a foreign corporation organized under the laws of Illinois, its principal place of business is in the State of Illinois, and the Defendant does not have sufficient minimum contacts with the District of Columbia to establish personal jurisdiction."Def.'s Mot. to Dismiss 1. While the defendant's motion to dismiss was pending before this Court, the plaintiff secured two subpoenas from the United States District Court for the Northern District of Illinois compelling witnesses to appear for depositions and produce specified documents. These subpoenas were the subject of the defendant's pending Motion for Protective Order, which seeks an order from the Court prohibiting all discovery. Def.'s Mot. for Protective Order 3. The plaintiff countered by filing a Motion to Compel Discovery and Alternative Motion to Compel Rule 26(f) Conference and Motion for Emergency Hearing, which, as is self evident, seeks an order compelling the defendant to engage in discovery. Pl.'s Mem. of P. & A. in Supp. of Mot. to Compel 1.

**DISCUSSION**

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 2071644 (D.D.C.)
(Cite as: Slip Copy)

Page 3

## I. The Defendant's Motion To Dismiss

**\*3** Because the question of personal jurisdiction is a threshold inquiry the resolution of which will, *ipso facto,* determine the outcome of the other pending discovery motions, the Court will address that issue first, as indeed it must given that "[j]urisdiction to resolve cases on the merits requires both authority over the category of claim in suit (subject-matter jurisdiction) and authority over the parties (personal jurisdiction), so that the court's decision will bind them."[FN2]*Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 577 (1999).* The plaintiff bears the burden of establishing a factual basis for exercising personal jurisdiction over the non-resident defendant. *Mwani v. Bin Laden,* 417 F.3d 1, 7 (D.C.Cir.2005); *Crane v. New York Zoological Soc'y,* 894 F.2d 454, 456 (D.C.Cir.1990)."In determining whether such a basis exists, factual discrepancies appearing in the record must be resolved in favor of the plaintiff."*Crane,* 894 F.2d at 456. Because no evidentiary hearing was held, the plaintiff may carry his burden by making a *prima facie* showing that personal jurisdiction exists. *Edmond v. United States Postal Serv. Gen. Counsel,* 949 F.2d 415, 424 (D.C.Cir.1991); *Reuber v. United States,* 750 F.2d 1039, 1052 (D.C.Cir .1984). This *prima facie* showing must be premised on specific facts, however, and cannot be based on mere conclusory allegations.*GTE New Media Servs. Inc. v. BellSouth Corp.,* 199 F.3d 1343, 1349 (D.C.Cir.2000).

> FN2. Subject matter jurisdiction is not at issue in this case.

The plaintiff avers that the Court may exercise general jurisdiction over the non-resident defendant pursuant to D.C.Code § 13-422 and specific jurisdiction pursuant to D.C.Code § 13-423, which is the District of Columbia's long-arm statute.[FN3]Compl. ¶ 3. In addition, in his opposition brief filed in response to the defendant's Motion to Dismiss, the plaintiff argues that the Court also may exercise personal jurisdiction over the defendant because the defendant "is doing business here," which presumably is a reference to D.C.Code

§ 13-334(a), a statute that appears to involve only service of process but courts have construed to confer general jurisdiction.[FN4]Pl.'s Opp'n Br. 10; *El-Fadl v. Central Bank of Jordan,* 75 F.3d 668, 673 n. 7 (D.C.Cir.1996) (noting that the District of Columbia Court of Appeals ("D.C. Court of appeals") has construed § 13-334(a) to " 'confer[ ] jurisdiction upon trial courts here over foreign corporations doing substantial business in the District of Columbia, even though the claim arose from a transaction which occurred elsewhere, and hence, outside the scope of the long-arm statute' " (quoting *Guevara v. Reed,* 598 A.2d 1157, 1159 (D.C.1991))). The Court will address in turn each of the plaintiff's proffered bases for exercising personal jurisdiction.

> FN3. The Court's exercise of personal jurisdiction over the defendant in this diversity case "turns on local (state) law, here, District of Columbia law."*Crane,* 814 F.2d at 762. The Constitution, however, acts as a restraint on the scope of personal jurisdiction authorized by District of Columbia law. *Id.*"Due process sets the outer boundary; the local law may be coextensive with due process, or it may be more restrictive than the constitutional limit."*Id.*

> FN4. The Court makes this presumption based on the fact that the plaintiff cited *Gorman v. Ameritrade Holding Corp.,* 293 F.3d 506 (D.C.Cir.2002), which is a case analyzing general jurisdiction pursuant to D.C.Code § 13-334(a). Pl.'s Opp'n Br. 10.

### A. *D.C.Code § 13-422*

Any argument that this Court may exercise general personal jurisdiction over the defendant pursuant to D.C.Code § 13-422 is easily resolved. The statute provides that "[a] District of Columbia court may exercise personal jurisdiction over a person domiciled in, organized under the laws of, or maintaining his or its principal place of business in, the Dis-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

trict of Columbia as to any claim for relief."D.C.Code § 13-422. *Accord El-Fadl, 75 F.3d at 671-72.* A review of the plaintiff's Complaint and Memorandum of Law In Opposition to Defendant's Motion to Dismiss reveals no facts showing that the defendant is organized under the laws of the District of Columbia or maintains its principal place of business here. To the contrary, the plaintiff's Complaint and Memorandum of Law both concede that the defendant is organized under the laws of the state of Illinois and has its principal office there. Compl. ¶ 2; Pl.'s Opp'n Br. 1. Furthermore, the plaintiff makes no mention of D.C.Code § 13-422 in its brief opposing the defendant's Motion to Dismiss, stating instead that "[t]he Court's jurisdiction is predicated ... on the District of Columbia long-arm statute," which is D.C.Code § 13-423. As mentioned above, the plaintiff's only argument in favor of exercising general personal jurisdiction is premised on the assertion that the defendant "does business" in the District of Columbia, which refers to D.C.Code § 13-334(a) and not D.C.Code § 13-422. So it appears the plaintiff has abandoned any claim that the Court may exercise general personal jurisdiction over the defendant pursuant D .C.Code § 13-422.[FN5]

> **FN5.** Even if the plaintiff were to challenge the notion that he abandoned asserting general personal jurisdiction pursuant to D.C.Code § 13-422, the D.C. Circuit's decision in *El-Fadl* suggests that jurisdiction under that statute is inappropriate when the defendant is organized under the laws of another jurisdiction and maintains its principal place of business in that other jurisdiction. 75 F.3d at 672 n. 6 (affirming "the district court's holding that it lacked jurisdiction under § 13-422 because the record shows that Petra Bank is organized under the laws of Jordan and maintains its principal place of business there").

**B.** *D.C.Code § 13-423*

**\*4** The plaintiff next invokes two provisions of D.C.Code § 13-423 that he asserts authorize exercising specific personal jurisdiction over the defendant in this case, namely § 13-423(a)(1), which permits personal jurisdiction over a defendant "transacting any business in the District of Columbia," and § 13-423(a)(3), which permits personal jurisdiction over a defendant "causing tortious injury in the District of Columbia by an act or omission in the District of Columbia."[FN6]D.C.Code § 13-423; Pl.'s Opp'n Br. 1, 4; Compl. ¶ 3. As the plaintiff recognizes, *see* Pl.'s Opp'n Br. 4, when personal jurisdiction is asserted under either of these two sections of the statute, the claims for relief must arise from the very acts that establish jurisdiction. D.C.Code § 13-423(b) ("When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him.").

> **FN6.** The plaintiff inexplicably failed to identify exactly which provision(s) of D.C.Code § 13-423 relating to tort injuries he is relying on to assert personal jurisdiction. Because he claimed in his opposition brief that the "defendant's action in the District of Columbia caused harm to the plaintiff," the Court presumes that the plaintiff is asserting jurisdiction in accordance with D.C.Code § 13-423(a)(3) and will address the matter accordingly. Pl.'s Opp'n Br. 9-10 (stating that his "tort claims for negligent and intentional misrepresentation are based on the actions of Cradle Society in the District of Columbia").

To find that personal jurisdiction exists over a non-resident defendant in accordance with either of the asserted provisions of D.C.Code § 13-423"a court must engage in a two-part inquiry: A court must first examine whether jurisdiction is applicable under the ... long-arm statute and then determine whether a finding of jurisdiction satisfies the constitutional requirements of due process."*GTE New Media Servs., 199 F.3d at 1347.* The United States

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2007 WL 2071644 (D.D.C.)

**(Cite as: Slip Copy)**

Court of Appeals for the District of Columbia Circuit (the "D.C. Circuit") has recognized that "Section (a)(1)'s 'transacting any business' clause generally has been interpreted to be coextensive with the Constitution's due process requirements" whereas "Section (a)(4) has been construed more narrowly...."[FN7] *Id.* Moreover, "[e]ven when the literal terms of the long-arm statute have been satisfied, a plaintiff must still show that the exercise of personal jurisdiction is within the permissible bounds of the Due Process Clause." *Id.* It is established beyond peradventure that "due process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463 (1940)).

> FN7. Because D.C.Code § 13-423(a)(1) is coextensive with the Due Process Clause the Court's analysis merges into a "single inquiry" that asks whether the defendant established minimum contacts with the forum. *GTE New Media Servs.,* 199 F.3d at 1347.

To support his claim that the defendant "transacted business" in the District of Columbia sufficient to warrant exercising specific personal jurisdiction pursuant to D.C.Code § 13-423(a)(1) the plaintiff submitted a sworn affidavit in which he states that he met with the defendant's officers and employees in the District of Columbia on numerous occasions to discuss the contract and the parties' business relationship (Pl.'s Opp'n Br. Ex. 1 at ¶¶ 5-7, 14-17 [hereinafter "Fasolyak Aff. ¶ ----"] ),[FN8] he and one of the defendant's officers met with the defendant's attorney at the attorney's office in the District of Columbia (Fasolyak Aff. ¶ 8), he and his agents visited the Embassy of the Russian Federation and the Russian Consulate in the District of Columbia to "perform activities" and meet with embassy offi-

cials to secure accreditation, visas, or other documentation necessary for the defendant to comply with official adoption procedures or otherwise travel to the Russian Federation (Fasolyak Aff. ¶¶ 9-10, 18-22), he met Russian Federation officials in the District of Columbia to discuss the defendant's business (Fasolyak Aff. ¶¶ 11-12), and he helped arrange a United States senator's visit to the Russian Federation (Fasolyak Aff. ¶ 13). These factual allegations are consistent with those made in the plaintiff's Complaint. Compl. ¶¶ 14-26, 33, 35-36, 47, 50-51, 57, 93.

> FN8. Although the affidavit attached as Exhibit 1 to the plaintiff's opposition brief contains a case caption for the lawsuit filed in Maryland, it is the Court's understanding that this particular affidavit was filed for the first time in this case.

**\*5** The defendant elected not to counter the plaintiff's assertions of fact with its own affidavit but relied instead on the arguments raised in its legal briefs supporting the Motion to Dismiss, which generally declare that the parties' contract anticipated performance only in the Russian Federation (Def.'s Mot. to Dismiss 4; Def.'s Reply Br. 2, -3), the defendant never engaged in any activities in the District of Columbia sufficient to subject it to personal jurisdiction (Def.'s Mot. to Dismiss 4), none of the alleged injuries arose from contacts the defendant had with the District of Columbia (*id.*), the United States District Court for the District of Maryland already determined that the contract was performed in Russia and the federal court in Illinois should have jurisdiction (*id.;* Def.'s Reply Br. 2), "the defendant's duties and alleged wrongdoing were related to actions in Russia" (Def.'s Mot. to Dismiss 2, 4), and, generally, that the defendant "was not advertising or selling anything in Washington D.C." (Def.'s Reply Br. 4). The defendant further argues that the plaintiff's allegation that the parties' contract required him to process adoption applications at the Embassy of the Russian Federation "is blatantly false." Def.'s Reply Br. 2.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                           Page 6
Slip Copy, 2007 WL 2071644 (D.D.C.)
**(Cite as: Slip Copy)**

Whatever might be said about the defendant's contacts with the District of Columbia, it strikes the Court that traditional notions of fair play and substantial justice counsel against exercising specific personal jurisdiction pursuant to D.C.Code § 13-423(a)(1) under the particular circumstances presented here. "In judging minimum contacts, a court properly focuses on 'the relationship among the defendant, the forum, and the litigation,' " *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 775 (1984) (quoting *Shaffer v. Heitner,* 433 U.S. 186, 204 (1977)), and considers whether the defendant purposely availed itself of the privilege of conducting activities in the forum such that it could anticipate being haled into court there, *Burger King Corp.,* 471 U.S. 462, 474-75 (1985). "This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Burger King Corp.,* 471 U.S. at 475 (internal quotations and citations omitted).

The Court notes from the outset that, with the exception of nebulous meetings with the plaintiff that are alleged to have taken place in the District of Columbia, *see* Discussion *infra,* the only "contacts" the defendant itself had with this forum are imputed from the plaintiff's unilateral activities at the Embassy of the Russian Federation and the Russian Consulate for the purpose of securing required accreditation, providing required governmental documentation regarding Russian adoptions, and obtaining visas for travel, or the contacts relate to meetings the plaintiff alone had with Russian Federation officials. *See* Fasolyak Aff. ¶¶ 9-13, 18-22. District of Columbia law, however, precludes plaintiffs from "rely[ing] on [their] own activities, rather than those of a defendant, to establish the requisite minimal contacts for personal jurisdiction." *Environmental Research Int'l, Inc. v. Lockwood Greene Eng'rs, Inc.,* 355 A.2d 808, 812 (D.C.1976) (en banc) ("The mere fact that a nonresident has retained the professional services of a District of Columbia firm, thereby setting into motion the res-

ident party's own activities within this jurisdiction, does not constitute an invocation by the nonresident of the benefits and protections of the District's laws.").*See also Helicopteros Nationales de Colombia, S.A. v. Hall,* 466 U.S. 408, 417 (stating that the "unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction").*Accord Burger King Corp.,* 471 U.S. at 475 ("Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State.").

**\*6** The plaintiff nevertheless contends that the decisions in *Helmer v. Doletskaya,* 393 F.3d 201 (D.C.Cir.2004), *Ulico Cas. Co. v. Fleet Nat'l Bank,* 257 F.Supp.2d 142 (D.D.C.2003), and *Burger King Corp., supra,* compel the conclusion that exercising personal jurisdiction is appropriate when the contract is substantially performed in the District of Columbia by either the plaintiff or the defendant. Pl.'s Opp'n Br. 5-6. These cases do not support that proposition. Each of the cited cases hinged to a great deal on the fact that they involved claims advanced by forum residents regarding contracts that had a substantial connection to the forum. The decision in *Helmer* involved a contract between a *resident* plaintiff and non-resident defendant for repayment of a credit card, which the court determined had a substantial connection to the District of Columbia "[b]ecause the contract was formed in the District of Columbia, the corpus of the contract involved credit cards issued to a District of Columbia resident and registered with a District of Columbia address, and the parties contemplated future repeated contacts with the District of Columbia as a condition of performance...."393 F.3d at 206. Similarly, in *Ulico Cas. Co .,* our colleague on this Court expressly cited the District's substantial interest in providing a convenient forum to address *its citizens'* wrongs as a basis for exercising specific personal jurisdiction over a nonresident corporation that entered into a banking contract with a resident

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

corporation. 257 F.Supp.2d at 975. The same can be said of the Supreme Court's decision in *Burger King Corp.,* which involved claims for breach of a franchise agreement between *resident* and non-resident corporate parties where the non-resident defendant had no significant presence in the forum but was found to have deliberately negotiated with the resident plaintiff for the franchise, "entered into a carefully structured 20-year relationship that envisioned continuing and wide-reaching contacts" with the plaintiff in the disputed forum, and voluntarily accepted "the long-term and exacting regulation of his business" by the resident plaintiff. 471 U.S. at 479-80. In contrast, the contract in this case, which anticipates performance in the Russian Federation,FN9 has no substantial connection to the District of Columbia and was executed by non-resident parties. Thus, the policies served by the decisions in the cited cases lose their force when, as is the case here, both parties to the dispute are nonresidents, the contract contemplates no performance in the District of Columbia, and the defendant engaged in no act directed at District citizens or acted pursuant to a contract that anticipated future consequences here. *See* Helmer, 393 F.3d at 205 (indicating that "a court must evaluate the 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing' to determine whether the defendant 'purposefully established minimum contacts within the forum" (quoting *Burger King Corp.,* 471 U.S. at 479)).

>       FN9. This Court is inclined to agree with our sister court in Maryland that the contract anticipates performance of its obligations primarily in the Russian Federation. *See Fasolyak,* No. 06-CV-00622-AW, slip op. at 7-8.The contract makes no mention of any work to be performed specifically at the Embassy of the Russian Federation or generally in the District of Columbia, albeit the plaintiff's duties are broadly defined to encompass the provision of "advice and coordination to The Cradle

with respect to *all* activities in the Russian Federation which are necessary to achieve the placement of children from the Russian Federation with adoptive parents residing in the United States."Compl. Ex. 1 (emphasis added). The contract expressly states, however, that the plaintiff shall support the program "within the Russian Federation," assist in identifying staff "in the Russian Federation" to perform program functions, advise the defendant about "practices and procedures required by the Government of the Russian Federation" and "with respect to all actions necessary to maintain the accreditation of The Cradle by the Russian Federation," ensure that "all actions are taken in Russia which are necessary to complete adoptions under Russian law and regulations," and ensure the program "operates in compliance with all applicable Russian laws and regulations."*Id.* Accordingly, the Court finds unpersuasive the plaintiff's assertion that "substantial performance" took place in this forum, particularly since the affidavit the plaintiff submitted in the prior litigation indicates that he performed "a significant portion" of the contract's requirement to set up, promote, manage and coordinate the defendant's Russian Program, as well as to monitor and supervise work on the defendant's adoption cases, in Maryland. Def.'s Reply Br. Ex. A ¶ 11.

*7 At this juncture it is worthwhile to point out that, although the defendant's business involves placing children from the Russian Federation with adoptive families in the United States, the plaintiff made no allegation that any adoptions performed by the defendant involve residents of the District of Columbia. Nor has the plaintiff alleged that the defendant solicits adoptive families or otherwise markets its services in the District of Columbia, whether by telephone calls into the District, advertising in publications that circulate in the District, or via an

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

internet site used by District residents. *See, e.g., id.* at 476 (noting that "it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted"). Indeed, according to the plaintiff, the only contacts the defendant itself had with the District of Columbia involved meetings the defendant's officers and employees attended with the plaintiff, who is a resident of Maryland and runs a consulting business in Maryland. Fasolyak Aff. ¶ 2. *See also Keeton,* 465 U.S. at 780 (acknowledging that a plaintiff's residence "may well play an important role in determining the propriety of entertaining a suit against the defendant in the forum" but "lack of residence will not defeat jurisdiction established on the basis of defendant's contacts"). The plaintiff offered no indication that the decision to hold meetings in the District of Columbia related in any way to business the defendant conducts here, versus the location being a mere fortuitous convenience (the plaintiff resides in Potomac, Maryland, which is a suburb of the District of Columbia).FN10 The plaintiff's allegations with respect to the District of Columbia meetings are conclusory and offer only generalized time frames with no explanation about what the meetings entailed other than nondescript and self-serving statements that the discussions involved "the business" of the defendant, "performance of the Agreement," or were "to advance the purpose of the Contract."Fasolyak Aff. ¶ 5, 7, 14-15; Compl. ¶ 23; Pl.'s Opp'n Br. 9. A common sense approach dictates that the defendant could not have anticipated being haled into court in the District of Columbia when it engaged in no commerce or other activities directed at District of Columbia residents FN11 and merely attended meetings here with another non-resident. Particularly when those meetings related to business conducted in the Russian Federation pursuant to a contract that our sister court already determined was formed in Maryland, involved performance in the Russian Federation the consequences of which would be felt in Russia, FN12

and that by stipulation was governed by Illinois law.*Fasolyak,* No. 06-CV-00622-AW, slip op. at 7-12.

> FN10. The plaintiff acknowledged that meetings also were held in Maryland. Fasolyak Aff. ¶ 7.

> FN11. The D.C. Court of Appeals has stated that "[a] critical inquiry is whether [the defendant] 'has purposefully directed its activities at residents of the forum.' " *Holder v. Haarmann & Reimer Corp.,* 779 A.2d 264, 269-70 (D.C.2001) (quoting *Shoppers Food Warehouse v. Moreno,* 746 A.2d 320, 331 (D.C.2000)).

> FN12. The D.C. Court of Appeals has emphasized that "the 'transacting any business' provision embraces those contractual activities of a nonresident defendant which cause a consequence here ."*Mouzavires v. Baxter,* 434 A.2d 988, 992 (D.C.1981) (per curium). No

This Court also concurs with our sister court in Maryland with regard to the significance of the choice-of-law provision. In *Burger King Corp.,* the Supreme Court admonished the lower court for failing to give "sufficient weight" to the choice-of-law provisions in the parties' franchise agreement. The Supreme Court stated that a choice-of-law provision was not sufficient on its own to confer jurisdiction but nonetheless "reinforced" the defendant's "deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there."471 U.S. at 481-82. It seems to this Court that the same logic also would apply inversely in this case to reinforce the Court's conclusion that the non-resident defendant did not purposely avail itself of the privilege of conducting activities in the District of Columbia such that it could anticipate being haled into court here.

**\*8** The Court also remains unconvinced that it may exercise specific personal jurisdiction over the de-

Slip Copy, 2007 WL 2071644 (D.D.C.)
**(Cite as: Slip Copy)**

fendant pursuant to D.C.Code § 13-423(a)(3), which, as mentioned previously, permits personal jurisdiction over a defendant who causes tortious injury in the District of Columbia by an act or omission that also occurred in the District of Columbia. D.C.Code § 13-423(a)(4). As a threshold matter, the plaintiff is unable to make out a *prima facie* case that jurisdiction exists under this section of the statute because he failed to identify any tortious act or injury that occurred in the District of Columbia. At best, the plaintiff argues in his opposition brief that the defendant represented to him that if he secured re-accreditation the defendant would pay him fees for every Russian adoption the defendant processed. Pl.'s Opp'n Br. 10. But the plaintiff never asserted any facts showing that the misrepresentation was made in the District of Columbia, for example during one of the meetings he claims he had with the defendant's officers and employees. The plaintiff's citations to his Complaint are to no avail-none of the paragraphs he cited state any facts demonstrating how the misrepresentation came about, whether via a telephone call, meeting, electronic mail, or some other form of communication. Compl. ¶¶ 48-55. More to the point, the plaintiff failed to aver a single fact in his Complaint indicating where the alleged misrepresentation occurred. As a consequence, the Court has no factual basis to support the exercise of jurisdiction over defendant based on tortious acts occurring in the District of Columbia. The same observations apply to the plaintiff's assertions about tortious injury-at no time has the plaintiff asserted any fact to support his contention that he was injured in the District of Columbia by any act committed by the defendant. At their essence, the plaintiff's claims of tortious acts and injuries are revealed to be bare conclusory allegations. As a result, the plaintiff has failed to allege specific facts sufficient to meet his burden of establishing a *prima facie* case for the exercise of personal jurisdiction under this statute. GTE New Media Servs., 199 F.3d at 1349 (holding that "conclusory statements and intimations" were not enough to establish personal jurisdiction).

C. *D.C.Code § 13-334*

The plaintiff's final argument asserts that the Court may exercise general personal jurisdiction over the defendant pursuant to D.C.Code § 13-334, which has been construed by the courts to authorize general personal jurisdiction over non-resident defendants if the defendant is "doing business" in the District of Columbia, regardless of whether the actual claims arise from the defendant's contacts with the District. *See, e.g., Gorman v. Ameritrade Holding Corp.,* 293 F.3d 506, 509 (D.C.Cir.2002). The D.C. Court of Appeals has held that the scope of jurisdiction under D.C.Code § 13-334 is coextensive with the Due Process Clause. *Id.* at 510."For general jurisdiction, the Due Process Clause requires that the defendant have 'continuous and systematic general business contacts' with the forum."*El-Fadl,* 75 F.3d at 675. Given that this is a more rigorous standard than the "minimum contacts" necessary to establish specific personal jurisdiction, which the Court has found lacking in this case, it logically follows that the same contacts that were insufficient to support the exercise of specific jurisdiction cannot suffice to support the exercise of general jurisdiction.

**\*9** To recapitulate, the facts presented to the Court indicate that the defendant is involved in the business of facilitating the adoption of Russian children by parents in the United States. No facts were alleged, however, to show that the defendant provides adoption services to District of Columbia residents or markets any of its services here. The plaintiff alleged that the defendant met with him multiple times in the District of Columbia, but the plaintiff offered no specific facts to tie those meetings to business the defendant conducts here versus business conducted in Russia or elsewhere. Nor did the plaintiff show that the meeting with the defendant's counsel was in any way meaningful for the purpose of the Court's analysis. The plaintiff also omitted any facts demonstrating that those meetings were systematic and not occasional. So, with regard to the contacts the defendant itself had in the District

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

of Columbia, the Court finds that they fall far short of the standard for exercising specific personal jurisdiction.

As was the case in the prior analysis, the remaining factual allegations advanced by the plaintiff involve his own acts and conduct in the District of Columbia, such as meeting with Russian Federation officials and conducting activities at the Embassy of the Russian Federation and the Russian Consulate. The Court is disinclined to agree that such acts demonstrate continuous and systematic business contacts with the District of Columbia in light of controlling precedent recognizing that general jurisdiction is inappropriate when a defendant's presence in this particular forum is necessitated by virtue of the fact that this is the only place where federal agencies, embassies, and other such instrumentalities are located. *See Fandel v. Arabian Am. Oil Co.,* 345 F.2d 87, 88-89 (D.C.Cir.1965).

In *Fandel,* the D.C. Circuit considered whether it would be appropriate to exercise general personal jurisdiction over a Delaware oil-production corporation based on the fact that it maintained an office in the District of Columbia for diplomatic and intelligence relationships with government and private agencies interested in Middle East affairs. *Id.* at 88.Distinguishing the activities performed by the corporation's District office from those of a company "whose agents in Washington are seeking contracts, either with our own Government or with other governments represented in Washington," the D.C. Circuit ultimately concluded that the corporation's presence was "of a kind we think this court has heretofore regarded as falling outside the range of Congressional contemplation of the scope of 'doing business' as that phrase is used in 13 D.C.Code § 334."*Id.* at 89.The D.C. Circuit cited a number of cases that it observed "constitute a recognition that Washington presents many business organizations with special needs for a continuous and ponderable physical presence there, which needs are not those customarily associated with strictly commercial operations; and that the purpose

of Congress was not to make that presence in every case a base for the assertion of personal jurisdiction."*Id.*

*10 This same reasoning applies to the defendant's alleged presence in the District of Columbia, which is premised on the plaintiff's activities at the Embassy of the Russian Federation and Russian Consulate for the purpose of complying with Russian legal requirements FN13 that could be accomplished only at those facilities FN14 and appear not to be for the purpose of soliciting business on behalf of the defendant. Fasolyak Aff. ¶¶ 9-12, 18-22. Thus, this Court is disposed to agree with our colleague that "it would not comport with due process for this Court to exercise general jurisdiction over [the defendant] because of its contacts with foreign embassies, as the District of Columbia is the only district in the country where these embassies are located."FN15*AGS Int'l Servs. S.A. v. Newmont USA Ltd.,* 346 F.Supp.2d 64, 76 (D.D.C.2004) (J. Walton). In a similar vein, the plaintiff's contacts with a United States senator are subject to the "government contacts" exception to the exercise of personal jurisdiction, which provides that contacts with federal agencies and instrumentalities located in the District of Columbia "will not give rise to personal jurisdiction."*United States v. Ferrara,* 54 F.3d 825, 831 (D.C.Cir.1995).

> FN13. The plaintiff stated that he "had to make visits to and perform activities at the Embassy of the Russian Federation in Washington, D.C. and to meet with officials of the Russian government" to assist the defendant to obtain the accreditation required to conduct adoptions in Russia. Fasolyak Aff. ¶ 9. The plaintiff also stated that a Russian visa was required for adoptive parents and the defendant's employees to travel to the Russian Federation so he "made frequent trips to the Russian Consulate to meet-in Washington, D.C.-with Russian consular officers and process the required documents."*Id.* at ¶ 18-20.In addi-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

tion, the plaintiff further stated that each Russian child must be registered at the Russian Consulate as a matter of Russian law, so he and his agents "traveled to and from Washington, D.C. to obtain and submit the required documents, to meet with Russian consular officers, and to perform the required registrations."*Id* . ¶ 21.

FN14. This reasoning also likely applies to the plaintiff's meetings with Russian government officials, which the Court assumes from context probably were treated as something akin to lobbying efforts. Because the plaintiff's allegations regarding those meetings were conclusory and failed to provide specific facts identifying their purpose, they are untenable to demonstrate continuous or systematic business contacts consistent with Due Process.

FN15. The plaintiff stated in his affidavit that the Russian Consulate with territorial jurisdiction over Illinois is located in the District of Columbia, so the same reasoning applies to the defendant's activities at that institution as well. Fasolyak Aff. ¶ 18.

## II. The Plaintiff's Motion For Jurisdictional Discovery

The plaintiff requested leave to take jurisdictional discovery in the event the Court "considers the allegations and evidence submitted insufficient."Pl.'s Opp'n Br. 11. It is the rule in this circuit that "if a party demonstrates that it can supplement its jurisdictional allegations through discovery, then jurisdictional discovery is justified."*GTE New Media Servs.,* 199 F.3d at 1351. A plaintiff must, however, "have at least a good faith belief that such discovery will enable it to show that the court has personal jurisdiction over the defendant."*Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC,* 148 F.3d 1080, 1090 (D.C.Cir.1998). Thus, it is not error to deny jurisdictional discovery when the record indicates there is nothing to be gained from the ef-

fort. *See Goodman Holdings v. Rafidain Bank,* 26 F.3d 1143, 1147 (D.C.Cir.1994) ("[W]we do not see what facts additional discovery could produce that would affect our jurisdictional analysis above and therefore conclude the district court did not abuse its discretion in dismissing the action when it did.").*Accord Natural Res. Def. Council v. Pena,* 147 F.3d 1012, (D.C.Cir.1998) (agreeing that jurisdictional discovery should be permitted "if allegations indicate its likely utility").

Unlike the cases in this circuit where plaintiffs made specific and nonspeculative allegations demonstrating that jurisdictional discovery might in fact lead to evidence supporting the exercise of personal jurisdiction, *see, e.g., Edmond,* 949 F.2d at 425-26, the plaintiff in this case offered nothing to support his request. He simply tacked on a one-sentence motion for discovery at the conclusion of his opposition brief without any explication about what he thought discovery might disclose with regard to likely contacts the defendant had with the District of Columbia or what information he thought might be gained from jurisdictional discovery that could possibly assist the Court in its analysis. The Court is loathe to subject a defendant to the costs and burdens of discovery, no matter how narrowly tailored, based on a plaintiff's naked assertion of entitlement. This is particularly so when, as is the case here, the jurisdictional facts already asserted have been conclusory and premised in large part on the plaintiff's unilateral acts rather than the defendant's purposeful contacts. Because the plaintiff made no showing whatsoever that jurisdictional discovery is warranted, the Court will deny the motion.

## III. The Pending Discovery Motions

**\*11** The Court's determination that it lacks personal jurisdiction over the defendant obviates the need for any ruling on the merits of the pending discovery motions.

Slip Copy, 2007 WL 2071644 (D.D.C.)
**(Cite as: Slip Copy)**

**IV. Whether Transfer Pursuant To 28 U.S.C. § 1631 Is In The Interests Of Justice**

28 U.S.C. § 1631 authorizes intercourt transfer when an originating court finds that it lacks jurisdiction and the interests of justice warrant such a result. 28 U.S.C. § 1631. "There are three elements to a section 1631 transfer: (1) there must be a lack of jurisdiction in the district court; (2) the transfer must be in the interest of justice; and (3) the transfer can be made only to a court in which the action could have been brought at the time it was filed or noticed." *Ukiah Adventist Hosp. v. FTC,* 981 F.2d 543, 549 (D.C.Cir.1992) (internal citations omitted). This Court has determined that it lacks personal jurisdiction over the defendant and, without expressing any opinion about the merits of the plaintiff's claims, the Court finds that the interests of justice warrant transfer so the plaintiff may proceed with his claims in an appropriate forum where he may be heard. The diversity of the parties and the defendant's status as a corporation organized under the laws of the State of Illinois, with its principal place of business there, suggest that the United States District Court for the Northern District of Illinois properly may exercise personal jurisdiction over the defendant, and could have done so at the time the plaintiff originally filed his claims. In addition, the contract between the parties stipulates that Illinois law shall govern the agreement. Compl. Ex. 1. The Court therefore finds that the interests of justice warrant transferring this case to the United States District Court for the Northern District of Illinois in accordance with 28 U.S.C. § 1631.

**CONCLUSION**

For the foregoing reasons, the Court concludes that it lacks personal jurisdiction over the defendant but that transfer to the United States District Court for the Northern District of Illinois is in the interests of justice. Accordingly, this case will be transferred to the United States District Court for the Northern District of Illinois pursuant to 28 U.S.C. § 1631.

All other arguments not expressly considered are deemed to be without merit. An appropriate order consistent with this Memorandum Opinion will follow.

D.D.C.,2007.
Fasolyak v. The Cradle Society, Inc.
Slip Copy, 2007 WL 2071644 (D.D.C.)

END OF DOCUMENT

# EXHIBIT C

Westlaw.

Not Reported in F.Supp.2d                                                                 Page 1
Not Reported in F.Supp.2d, 2003 WL 685338 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

NSM Music, Inc. v. Villa Alvarez
N.D.Ill.,2003.
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois, Eastern
Division.
NSM MUSIC, INC. and NSM Music Group, Ltd.,
Plaintiffs,
v.
Daniel VILLA ALVAREZ, Nuevas Sinfonolas De
Mexico, S.A. De C.V., and Sinfonomex, S.A. de
C.V., Defendants.
No. 02 C 6482.

Feb. 25, 2003.

*MEMORANDUM OPINION AND ORDER*

KENNELLY, J.

**\*1** Plaintiffs NSM Music, Inc. and NSM Music
Group, Ltd. have sued defendant Nuevas Sinfonolas
de Mexico, S.A. de C.V., and Sinfonomex, S.A. de
C.V., both Mexican corporations, and the companies'
president Daniel Villa Alvarez, a Mexican citizen, for
various causes of action. Plaintiffs, which sell
jukeboxes and related products, allege that
Sinfonolas, which was plaintiffs' distributor in
Mexico, owes plaintiffs over $130,000 on sales of
plaintiffs' products and have therefore sued
Sinfonolas for breach of contract. Plaintiffs also seek
to impose liability on Villa and Sinfonomex for
Sinfonolas' breach on an *alter ego* theory. Finally,
plaintiffs claim that each of the defendants have
continued to use NSM's trademarks following
plaintiffs' termination of Sinfonolas as their
distributor, in violation of the Lanham Act.

Plaintiffs have moved for entry of a default
judgment against each of the defendants based upon
their failure to respond to NSM's complaint. In
response to concerns raised by the Court regarding
the sufficiency of service of process, NSM has
submitted a brief, the affidavits of service and an
affidavit from counsel, and other supporting material
explaining how service was effected. According to
NSM, service of the summonses and complaint was
initially attempted by a private server at Villa's home
in Mexico. After the door was slammed in his face,
the process server slipped the documents under the

door. Plaintiffs then had the Clerk of this Court issue
alias summonses and send them via Federal Express
to the defendants both at the home address used by
the process server and at the business address listed
on Alvarez' business cards. Documents attached to
NSM's brief (specifically, a printout from Federal
Express's on-line package tracking service) reflects
that both sets of packages were successfully
delivered. NSM has not, however, provided the Court
with a signed receipt of delivery.

The initial attempt at service in Mexico appears
to have been improper.Federal Rule of Civil
Procedure 4(h), which governs service upon foreign
corporations, specifically prohibits personal service.
*See*Fed.R.Civ.P. 4(h)(2).Rule 4(f), which governs
service upon foreign individuals, provides that
service is to be made by internationally agreed
means, such as those authorized in the Hague
Convention on the Service Abroad of Judicial and
Extrajudicial Documents in Civil or Commercial
Matters, Nov. 15, 1965, 20 U.S.T. 361. Fed.R.Civ.P.
4(f)(1). Personal service in the manner attempted by
plaintiffs is permitted in a foreign country only if
allowed by treaty or in the absence of internationally
agreed means, and only so long as the country of
destination does not prohibit personal service.
Fed.R.Civ.P. 4(f)(2)(C). Because Mexico is a
signatory to the Hague Convention (as of June 1,
2000), personal service is permitted only if that treaty
provides for it. It does not, at least not in the manner
attempted by NSM (i.e., via a privately-retained
process server). Rather, the Hague Convention
contemplates personal service via the authorities of
the country of destination, or through the originating
country's consular officials in the country of
destination. *See* Hague Conv. Arts. 3-9.

**\*2** NSM's later attempts at service come closer to
the mark but still fall short of compliance with the
Federal Rules. Rule 4(f)(2)(C)(ii) says that so long as
the applicable treaty permits it and so long as the
country of destination does not prohibit it, process
may be served on an individual in a foreign country
via mailing from the clerk of court using any form of
mail requiring a signed receipt. Fed.R.Civ.P.
4(f)(2)(C)(ii).Rule 4(h) incorporates the same
procedures with respect to foreign

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 685338 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

corporations. Fed.R.Civ.P. 4(h)(2). The Hague Convention states that absent an objection from the country of destination, there is no prohibition on sending judicial documents, by postal channels, directly to persons abroad. Hague Conv. Art. 10. Mexico does not appear to have a prohibition on service by registered mail, at least according to a U.S. State Department Web site. *See www.travel.state.gov/mexicoja.html.* ("There is no provision in Mexico law specifically prohibiting service by international registered mail...."). [FN1]

> **FN1.** The same Web site notes, however, that registered mail service will not get the plaintiff a judgment that is enforceable in Mexico.

There are two flaws, however, with the form of service used by plaintiffs. NSM used Federal Express, which is neither a "postal channel" (the term used in the Hague Convention) nor "mail" (the term used in the Federal Rules), at least as that term is commonly understood. *See, e.g.,* Webster's Third International Dictionary at 1361 (1993) (defining "mail" as "the bags of letters and the other postal matter conveyed *under public authority* from one post office to another"). And even were the Court to overlook this deviation from the Rules and the Hague Convention, plaintiffs have failed to provide the Court with any evidence of a "signed receipt," which the Federal Rules specifically require. Fed.R.Civ.P. 4(f)(C)(ii). These points might seem technical, but the plaintiffs are asking this Court to extend its reach abroad, and thus careful adherence to the requirements of international treaties and the Federal Rules of Civil Procedure is called for.

Conclusion

For the foregoing reasons, the Court denies plaintiff's motion for entry of default and its motion for entry of default judgment.

N.D.Ill.,2003.
NSM Music, Inc. v. Villa Alvarez
Not Reported in F.Supp.2d, 2003 WL 685338 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT D

Not Reported in F.Supp.2d                                                                    Page 1

Not Reported in F.Supp.2d, 2002 WL 850205 (D.Or.), 89 A.F.T.R.2d 2002-2095, 2002-1 USTC P 50,378
**(Cite as: Not Reported in F.Supp.2d)**

H
Oldham v. U.S.
D.Or.,2002.

United States District Court, D. Oregon.
Terrie Danielle OLDHAM, Petitioner,
v.
UNITED STATES, Internal Revenue Service;
Michele McGeachy, Internal Revenue Agent, Iden-
tification No. 93-02081; Greg Meadors, Group
Manager; and JNR, Group Manager, Respondents.
**No. 01-1410HA.**

March 21, 2002.

Jian H. Grant, Trial Attorney, Tax Division, U.S.
Department of Justice, Washington, DC, for
Michele McGeachy (dft).

OPINION AND ORDER

HAGGERTY, District J.
**\*1** The petitioner seeks to quash, pursuant to 26
U.S.C. § 7609(b)(2), eight summonses issued for
records kept by "third-party recordkeepers." The re-
spondents (IRS) have moved to dismiss the peti-
tion. The IRS argues that the court lacks jurisdic-
tion over the four summonses issued to The Van-
guard Group, Inc., Trust Company of America,
American Century Services Corporation, and Janus.
The IRS also contends that the petitioner has failed
to state a claim with respect to the remaining four
summonses issued to State Farm Insurance Com-
panies, Fidelity Investments, Homestreet, Inc., and
Washington Mutual Bank. The petitioner argues
that the court has jurisdiction to rule on all eight
summonses, and that none of the eight were prop-
erly issued.

DISCUSSION

*1. Subject Matter Jurisdiction pursuant to 26
U.S.C. § 7609(h)(1)*

"The United States district court for the district
within which the person to be summoned resides or
is found shall have jurisdiction to hear and determ-
ine any proceeding brought under subsection (b)(2),
(f), or (g)."26 U.S.C. § 7609(h)(1). The statute does
not define "found."

The parties initially agreed that the proper analysis
for subject matter jurisdiction under the statute was
whether the court could exercise personal jurisdic-
tion over the third-party recordkeepers if they were
parties in the case.[FN1] The petitioner contends that
the court should apply a "minimum contacts" ana-
lysis that reaches the limits of Due Process. *See In-
ternational Shoe Co. v. Washington,* 326 U.S. 310,
66 S.Ct. 154, 90 L.Ed. 95 (1945); *see also United
States v. Toyota Motor Corporation,* 561 F.Supp.
354 (C.D.Cal.1983). The IRS does not develop its
argument, but simply concludes that the four dis-
puted financial institutions "neither reside in nor
are found in the State of Oregon ... and the Petition
with respect to the summonses issued to these entit-
ies should be denied for lack of personal jurisdic-
tion."The government relies on *Fortney v. United
States,* 59 F.3d 117 (9th Cir.1995), which affirmed
a Nevada district court ruling that the Southern
California Bank in Rowland Heights, California,
was not "found" within the District of Nevada.

> FN1. Although the language of the statute
> appears to blend concerns of personal jur-
> isdiction and venue, the statute confers
> subject matter jurisdiction. *Fortney v.
> United States,* 59 F.3d 117, 119 (9th
> Cir.1995); *see also Masat v. United States,*
> 745 F.2d 985 (5th Cir.1984); *Deal v.
> United States,* 759 F.2d 442 (5th
> Cir.1985); *Dennis v. United States,* 660
> F.Supp. 870 (C.D.Ill.1987).

A Findings and Recommendation was recently is-
sued by Magistrate Judge Stewart in a case with
facts identical to this case, and which has been re-
ferred to this court for final disposition.[FN2] Judge

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2002 WL 850205 (D.Or.), 89 A.F.T.R.2d 2002-2095, 2002-1 USTC P 50,378
**(Cite as: Not Reported in F.Supp.2d)**

Stewart found that the court should limit the scope of "found" to include only those recordkeepers which have branch offices in Oregon, or which maintain the subpoenaed records within Oregon.

> FN2. In *Carl D. Oldham v. United States Internal Revenue Service,* 01-1225-ST, Carl Oldham, the husband of the petitioner in this case, presented identical issues and arguments as those presented here, and the government responded with the identical conclusion that several of the recordkeepers were not "found" in Oregon.

In *Masat v. United States,* 745 F.2d 985 (5th Cir.1984), which is perhaps the most frequently cited case addressing 26 U.S.C. § 7609(h)(1), the Fifth Circuit declined to consider the branch office argument because it was not raised in the district court, but suggested that under some limited circumstances a branch office might support jurisdiction if the requested records or copies of those records were maintained at that branch office.*Masat,* 745 F.2d at 988.

*2 The "branch office" test is a practical solution to the hybrid jurisdictional question presented, as it maintains a distinction between "reside" and "found," but requires a physical presence within the forum and is therefore consistent the limited case law which requires something more than a Due Process analysis of minimum contacts. For example, the bank in *Fortney* was conducting some business in Nevada with the petitioner in that case, and likely with other customers who resided or traveled in Nevada. Even *United States v. Toyota Motor Corporation,* in which the issue was framed in terms of personal jurisdiction and venue, allowed for the possibility that the presence in the forum district of a wholly owned subsidiary would not necessarily confer jurisdiction over the parent corporation when that parent is the third-party record-keeper.

This court has been able to find no case except *Toyota* that takes a significantly more expansive view of "found" than is defined in *Masat,* and no court has exercised jurisdiction over a summons issued to a third-party recordkeeper on any basis other than actual physical presence in the forum district. In *Toyota,* the presence of the wholly-owned subsidiary was significant because the Senior Director of the parent company (recordkeeper) was also the President of the subsidiary, and was present at the site of the subsidiary. Further, the subsidiary was a marketing conduit solely for the parent company.

The petitioner has the burden of proving jurisdiction, and has offered her personal affidavit and various records obtained through Internet research in order to demonstrate that the four financial companies in question actively solicit and conduct business in Oregon. This court takes judicial notice of the fact that all four recordkeepers maintain interactive Web sites through which any Oregonian can open accounts, access personal accounts, buy and sell securities, communicate with customer service representatives via e-mail, and conduct other regular business.

The cases addressing 26 U.S.C. § 7609 all pre-date the widespread use of the Internet and the access to commerce provided by the world-wide Web. In considering the consequences of Internet commerce with respect to personal jurisdiction, the court in *GTE New Media Services, Inc. v. BellSouth Corp.,* 199 F.3d 1343, 1349 (D.C.Cir.2000), ruled that general jurisdiction extending to claims unrelated to Web activity cannot be supported by an interactive Web site. Other courts have adopted a "sliding scale" approach that allows jurisdiction in direct proportion to the nature and quality of the commercial activity which the entity conducts over the Internet. *Mink v. AAAA Development, 1 LLC,* 190 F.3d 333 (5th Cir.1999); *Cybersell, Inc. v. Cybersell, Inc.,* 130 F.3d 414, 419 (9th Cir.1997). Nonetheless, in the context of 26 U.S.C. § 7609, a Web site must be considered on a par with telephone access initiated by the customer. *See generally GTE New Media,* 199 F.3d at 1350. Computer access

Not Reported in F.Supp.2d                                                              Page 3
Not Reported in F.Supp.2d, 2002 WL 850205 (D.Or.), 89 A.F.T.R.2d 2002-2095, 2002-1 USTC P 50,378
**(Cite as: Not Reported in F.Supp.2d)**

does not satisfy the jurisdictional requirement under 26 U.S.C. § 7609. The petitioner has failed to meet her burden of proof.

**\*3** Even if, in some rare circumstance, Internet commerce could support jurisdiction, the facts of this case would not permit such a finding. The Ninth Circuit has set out a three-part test to determine the appropriateness of exercising specific jurisdiction over a non-resident defendant. *Cybersell,* 130 F.3d at 416 (quoting *Ballard v. Savage,* 65 F.3d 1495, 1498 (9th Cir.1995)). In this case, the records sought by the IRS were not the result of the recordkeepers' Web commerce in Oregon. Because the plaintiff has presented no evidence that she engaged in Internet commerce with the four recordkeepers, the exercise of jurisdiction based on Web activity would not be reasonable.

*2. Motion to Dismiss for Failure to State a Claim*

The parties have submitted evidence outside of the pleadings in support of their arguments. Therefore, the IRS' motion to dismiss is converted to a motion for summary judgment pursuant to Fed.R.Civ.P. 12(b) and Fed.R.Civ.P. 56. The petitioner has asked for leave to conduct further discovery. However, she has freely supplemented the record, and no material issues of fact remain. Therefore, further discovery and argument would serve no practical purpose.

The validity of the remaining summonses must be analyzed according to *United States v. Powell,* 379 U.S. 48, 57-58, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964).*See Fortney v. United States,* 59 F.3d 117 (9th Cir.1995). In *Powell,* the court determined that to

> obtain enforcement of a summons, the IRS must first establish its "good faith" by showing that the summons: (1) is issued for a legitimate purpose; (2) seeks information relevant to that purpose; (3) seeks information that is not already within the IRS' possession; and (4) satisfies all administrative steps required by the United States Code.

*Fortney,* 59 F.3d at 119.

"The government's burden is a slight one."*Id.* at 120."Once a prima facie case is made a 'heavy' burden is placed on the taxpayer to show an 'abuse of process' or the 'lack of institutional good faith." ' *Id.* (quoting *United States v. Dynavac, Inc.,* 6 F.3d 1407, 1414 (9th Cir.1993)).

In this case, the government has met its burden. The petitioner's arguments are frivolous and completely without merit. The government clearly has the authority to issue these summonses pursuant to federal statute. Further, the petitioner cannot avoid the consequences of a failure to pay her income taxes by claiming that Oregon is a "Republic," and that she has "never lived in the Federal territory known as, or described as the Internal Revenue District, Western Region."

CONCLUSION

For the reasons stated herein, the Petition (# 1) to Quash Third Party Summons is denied. The respondents' motion (# 7) to dismiss for lack of subject matter jurisdiction is granted as to the summonses issued to The Vanguard Group, Inc., Trust Company of America, American Century Services Corporation, and Janus. The respondents' motion (# 7) to dismiss for failure to state a claim is converted to a motion for summary judgment, and is granted as to the summonses issued to State Farm Insurance Companies, Fidelity Investments, Homestreet, Inc., and Washington Mutual Bank.

D.Or.,2002.
Oldham v. U.S.
Not Reported in F.Supp.2d, 2002 WL 850205 (D.Or.), 89 A.F.T.R.2d 2002-2095, 2002-1 USTC P 50,378

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT E

Slip Copy                                                                 Page 1
Slip Copy, 2007 WL 1954416 (D.D.C.)
(Cite as: Slip Copy)

C

Schutter v. Herskowitz
D.D.C.,2007.
Only the Westlaw citation is currently available.
United States District Court,District of Columbia.
Stephen SCHUTTER, Plaintiff,
v.
David HERSKOWITZ, et al., Defendants.
**Civil Action No. 06-1846(RMC).**

July 5, 2007.

James M. Loots, James M. Loots PC, Washington,
DC, for Plaintiff.

### MEMORANDUM OPINION

ROSEMARY M. COLLYER, United States District
Judge.

**\*1** Pending before the Court are motions to dismiss
filed by Defendants David Herskowitz and Phillip
Banks. Both argue that the Court lacks personal jur-
isdiction over them and that venue in the District of
Columbia is improper. Plaintiff Stephen Schutter
opposes the motions and has submitted affidavits in
which he purports to provide evidence that demon-
strates minimum contacts between Messrs. Her-
skowitz and Banks and the District of Columbia.
The Court finds that Mr. Schutter has failed to
make a prima facie showing that Defendants have
the minimum contacts with the District of
Columbia necessary to support personal jurisdic-
tion. The Court further finds that it is in the in-
terests of justice to transfer this case to the Eastern
District of Pennsylvania. Thus, the motions will be
granted in part and the case will be transferred.

### I. FACTUAL BACKGROUND

Mr. Schutter resides in the District of Columbia. At
some point in late 2005, he became involved in ne-
gotiations to purchase a youth hostel located in
Philadelphia, Pennsylvania. Mr. Herskowitz, who
lives in Vermont, owned the hostel; Mr. Banks,
who lives and works in Pennsylvania, is a real es-
tate broker who represented Mr. Schutter in the ne-
gotiations to purchase it. There is no evidence in
the record regarding who initiated the negotiations
between Mr. Schutter and Mr. Herskowitz. There is
a similar absence of evidence regarding who soli-
cited the agency relationship between Mr. Schutter
and Mr. Banks. In any event, in December 2005
Mr. Schutter and Mr. Herskowitz executed a pur-
chase agreement (the "Agreement") under which
Mr. Herskowitz promised to sell the hostel to Mr.
Schutter for $1.6 million. All negotiations among
the three parties were by telephone and written cor-
respondence; neither Mr. Herskowitz nor Mr.
Banks traveled to the District of Columbia in con-
nection with the transaction. Mr. Schutter executed
the Agreement in Washington, D.C ., and Mr. Her-
skowitz    executed    the    Agreement    in
Pennsylvania.FN1

> FN1. Mr. Herskowitz's sworn affidavit
> states that he executed the contract in
> Pennsylvania. Herskowitz Aff. ¶ 3. His
> brief in support of his motion to dismiss,
> however, states that he executed the con-
> tract in Vermont, although it cites the para-
> graph of the affidavit which states that he
> signed it in Pennsylvania. *See* Herskowitz
> Mem. of P. & A. In Supp. of Mot. to Dis-
> miss at 1. The Court assumes that the affi-
> davit is correct and that the contradictory
> statement in the brief is a scrivener's error.
> In either case, there is no dispute that Mr.
> Herskowitz executed the Agreement out-
> side the District of Columbia.

Under the terms of the Agreement, Mr. Schutter
paid $100,000 of the purchase price up front, which
Mr. Banks deposited into an escrow account at
Bryn Mawr Trust Co., a financial services institu-
tion located in Pennsylvania. Although the details
are sketchy, at some point Mr. Schutter learned that
the hostel had a maximum occupancy of 52 beds,
which was contrary to representations made by Mr.

Herskowitz during negotiations that the occupancy was 70 beds. Based on this alleged misrepresentation, the parties agreed that the Agreement would be terminated and the $100,000 in escrow would be returned to Mr. Schutter. Mr. Schutter contends that despite promises to do so, neither Mr. Banks nor Mr. Herskowitz has returned the $100,000.

Mr. Schutter filed this action on October 27, 2006. He asserts claims for breach of contract, fraudulent inducement to contract, breach of fiduciary duty, unjust enrichment, and fraud and misrepresentation.FN2 Mr. Herskowitz moved to dismiss on November 11, 2006, and on December 11, 2006, Mr. Banks did the same. The motions are now fully briefed and ripe for decision.

> FN2. Subject matter jurisdiction is based on diversity of citizenship because Mr. Schutter and Defendants are residents of different states and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a). Mr. Herskowitz challenges subject matter jurisdiction based on an arbitration clause in the Agreement but, because the Court concludes that it lacks personal jurisdiction over Defendants, it need not address that argument.

## II. LEGAL STANDARDS

### A. Rule 12(b)(2)

*2 On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing a factual basis for the court's exercise of personal jurisdiction over the defendant. *Crane v. N.Y. Zoological Soc'y,* 894 F.2d 454, 456 (D.C.Cir.1990). The plaintiff must allege specific acts connecting the defendant with the forum. *Second Amendment Found. v. U.S. Conference of Mayors,* 274 F.3d 521, 524 (D.C.Cir.2001). Bare allegations and conclusory statements are insufficient. *See id.*

In determining whether a factual basis for personal jurisdiction exists, the court should resolve factual discrepancies in the record in favor of the plaintiff. *Crane,* 894 F.2d at 456. The court need not treat all the plaintiff's allegations as true, however. *United States v. Philip Morris Inc.,* 116 F.Supp.2d 116, 120 n. 4 (D.D.C.2000). Instead, the court "may receive and weigh affidavits and any other relevant matter to assist it in determining the jurisdictional facts."*Id.*

### B. Rule 12(b)(3)

Under Federal Rule of Civil Procedure 12(b)(3), a defendant may, at the lawsuit's outset, test whether the plaintiff "has brought the case in a venue that the law deems appropriate."*Modaressi v.. Vedadi,* 441 F.Supp.2d 51, 53 (D.D.C.2006)."If the plaintiff's chosen forum is an improper venue under applicable statutes, or is otherwise inconvenient, the Court may dismiss the action or transfer the case to a district where venue would be proper or more convenient."*Id.* (citing 28 U.S.C. § 1406 (providing for dismissal or transfer when venue is defective) and 28 U.S.C. § 1404 (allowing a district to transfer venue "for the convenience of the parties and witnesses"))."Because it is the plaintiff's obligation to institute the action in a permissible forum, the plaintiff usually bears the burden of establishing that venue is proper."*Freeman v. Fallin,* 254 F.Supp.2d 52, 56 (D.D.C.2003); *see also* 5A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1352 (2d ed.1987) (noting that placing the burden on the plaintiff "seems correct inasmuch as it is plaintiff's obligation to institute his action in a permissible forum, both in terms of jurisdiction and venue.").

## III. ANALYSIS

### A. Personal Jurisdiction

Both Mr. Herskowitz and Mr. Banks argue that dismissal under Rule 12(b)(2) is warranted because they are not subject to personal jurisdiction in the

District of Columbia. It is well settled that the District of Columbia's long-arm statute, D.C.Code § 13-423(a)(1), " 'is as far-reaching as due process allows, meaning that only minimum contacts with the District are necessary to sustain jurisdiction here.' " *Mwani v. bin Laden,* 417 F.3d 1, 9 (D.C.Cir.2005) (quoting *Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC,* 148 F.3d 1080, 1089 (D.C.Cir.1998)). Whether a defendant has established "minimum contacts" with the District of Columbia turns on whether the exercise of jurisdiction would "offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945) (internal quotation marks omitted). These minimum contacts must be grounded in "some act by which the defendant purposefully avails [himself] of the privilege of conducting activities with the forum state, thus invoking the benefits and protections of its laws." *Asahi Metal Indus. v.Super. Ct. of Cal.,* 480 U.S. 102, 109 (1988). Stated differently, "the defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980). Generally, a plaintiff may not rely only on his own activity within the forum to establish the existence of the defendant's minimum contacts. *See Hanson v. Denckla,* 357 U.S. 235, 253 (1958).

*3 "[W]ith respect to interstate contractual obligations," such as those at issue in this case, the Supreme Court has "emphasized that parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanction in the other State for the consequences of their activities."*Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 473 (1985) (internal quotation marks omitted). This standard demands that an out-of-state resident do more than simply enter into a contract with a resident of the forum state. *Helmer v. Doletskaya,* 393 F.3d 201, 206 (D.C.Cir.2004) ("The Supreme Court has held that a contract with a resident of a forum does not by itself establish minimum contacts with the forum.") (citing *Burger King,* 471 U.S. at 478). Only if a non-resident "enters into a contract that has a 'substantial connection' with the forum" will he be found to have minimum contacts with the forum:

Because a contract is ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction, a court must evaluate the prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing to determine whether the defendant purposefully established minimum contacts within the forum.

*Helmer,* 393 F.3d at 205 (internal quotation marks omitted).

Thus, the questions here are whether the Agreement and other business relationships between Messrs. Herskowitz and Banks and Mr. Schutter had a "substantial connection" with the District of Columbia, or whether Mr. Herskowitz or Mr. Banks otherwise purposefully availed himself of conducting business in the District.

*1. Mr. Herskowitz*

In response to Mr. Herskowitz's challenge to the Court's jurisdiction, Mr. Schutter states that "[d]uring the fourth quarter of 2005, [he] negotiated with Mr. Herskowitz for the purchase of a youth hostel ... located in Philadelphia, Pennsylvania. The negotiations resulted in an Agreement dated December 2, 2005."Schutter Aff. in Opp'n to Herskowitz ¶ 2. He further states that throughout the negotiations he "communicated frequently with Mr. Herskowitz from [his] Washington DC residence," Mr. Herskowitz called him at his District of Columbia residence, and Mr. Herskowitz knew that he lived in the District of Columbia. *Id.* ¶ 3. Finally, Mr. Schutter asserts that he received and executed the Agreement at his District of Columbia residence, tendered payment pursuant to the Agreement from the District of Columbia, and suffered

damages from the breach of the Agreement in the District of Columbia. *Id.* ¶¶ 4-7.Mr. Schutter does not indicate who initiated the negotiations, how many times he talked to Mr. Herskowitz during the negotiations, or if he and Mr. Herskowitz ever met in person.

Mr. Schutter has fallen short of meeting his burden of demonstrating that the Court has jurisdiction. The Supreme Court and D.C. Circuit have been clear that a contract with a resident of the forum is not by itself sufficient to establish minimum contacts; the contract must have a "substantial connection" with the forum, which depends upon a realistic analysis of the parties' business relationship. *See Burger King,* 471 U.S. at 479. Mr. Schutter asserts that he negotiated by phone with Mr. Herskowitz while he was at his home in the District of Columbia, and that those negotiations led to a contract for the purchase of a hostel in Pennsylvania. Although Mr. Schutter was in the District of Columbia during the negotiations, there is no indication that Mr. Herskowitz "reached out" to the District of Columbia to establish "continuing relationships and obligations" with a District resident. *Id.* at 473.Moreover, the Agreement dealt exclusively with business and property interests in Pennsylvania; thus, the Agreement's intended future consequences were limited to that State, not the District of Columbia. In addition, the Agreement contained an arbitration clause and a choice-of-law provision, both of which indicated that Pennsylvania law governed the Agreement and any disputes arising from it. *See, e.g., S.E.C. v. Overseas Mgmt., Ltd.,* No. 04-302, 2005 WL 3627141, at *6 (D.D.C. Jan. 7, 2005)* ("While agreements to submit to a particular jurisdiction for resolution of disputes may not conclusively establish personal jurisdiction, it is nevertheless one factor relevant in an evaluation of the contract in question.") (internal citation omitted). On these facts, the Court cannot find that the Agreement had a "substantial connection" with the District of Columbia such that Mr. Herskowitz purposefully availed himself of conducting business here. *Cf. Helmer,* 393 F.3d at

183-84 (holding that contract between D.C. resident and Muscovite to purchase apartment in Moscow had no substantial connection to the District).

**\*4** The facts of this case are not appreciably different than those presented in *Gibbons & Co., Inc. v. Roskamp Inst.,* No. 06-720, 2006 WL 2506646 (D.D.C. Aug. 28, 2006). In *Gibbons,* the plaintiff-Gibbons & Co., a D.C. corporation-entered into a contract with a Roskamp, a Florida company, in which Gibbons agreed to lobby Congress on Roskamp's behalf. *Id.* at *1. During the course of dealing between the parties, they exchanged between 50 and 75 emails and more than 75 telephone calls; in addition, representatives of Roskamp traveled to the District to meet with Gibbons and Congressional officials. *Id.* The relationship eventually soured, and Gibbons sued Roskamp in this Court for breach of contract. *Id.* The Court held that Gibbons had failed to establish that Roskamp had minimum contacts with the District of Columbia. *Id.* at *3. First, the Court reasoned that Gibbons had relied primarily on its own activities in the District, which is insufficient to establish Roskamp's minimum contacts: "[A][p]laintiff's unilateral activities, even if performed with the goal of ultimately benefitting the defendant, do not satisfy the requirement that [the] defendant itself have some minimum contact with the District."*Id.* Second, the emails and telephone communications were "incidental to the contract," and "the mere fact that [Roskamp] allegedly retained [Gibbons's] professional services, which set into motion [Gibbons's] activities within the District, does not without more constitute an invocation by [Roskamp] of the benefits and protections of the District's laws."*Id.; see also FC Inv. Group LC v. IFX Mkts., Ltd.,* 479 F.Supp.2d 30, 39 (D.D.C.2007) (holding that the defendant's "regular" telephone calls to the District did not satisfy the "transacting business" requirement of the D.C. long-arm statute); *Far West Capital, Inc. v. Towne,* 46 F.3d 1071, 1075-77 (10th Cir.1995) (holding that periodic telephone calls and faxes between Nevada and Oregon residents and Utah

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

company in the course of contract negotiations were insufficient to establish minimum contacts with Utah).

Here, the record reveals that Mr. Herskowitz had even less contact with the District of Columbia than did the defendant in *Gibbons.* A few telephone calls and some unilateral conduct by Mr. Schutter within the District are simply not enough to establish that Mr. Herskowitz purposefully availed himself of the privilege of conducting activities in the District of Columbia. The Court therefore lacks personal jurisdiction over Mr. Herskowitz.

### 2. Mr. Banks

With respect to Mr. Banks, the evidence is similarly lean. Mr. Schutter submitted an affidavit in which he states that in 2005 he was "introduced to Mr. Philip Banks, who represented ... that he could assist in the procurement of financing and in drafting and negotiating a contract with Mr. David Herskowitz for the purchase of a youth hostel located in Philadelphia, Pennsylvania. The negotiations resulted in an Agreement ... which was drafted by Mr. Banks for the signature of both parties." Schutter Aff. in Opp'n to Banks ¶ 2. He further states that Mr. Banks represented that he had substantial business contacts in the District of Columbia and provided Mr. Schutter with a list of those contacts. *Id.* ¶ 3. Although it is somewhat unclear, Mr. Schutter also avers that Mr. Banks had a "Washington DC telephone number," presumably meaning a number with a "202" area code, and that most of the telephone conversations he had with Mr. Banks occurred on Mr. Banks's "local" telephone number. *Id.* ¶ 4. Mr. Schutter also states that he received and executed the Agreement in Washington, D.C., that he tendered payment pursuant to the Agreement from Washington, D.C., and that he suffered damages from the breach of the Agreement in Washington, D.C. *Id.* ¶¶ 5-9. Mr. Banks, who is proceeding *pro se,* does not specifically refute these facts; he states only that he "has not done business within the District of Columbia with reference to

this matter." Banks's Mot. to Dismiss ¶ 15.

**\*5** First, it is important to note that Mr. Banks was not a party to the Agreement. Thus, Mr. Schutter's statements that he received and executed the Agreement and made the down payment in the District of Columbia are not relevant to the minimum contacts analysis as to Mr. Banks. What is relevant is the arrangement and course of dealing between Mr. Banks and Mr. Schutter. On that issue, the record is sparse. All Mr. Schutter says is that he "was introduced" to Mr. Banks; he does not say who introduced him to Mr. Banks, or whether Mr. Banks solicited his business or otherwise purposefully reached out to the District of Columbia in order to establish the relationship between them. Further, the arrangement itself-that Mr. Banks would represent Mr. Schutter in a real estate transaction in which both the property and seller were located outside the District of Columbia-evidences no substantial connection with the District. Moreover, there is almost nothing in the record indicating what Mr. Banks actually did in connection with that transaction. The Agreement, which Mr. Banks "drafted," Schutter Aff. ¶ 2, appears to be nothing more than a form contract. Mr. Banks received Mr. Schutter's down payment and placed it into an escrow account, but those acts occurred in Pennsylvania. *See id.* ¶ 8; Agreement ¶ 3(B). Thus, Mr. Schutter fails to adduce evidence sufficient to show that Mr. Banks had minimum contacts with the District of Columbia in connection with the events underlying his claims. *See, e.g., FC Inv. Group,* 479 F.Supp.2d at 39.

Indeed, Mr. Schutter's affidavit seems to be aimed more at establishing that Mr. Banks is subject to general jurisdiction in the District of Columbia. Under the general jurisdiction doctrine, "a court may exercise personal jurisdiction over a non-resident defendant when that non-resident defendant has engaged in 'continuous and systematic' general business contacts in the forum." *Id.* at 36. Mr. Schutter states that Mr. Banks represented that he "regularly assisted businesses and individuals in the District

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

with real estate transactions and provided [Mr. Schutter] with business contacts listing local District of Columbia telephone numbers," Schutter Aff. ¶ 3; he also states that he "believed [Mr. Banks] to have significant business relationships in the District of Columbia," and that Mr. Banks had a "local" telephone number, *id.* ¶ 5. These vague, uncorroborated statements are, however, insufficient to establish that Mr. Banks has "continuous and systematic" business contacts with the District apart from the transaction at issue in this case. *See Atlantigas Corp. v. Nisource, Inc.,* 290 F.Supp.2d 34, 42 (D.D.C.2003) ("In order to meet its burden, plaintiff must allege specific facts on which personal jurisdiction can be based; it cannot rely on conclusory allegations."). Although Mr. Schutter's affidavit claims that Mr. Banks has significant business dealings in the District, the Court does not assign the affidavit serious weight because Mr. Schutter provides no specifics and no documentary or other contemporaneous evidence, such as the alleged list of D.C. contacts. *See id.*("When considering personal jurisdiction, the Court need not treat all of the plaintiff's allegations as true. Instead, the court may receive and weigh affidavits and other relevant matter to assist in determining the jurisdictional facts.") (internal quotation marks omitted). The Court simply cannot find that it has general jurisdiction over Mr. Banks based on nothing more than Mr. Schutter's sweeping assertion that Mr. Banks regularly conducts business in the District of Columbia.

**B. Venue**

**\*6** In addition to seeking dismissal based on lack of personal jurisdiction, both Defendants also argue that venue in the District of Columbia is not proper. Even though the Court has concluded that it lacks personal jurisdiction over Messrs. Herskowitz and Banks, it may nonetheless transfer venue if it is in the interests of justice to do so. *See, e.g., Cameron v. Thornburgh,* 983 F.2d 253, 257 (D.C.Cir.1993) ("[W]e may transfer the case even though it is likely that we do not have personal jurisdiction over appellees") (citing *Goldlawr, Inc. v. Heiman,* 369

U.S. 463, 466 (1962)). The Court finds that it is in the interests of justice to transfer this action, and therefore will transfer the case to the Eastern District of Pennsylvania.[FN3]

> [FN3]. Although Defendants moved only to dismiss for improper venue, the Court may consider transfer *sua sponte. See, e.g., Schreiber v. Kohn,* 434 F.Supp.2d 1, 2-3 (D.D.C.2006) (transferring case *sua sponte* under 28 U.S.C. § 1404(a)).

There are two statutory provisions allowing district courts to transfer venue: 28 U.S.C. § 1404(a) and 28 U.S.C. § 1406(a). The former Section governs the transfer of so-called "convenience" cases-that is, cases in which venue is proper in the original court but the court decides that transfer is warranted for the "convenience of the parties and witnesses."The latter Section controls in cases where venue is improper in the original court but, rather than dismissing the action, the court decides to transfer to a district in which venue is proper. Despite its lack of personal jurisdiction, this Court may transfer venue under either Section 1404(a) or Section 1406(a).*See In re Vitamins Antitrust Litig.,* 270 F.Supp.2d 15, 37 (D.D.C.2003).

On the current record, the Court concludes that transfer to the Eastern District of Pennsylvania is warranted under either Section 1404(a) or Section 1406(a). Under Section 1404(a), a court may transfer venue when two requirements are met: (1) the proposed transferee district is one in which the action might have been brought originally; and (2) the court decides, in the exercise of its discretion, that the transfer is warranted. *See DeLoach v. Phillip Morris Cos.,* 132 F.Supp.2d 22, 24-25 (D.D.C.2000). In deciding whether transfer is warranted, courts should consider the convenience of the parties and witnesses, as well as the "interests of justice." *See*28 U.S.C. § 1404(a). Similarly, under Section 1406(a), a court may transfer venue when it is in "the interest of justice." That decision is within the district court's discretion. *Davis v. Am.*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*Soc'y of Civil Eng'rs,* 290 F.Supp.2d 116, 120 (D.D.C.2003). Generally, the interests of justice favor transfer rather than dismissal. *Id.* Before transferring under Section 1406(a), the court must ensure that "venue is proper and that the defendants are subject to personal jurisdiction in the transferee forum."*Id.*

It is clear on the facts in the record that this case could have been brought in the Eastern District of Pennsylvania. The property that is the subject of the Agreement is located in that District and is owned by Mr. Herskowitz, who held the property out for sale. Mr. Banks, who represented Mr. Schutter in the negotiations, was operating from his offices within that District. And the $100,000 down payment that Defendants are allegedly withholding from Mr. Schutter was deposited in an escrow account located in that District. Thus, venue in that District would be proper under 28 U.S.C. § 1391(a)(2), which allows, in a case based on diversity of citizenship, venue in any judicial district where "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated."Moreover, because Mr. Banks lives in that District, and because Mr. Herskowtiz owns property there and contracted to sell that property to Mr. Schutter, it is almost certain that both Defendants have minimum contacts with that jurisdiction such that they would be subject to personal jurisdiction there.

**\*7** In deciding whether transfer under Section 1404(a) is warranted, courts should balance the public and private interests at stake, including but not limited to:
(1) plaintiffs' privilege of choosing the forum; (2) defendant's preferred forum; (3) location where the claim arose; (4) convenience of the parties; (5) convenience of witnesses, but only to the extent that witnesses may be unavailable for trial in one of the fora; and (6) ease of access to sources of proof. Public interest considerations include: (1) the transferee's familiarity with the governing law; (2) the

relative congestion of the courts of the transferor and potential transferee; and (3) the local interest in deciding local controversies at home.

*Lentz v. Eli Lily & Co.,* 464 F.Supp.2d 35, 37 (D.D.C.2006).

The majority of these factors weigh in favor of transfer. Obviously Messrs. Herskowitz and Banks believe that this case should not be heard in the District of Columbia, and it would be more convenient for both to have the case in Philadelphia since it is close to Mr. Banks's residence and Mr. Herskowitz has business interests there. Moreover, because the property that is the subject of the Agreement is located in Philadelphia, and because Mr. Schutter's claims are based in part on alleged misrepresentations about the physical characteristics of the hostel, access to sources of proof favors venue in the Eastern District of Pennsylvania. With respect to the public factors, Mr. Schutter's contract claims will be governed by Pennsylvania law, which is more familiar to the District Court in the Eastern District of Pennsylvania than it is to this Court. And although this dispute is somewhat interstate in nature, it is "local" to the Eastern District of Pennsylvania in the sense that the real property and business that are the heart of this action are located in that District. *See Kawamoto v. CB Richard Ellis, Inc.,* 225 F.Supp.2d 1209, 1212 (D.Haw.2002) (holding, in real estate contract action, that the jurisdiction in which the property was located had a substantial local interest in resolving the dispute). And, perhaps most importantly, both Mr. Herskowitz and Mr. Banks would be subject to personal jurisdiction in that venue. Thus, the interests of justice favor transfer to the Eastern District of Pennsylvania.

## IV. CONCLUSION

Mr. Schutter fails to present evidence that either Mr. Herskowitz or Mr. Banks had minimum contacts with the District of Columbia. As a result, the Court lacks personal jurisdiction over them. The

Court further concludes that transferring this action to the Eastern District of Pennsylvania is in the interests of justice. Thus, Defendants' motions will be granted in part and the case will be transferred to the Eastern District of Pennsylvania. A memorializing order accompanies this Memorandum Opinion.

D.D.C.,2007.
Schutter v. Herskowitz
Slip Copy, 2007 WL 1954416 (D.D.C.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT F

Westlaw.

Not Reported in F.Supp.2d                                                      Page 1
Not Reported in F.Supp.2d, 2006 WL 1548006 (S.D.Fla.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**Stiefel Laboratories, Inc. v. Galenium USA, LLC
S.D.Fla.,2006.
Only the Westlaw citation is currently available.
United States District Court,S.D. Florida.
STIEFEL LABORATORIES, INC., a Delaware
Corporation, Plaintiff,
v.
GALENIUM USA, LLC, a Florida Limited Liability
Company, PT Galenium Pharmasia Laboratories,
a/k/a Galenium Pharmasia Laboratories, an
Indonesian Corporation, and Aswin Joesoef, an
individual, and Does 1-10, Defendants.
No. 05-23108-CIV.

April 11, 2006.

John Cyril Malloy, III, Andrew W. Ransom, Malloy
& Malloy, P.A., of Miami, Florida, for Plaintiff.

*ORDER GRANTING MOTION FOR DEFAULT
(D.E.52) AND ENTERING DEFAULT AGAINST
DEFENDANT PT GALENIUM PHARMASIA
LABORATORIES, A/K/A GALENIUM PHARMASIA
LABORATORIES; DENYING MOTION TO EXTEND
TIME TO SERVE (D.E.56) AS MOOT*

LENARD, J.
**\*1** THIS CAUSE is before the Court upon
Plaintiff's Motion for Clerk's Default as to Defendant
PT Galenium Pharmasia Laboratories, a/k/a
Galenium Pharmasia Laboratories (D.E.52), filed
March 16, 2006 and Plaintiff's Motion to Extend
Time to Serve Defendant PT Galenium Pharmasia
Laboratoires Via Letter Rogatory (D.E.56), filed
March 30, 2006. No response has been filed to either
Motion. Having considered the Motions, and being
fully advised in their premises, the Court finds as
follows.

Plaintiff filed the Complaint in this matter on
November 30, 2005. (D.E.1.) On February 9, 2006,
the Clerk of the Court issued a Notice of International
Service (D.E.24), indicating that documents had been
mailed via DHL International Service to Defendant
PT Galenium Pharmasia Laboratories in Jakarta,
Indonesia. Additionally, Plaintiff has filed an
affidavit of service executed by DHL indicating that

Defendant PT Galenium was served, via International
Express Mail requiring a signature upon receipt, with
the Complaint on February 13, 2006. (D.E.52, Ex. 2-
3.) Service upon a foreign corporation via
international mail is authorized by Federal Rule of
Civil Procedure 4(h)(2) unless expressly prohibited
by the law of the foreign state.*Fed.R.Civ.P.*
*4(h)(2).Seealso Fed.R.Civ.P. 4(f)(2)(C);* 28 U.S.C. §
1608(a)(3), (b)(3)(B). Service via DHL courier is not
prohibited by Indonesian law and has been held
sufficient to satisfy Rule 4(f)(2)(C)(ii).*Dee-K*
*Enterprises, Inc. v. Heveafil SDN. BHD,* 174 F.R.D.
376, 382 (E.D.Va.1997). Over 20 days have passed
since service was effectuated and Defendant PT
Galenium Pharmasia Laboratories has not made an
appearance or responded to the Complaint.
Accordingly, it is,

ORDERED AND ADJUDGED that:
1. Plaintiff's Motion for Clerk's Default as to
Defendant PT Galenium Pharmasia Laboratories,
a/k/a Galenium Pharmasia Laboratories (D.E.52),
filed March 16, 2006, is GRANTED.
2. Pursuant to Rule 55 of the Federal Rules of
Civil Procedure, default is hereby ENTERED as to
Defendant PT Galenium Pharmasia Laboratories,
a/k/a Galenium Pharmasia Laboratories.
3. Plaintiff is directed to file, within fifteen (15)
days of the date of this Order, a Motion for Final
Default Judgment as to Defendant Defendant PT
Galenium Pharmasia Laboratories, a/k/a Galenium
Pharmasia Laboratories or to show cause why this
action should not be dismissed for lack of
prosecution.
4. Plaintiff's Motion to Extend Time to Serve
Defendant PT Galenium Pharmasia Laboratoires Via
Letter Rogatory (D.E.56), filed March 30, 2006, is
DENIED as moot.

DONE AND ORDERED.

S.D.Fla.,2006.
Stiefel Laboratories, Inc. v. Galenium USA, LLC
Not Reported in F.Supp.2d, 2006 WL 1548006
(S.D.Fla.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

ESTATE OF MARANI AWANIS MANOOK,

                                Plaintiff,            Civil Case No. 1:08-cv-00096 (PLF)

                -against-

UNITY RESOURCES GROUP and RTI                       Hon. Paul L. Friedman
INTERNATIONAL,

                                Defendants.

### ORDER GRANTING MOTION TO DISMISS
### THE FIRST AMENDED COMPLAINT AS TO
### DEFENDANT UNITY RESOURCES GROUP PTE. LTD.

WHEREAS, this matter having come to be heard on the Motion of Defendant

Unity Resources Group Pte. Ltd. ("Unity") To Dismiss The First Amended Complaint for

insufficient service of process and lack of personal jurisdiction, pursuant to Rules

12(b)(2) and 12(b)(5) of the Federal Rules of Civil Procedure; and

WHEREAS, all parties having had the opportunity to respond to Unity's

motion, and the Court having considered all the argument of the parties and their counsel;

IT IS HEREBY ORDERED that Unity's motion is granted, and the First

Amended Complaint is dismissed as to Unity pursuant to Rules 12(b)(2) and 12(b)(5) of

the Federal Rules of Civil Procedure on the grounds that there was insufficient service of

process and the Court lacks personal jurisdiction over Unity.

Dated:      April __, 2008

                                                  _____
                                                  Hon. Paul L. Friedman, U.S.D.J.