**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| Estate of Marani Awanis Manook ) ) ) Plaintiff, ) ) v. ) ) Unity Resources Group and RTI International, ) ) Defendants. ) ) ) | Case No. 08-0096 (PF) |

**PLAINTIFF'S OPPOSITION TO
UNITY RESOURCE GROUP'S MOTION TO DISMISS**

In its Motion to Dismiss, Unity portrays itself as a stranger to this District, a Singapore corporation with offices in Dubai.  The reality is far different.  Unity certainly can be haled before this District Court consistent with the teachings of *Worldwide Volkswagon Corp. v. Woodson,* 444 U.S. 286 (1980) and its progeny.  Unity, a defense contractor being paid by United States taxpayer dollars, has continuous and systemic contacts with this District.  Indeed, undersigned counsel recently discovered that Unity maintains an office at 1701 Pennsylvania Avenue, Washington D.C., staffed by at least one Unity employee named David Rolfes.  Thus, defense counsels' representations to this Court that Unity cannot be subject to jurisdiction here consistent with due process appear to be, at best, nothing more than hyperbolic argument not founded in facts.[1]

---

[1] Undersigned counsel assume that defense counsel were not seeking affirmatively to mislead the Court, but instead simply were unaware of Unity's office here in this District just as they were unaware of Unity's correct address in Dubai.  It is unclear that such innocent mistakes can be assumed as to Unity itself.  Upon attempting to serve Unity at the Washington address, the process server was told that the office had closed on April 4, 2008.  Counsel's telephone calls to the office on April 10, 2008, however, indicate that Unity employees continue to work at that

## I.    UNITY HAS BEEN SERVED PROPERLY.

Unity's Motion To Dismiss seeks to dismiss an action filed by the Estate of Marani Awanis Manook, who Unity shot and killed for no reason.[2]  Unity claims that the action should be dismissed because service was not valid.  Unity cites two reasons for its assertion that service was invalid:  first, Unity contends that plaintiffs' failed to comply with federal service requirements because of the fact that plaintiff's counsel delivered the package to DHL; and second, the package was sent to an incorrect address and therefore received by the wrong Unity affiliate.

As to the first contention, plaintiff has complied with every applicable rule regarding service on a foreign corporation.  Unity is attempting to portray this as a case wherein plaintiff's counsel merely shipped the service package to defendant via a private courier with no involvement of the clerk and no attempt to comply with applicable rules.  This misstates the facts and cites to case law that simply does not apply.

As required by F.R.Civ.P. 4, the clerk of the Court properly transmitted the service package to Unity.  Plaintiff's counsel completed all requirements listed on the Service of Process on a Foreign Defendant Checklist as published by the U.S. District Court for the District of Columbia and followed all procedures outlined in the Attorney Manual for Service of Process on a Foreign Defendant, as published by the same entity.  As detailed in the attached affidavit, Plaintiff's counsel filed an Affidavit Requesting Foreign Mailing in the form proscribed by the clerk's office of the United States District Court for the District of Columbia.  He provided the

---

location.  *See Declaration of William T. O'Neil ("O'Neil Decl.") at ¶ 12, attached hereto as Exhibit A.*
[2] Immediately after the incident, Unity publicly admitted to the mass media that Unity had made a dreadful mistake in shooting Ms. Manook and intends to compensate the family of Ms. Manook.

Clerk copies of the Affidavit Requesting Foreign Mailing, proof of filing, the summons, original complaint and amended complaint, as well as a DHL package and pre-paid DHL International airbill pursuant to the instructions published by the Clerk in its Manual for Foreign Mailing.  The Clerk addressed and sealed the package, and, after two attempts to use a commercial messenger service failed, Mr. O'Neil served as the courier to DHL.  See *O'Neil Decl. at ¶¶ 3-9.*  The mere fact that the clerk made use of the plaintiff's counsel to act as a delivery person does not invalidate otherwise valid service, and Unity cites no authority to support any such claim.  Cases in which counsel served via Federal Express without the involvement of the clerk are not persuasive, given the undisputed fact here that the service package was prepared by the Clerk's office.  Unity was served in compliance with all applicable rules and service is valid upon them.

The second argument made by Unity is that service is invalid because the package was sent to an incorrect address and received by a Unity affiliate.  Service was made to the address which Unity itself published on its website as its business address. *O'Neil Decl. at ¶ 2.*  Indeed, even Unity's counsel believed that the address used by plaintiff's counsel and the Court was the correct address.  *See Memorandum in Support of Motion To Dismiss ("Unity Memo") at fn. 7.*  Unity admits that the location of service was its prior business address and remains the address of an affiliated business, without describing in detail the nature of the affiliation.  It is bold indeed for Unity to suggest that plaintiff's counsel erred in using the address it published to the world as its own and that the claims of the wrongfully murdered should therefore be dismissed.

Further, regardless of the facts relating to the Dubai service, Unity has now been served properly here in this District.  Under D.C. Code 29-101.12(b), formerly 29-312(b), if a foreign corporation transacting business in the District of Columbia fails to comply with the requirements of D.C. Code 29-101.99(e)(1), formerly 29-399(e)(1), and appoint a registered

3

agent for service of process in the District of Columbia, such failure constitutes a voluntary

appointment of the Mayor as their registered agent for service.  Counsel found no registration of

Unity Resources Group in searches of the District of Columbia Department of Consumer &

Regulatory Affairs corporate database of registered companies.  *O'Neil Decl. at ¶ 11.*

Immediately upon learning that Unity had a business office in the District of Columbia, Plaintiff

properly served the summons and complaint pursuant to the requirement of Rule 4 of the District

of Columbia Superior Court Rules of Civil Procedure.  See Affidavit of Service dated April 9,

2008, attached as Exhibit B.

## II.    UNITY IS SUBJECT TO JURISDICTION IN THIS DISTRICT.

Unity next argues that this Court lacks jurisdiction over Unity because Unity does not do

business in this District.  Unity claims it is a Singapore corporation with its principal place of

business in Dubai and cannot be subject to general or specific personal jurisdiction in this

District.  Yet as noted above, undersigned counsel learned subsequent to the filing of the Motion

To Dismiss that Unity actually maintains an office at 1701 Pennsylvania Avenue in this District

and staffed by a Unity employee named David Rolfes.

Counsel learned of this office and tried to serve process on Unity there on April 8, 2008.

The process server -- whose Return of Service Affidavit is attached as Exhibit B – reported that

Unity had been operating out of that office until April 4, 2008.  As reported to the process server,

the office was staffed by a Unity employee named David.  Thus, contrary to the suggestion in the

sworn affidavit of Mr. Stephen, Unity clearly has been doing business in this District and is

therefore subject to this Court's exercise of general jurisdiction.  Moreover, service was made

upon Unity in the District of Columbia pursuant to District of Columbia statute, and the exercise

of jurisdiction by this court is therefore proper.  See Exhibit B.

Even without consideration of Unity's office in this District, which was never brought to the Court's or Plaintiffs counsel's attention despite numerous opportunities to do so, Plaintiff has alleged sufficient facts showing that Unity does conduct business in this district and is therefore subject to the jurisdiction of this Court. See ¶¶ 4-7, First Amended Complaint. Such contacts are sufficient under the D.C. long arm statute provision granting jurisdiction over those "transacting any business in the District of Columbia," which is given an expansive interpretation "coextensive with the due process clause." *United States v. Ferrara*, 54 F.3d 825, 828 (D.C.Cir. 1995); *Crane v. Carr*, 814 F.2d 758, 762 (D.C.Cir. 1987). The Due Process Clause is intended to provide a "degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 287 (1980). Due process, however, requires far less than physical presence in the jurisdiction. As the Supreme Court held in *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985), it is an "inescapable fact of modern life that a substantial amount of business is transacted solely by mail and wire communications across state lines." *Burger King*, 471 U.S. at 476. *See also Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 511 (D.C. Cir. 2002) (email transactions can be basis for jurisdiction); *Neal v. Janssen,* 270 F.3d 328, 332 (6th Cir. 2001) (holding that "making phone calls and sending facsimiles into the forum" may be sufficient to confer specific jurisdiction); *Oriental Trading Co. v. Firetti,* 236 F.3d 938, 943 (8th Cir. 2001) (same).

Moreover, were the Court to want additional evidence that Unity is subject to its jurisdiction, undersigned counsel likely would be able to establish on the record in depositions that Unity executives maintain offices in this District and travel regularly and routinely to this

District to solicit and conduct business.[3]  For example, among other things, Unity executives travel here to disseminate marketing materials and solicit new contracts.  *O'Neil Decl. at ¶ 14.* Unity also participates with the industry in the trade association for mercenaries, which goes by the name International Peace Operations Association ("IPOA"). Indeed, Unity has agreed by its membership to participate in IPOA proceedings here in this District.  *O'Neil Decl. at ¶ 13.*

Such jurisdictional discovery is routinely granted before an action is dismissed on jurisdictional grounds.  *See, e.g., GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1351-52 (D.C. Cir. 2000) ("This court has previously held that if a party demonstrates that it can supplement its jurisdictional allegations through discovery, then jurisdictional discovery is justified. . . .  We cannot tell whether jurisdictional discovery will assist [plaintiff] on this score, but it is entitled to pursue precisely focused discovery aimed at addressing matters relating to personal jurisdiction.");  *El-Fadl v. Cent. Bank of Jordan*, 75 F.3d 668, 676 (D.C. Cir. 1996) ("A plaintiff faced with a motion to dismiss for lack of personal jurisdiction is entitled to reasonable discovery, lest the defendant defeat the jurisdiction of a federal court by withholding information on its contacts with the forum."); *Crane v. Carr*, 814 F.2d 758, 760 (D.C. Cir. 1987) (vacating judgment based on lack of opportunity to conduct discovery on the issue of personal jurisdiction and citing numerous authorities); *Diamond Chem. Co. v. Atofina Chems., Inc.*, 268 F. Supp. 2d 1, 15 (D.D.C. 2003) (granting jurisdictional discovery for facts supporting application of the D.C. long-arm statute and noting that it is "hard to imagine a situation where a plaintiff could not demonstrate that it can supplement its jurisdictional allegations through discovery") (internal citation and quotation marks omitted).

---

[3] Counsel has interviewed persons knowledgeable about Unity's solicitation of business here in this District, but none is willing to come forward voluntarily with a Declaration to assist the plaintiff.  Thus, the coercive power of subpoenas would be needed to obtain the evidence in admissible form.

## CONCLUSION

There is sufficient evidence on the record already for this Court to exercise jurisdiction over Unity.   Exercising personal jurisdiction over Unity is consistent with due process and the teachings of the Supreme Court because Unity maintains an office in this District and regularly solicits and conducts business in this District.  Unity has been properly served, both in Dubai and here in this District.  At the very least, plaintiff should be given an opportunity to conduct a modest period of discovery designed to establish the known jurisdictional predicates with record evidence.   For all of these reasons, Unity's Motion to Dismiss should be denied.


Date:  April 10, 2008                             ___/s/ William T. O'Neil_____
                                                  Susan L. Burke (D.C. Bar # 414939)
                                                  William T.  O'Neil (D.C. Bar # 426107)
                                                  Elizabeth M. Burke (D.C. Bar# 435866)
                                                  Katherine R. Hawkins
                                                  BURKE O'NEIL LLC
                                                  4112 Station Street
                                                  Philadelphia, PA 19127
                                                  Telephone:     (215) 971-5058
                                                  Facsimile:     (215) 482-0874

                                                  Shereef Hadi Akeel
                                                  AKEEL & VALENTINE, P.C.
                                                  401 South Old Woodward Avenue
                                                  Suite 430
                                                  Birmingham, MI 48009
                                                  Telephone:     (248) 594-9595
                                                  Facsimile:     (248) 594-4477

                                                  *Counsel for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| Estate of Marani Awanis Manook | ) ) ) |
| Plaintiff, | ) )  Case No. 08-0096 (PF) ) |
| v. | ) ) |
| Unity Resources Group and RTI International, | ) ) |
| Defendants. | ) ) ) ) |

### DECLARATION OF WILLIAM T. O'NEIL

William T. O'Neil hereby declares, under penalty of perjury, as follows:

1.    I am a member in good standing of the bar of the District of Columbia. We serve as counsel to the plaintiff in the above captioned matter.

2.    In drafting the Complaint and the Amended Complaint, we included the address for Unity Resources Group that was provided by that entity on its web-site, www.unityresourcesgroup.com.  In the intervening period, the Unity Resources Group website has removed this address in Dubai and now shows no address other than a Post Office box.

3.    On February 12, 2008, I filed an Affidavit Requesting Foreign Mailing in the form proscribed by the clerk's office of the United States District Court for the District of Columbia.  This Affidavit is listed as docket entry 2 on the court's docket sheet.

4.    In seeking service from the Clerk pursuant to Fed.R.Civ.P. 4, I provided the Clerk copies of the Affidavit Requesting Foreign Mailing, proof of filing, the

summons, original complaint and amended complaint, as well as a DHL package and pre-paid DHL International airbill, pursuant to the instructions published by the Clerk's office in its Manual for Foreign Mailing. The relevant Manual pages are attached as Exhibit 1.

5.      On or about February 19, 2008, I received a telephone call from Tawana Davis of the Clerk's office informing me that the package was ready for delivery. I then arranged for DHL to pick up the package at the Clerk's office.

6.      On or about February 20, 2008, I received a call from DHL informing me that they were unable to pick up the package at the Clerk's office. I then arranged for them to attempt pick-up of the package for a second time.

7.      On or about February 21, 2008, DHL again called to tell me that they had been unable to pick-up the package at the Clerk's office.

8.      On or about February 21, 2008, rather than attempt to schedule DHL to pick up the package from the clerk for the third time, I personally went to the Clerk's office and volunteered to bring the package to DHL. The Clerk's office gave me the package that had already been prepared for service. The Clerk, not any attorney or employee of Burke O'Neil LLC, had already filled out the airbill and sealed the package. I simply delivered that package unopened to the DHL shipping office at 1929 18th Street N.W., Washington D.C.

9.      On or about February 27, 2008, after obtaining the tracking information showing receipt, I filed that information with the Clerk's office. Upon consultation with the ECF clerk, I re-filed this information on March 4, 2008. This filing appears as docket entry 9 on the court's docket sheet.

10.    On or about April 7, 2008, Burke O'Neil's associate, Katherine Hawkins, discovered Unity maintains offices in the District of Columbia. A true and correct copy of the listing Ms. Hawkins discovered is attached as Exhibit 2. After learning of this location, we retained a process server to try to serve Unity at this location, which is an executive suites service. The process server (whose affidavit is attached to the Opposition as Exhibit B) learned that a Unity employee named David had been regularly working in the offices until April 4, 2008.

11.    I conducted searches of the District of Columbia Department of Consumer & Regulatory Affairs corporate database of registered companies and found no registration of Unity Resources Group.

12.    On April 10, 2008, I placed a phone call to the office listing in Exhibit 2. The telephone was answered by Candace, who did not give her last name. Candace informed me that she was an employee of the executive suites company that runs the location. I asked to speak to any employee of Unity Resources Group, and after being placed on hold, she told me that no one was available at the time because they were out to lunch. I asked if there was a Unity employee named David working there, and she responded that David Rolfes, a Unity employee, was often in the office. She confirmed the address of the location as 1701 Pennsylvania Ave., N.W., Washington D.C. I asked whether the office had closed, and she stated that the main office was no longer located at that address but that the employees continued to "come in" to that location on a regular basis. She also confirmed that this office of Unity Resources Group was the same company that has its headquarters in Dubai.

3

13.    Unity is a member of the mercenaries' trade association, known as International Peace Operations Association.  By becoming a member, Unity agrees to participate in IPOA's complaint resolution process, which necessarily occurs at least in part in the District of Columbia. A true and correct copy of the IPOA website pages showing Unity as a member and showing the IPOA complaint resolution process are attached as Exhibit 3.

14.    Based on information we have obtained by interviewing a witness with first-hand knowledge, we know that Unity executives regularly traveled to this District to solicit and conduct business.  We sought but failed to obtain voluntarily-provided declaration.  Based on what we have learned, however, we believe we would be able to obtain this evidence of conducting business with a modest amount of jurisdictional discovery.

Executed on April 10, 2008 in Washington, D.C.


_____
William T. O'Neil

**Exhibit 1**

# UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA



# ATTORNEY MANUAL FOR SERVICE OF PROCESS ON A FOREIGN DEFENDANT

**(Pursuant to FRCP 4 and the Foreign Sovereign Immunities Act)**

(March 2007)

# TABLE OF CONTENTS

**Section**                                                                                    **Page**
I.     **Introduction**
       A.     Purpose                                                                              1
       B.     Background Information                                                               1

II.    **Procedures for Service of Process Under FRCP 4(f)(2)(C)(ii)**
       A.     Docket the Affidavit Requesting Foreign Mailing                                     7
       B.     Submit Documents to the Clerk's Office                                              7
       C.     Mail Packages                                                                       8
       D.     Return Receipt for Registered Mail to the Clerk's Office                            8

III.   **Procedures for Service Under 28 U.S.C. § 1608(a)(3)**
       A.     Docket the Affidavit Requesting Foreign Mailing                                     9
       B.     Submit Documents to the Clerk's Office                                              9
       C.     Mail Packages                                                                       10
       D.     Return Receipt for Registered Mail to the Clerk's Office                            10

IV.    **Procedures for Service Under 28 U.S.C. § 1608(a)(4)**
       A.     Docket the Request for Process via the U.S. Department of State                     11
       B.     Submit Documents to the Clerk's Office                                              11
       C.     Mail Packages                                                                       12
       D.     Return Certified Mail Receipt to the Clerk's Office                                 12

V.     **Procedures for Service Under 28 U.S.C. § 1608(b)(3)(B)**
       A.     Docket the Affidavit Requesting Foreign Mailing                                     13
       B.     Submit Documents to the Clerk's Office                                              13
       C.     Mail Packages                                                                       14
       D.     Return Receipt for Registered Mail to the Clerk's Office                            14

VI.    **Returns of Service**
       A.     Return of Service Executed                                                          15
       B.     Return of Service Unexecuted                                                        15

VII.   **Other Documents Served on Foreign Defendants**
       A.     Defaults                                                                            16
       B.     Judgments/Default Judgments                                                         16
       C.     Orders                                                                              16

VIII.  **List of Attachments**                                                                   17

**II.**     **PROCEDURES FOR SERVICE OF PROCESS UNDER FRCP 4(f)(2)(C)(ii)**

**A.**     **DOCKET THE AFFIDAVIT REQUESTING FOREIGN MAILING**

1.     Fill out the *Affidavit Requesting Foreign Mailing*.

   a.     Counsel should request service of process on a foreign entity by filling out the *Affidavit Requesting Foreign Mailing* **(Attachment A),** which can be found on the Court's website: http://www.dcd.uscourts.gov/general-forms.html.
   
   (1)     Be sure to select the correct mailing method, as well as the appropriate provision being requested. In this case, select **FRCP 4(f)(2)(C)(ii)**.
   
   (2)     The affidavit may be electronically signed as "/s/[NAME]."

   b.     If you feel a more detailed explanation should be made as part of the request, you may draft a letter or some other form of pleading and attach it to the *Affidavit Requesting Foreign Mailing* as an exhibit.

2.     Docket the *Affidavit Requesting Foreign Mailing*.

   a.     Scan or convert the *Affidavit Requesting Foreign Mailing*, including the letter and/or other exhibits, to Portable Document Format (PDF).

   b.     Docket the *Affidavit Requesting Foreign Mailing* in the Case Management/Electronic Case Filing (ECF) system.
   
   (1)     Select the event "Affidavit for Foreign Mailing" found under **Other Documents** on the ECF civil docketing menu.
   
   (2)     Enter the case number and click SUBMIT.
   
   (3)     BROWSE for the PDF document you are filing.
   
      (a)     If you do not have any further attachments to your filing, click SUBMIT.
      
      (b)     If you have an attachment to your filing, click in the "Yes" radial button next to "Attachments to Document." Then click SUBMIT and follow the instructions on the next screen.
   
   (4)     Select the FILER and click SUBMIT.
   
   (5)     The next screen will ask "Should the document you are filing link to another document in this case?" Do not check the box next to this question. Just click SUBMIT.
   
   (6)     At the edit text screen, the text should read "AFFIDAVIT REQUESTING FOREIGN MAILING by [Plaintiff]." Click SUBMIT to complete the entry and receive the *Notice of Electronic Filing* **(Attachment B)**.

**B.**     **SUBMIT DOCUMENTS TO THE CLERK'S OFFICE**

1.     The attorney is responsible for submitting all necessary documents and/or mailing materials to the Clerk's Office in paper form.

   a.     Materials needed for service by **registered mail**:
   
   (1)     One (1) copy of the *Affidavit Requesting Foreign Mailing* (including letter and/or other exhibits, if applicable).
   
   (2)     One (1) copy of the *Notice of Electronic Filing*, confirming the ECF filing of the *Affidavit Requesting Foreign Mailing*.

(3)    One (1) copy of the *Return of Service Unexecuted* (if applicable and if not previously filed on the docket).

(4)    One (1) copy of the summons and complaint for each defendant (as well as any additional documents filed at the time the case was opened).

b.    Materials needed for service by **DHL**:

(1)    One (1) copy of the *Affidavit Requesting Foreign Mailing* (including letter and/or other exhibits, if applicable).

(2)    One (1) copy of the *Notice of Electronic Filing*, confirming the ECF filing of the *Affidavit Requesting Foreign Mailing*.

(3)    One (1) copy of the *Return of Service Unexecuted* (if applicable and if not previously filed on the docket).

(4)    One (1) copy of the summons and complaint for each defendant (as well as any additional documents filed at the time the case was opened).

(5)    One (1) DHL document envelope for each defendant.

(6)    One (1) DHL International Shipment Waybill **(Attachment C)** for each defendant.

(a)    The waybill should be blank except for the Payer Account Number. **Counsel must provide a DHL account number.** The Clerk's Office cannot be charged for the shipment.

(b)    Be sure to provide the specified International Shipment Waybill. This waybill allows for shipments outside the United States. If a different waybill is used, DHL will not deliver outside the country.

## C.    MAIL PACKAGES

1.    If service is to be attempted via registered mail, the attorney must take the package(s) to the Post Office. The Clerk's Office is not responsible for the cost of postage. A member of the Clerk's Office staff will call the attorney when the package(s) is ready to be picked up.

2.    If service is being attempted via DHL, the package(s) will be picked up from the Clerk's Office by a DHL courier. A member of the Clerk's Office staff will call DHL to schedule a pick-up.

## D.    RETURN RECEIPT FOR REGISTERED MAIL TO THE CLERK'S OFFICE

1.    Once you have taken the package(s) to the Post Office to be mailed, you must return the stamped *Receipt for Registered Mail* (PS Form 3806) **(Attachment D)** to the Clerk's Office for further processing.

2.    If the package(s) was shipped via DHL, there is no further follow up by the attorney until proof of delivery can be made.

ATTACHMENT A

CO 226
Rev. 4/06

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____
Plaintiff(s)

vs.                                                    Civil Action No.: _____

_____
Defendant(s)


## AFFIDAVIT REQUESTING FOREIGN MAILING

I, the undersigned, counsel of record for plaintiff(s), hereby request that the Clerk mail a copy of the summons and complaint (and notice of suit, where applicable) to (list name(s) and address(es) of defendants):_____

_____

_____

_____

_____

_____

by: (check one)        ❏        registered mail, return receipt requested
                       ❏        DHL
pursuant to the provisions of: (check one)
                       ❏        FRCP 4(f)(2)(C)(ii)
                       ❏        28 U.S.C. § 1608(a)(3)
                       ❏        28 U.S.C. § 1608(b)(3)(B)


I certify that this method of service is authorized by the domestic law of (name of country): _____
_____, and that I obtained this information by contacting the Overseas Citizens Services, U.S. Department of State.


                              _____
                                          (Signature)

                              _____

                              _____

                              _____

                              _____

                              _____
                                      (Name and Address)

**ATTACHMENT B**

MIME-Version:1.0
From:DCD_ECFNotice@dcd.uscourts.gov
To:DCD_ECFNotice@dcd.uscourts.gov
Bcc:RCL_ECF@dcd.uscourts.gov,bleibowitz@pop.net,robert_elliotte@dcd.uscourts.gov
Message-Id:<1285139@dcd.uscourts.gov>
Subject:Activity in Case 1:02-cv-02148-RCL GREENBAUM, et al v. ISLAMIC REPUBLIC, et al
"Affidavit for Default"
Content-Type: text/html

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* You may view the filed documents
once without charge. To avoid later charges, download a copy of each document
during this first viewing.**

**U.S. District Court**

**District of Columbia**

Notice of Electronic Filing

The following transaction was received from Leibowitz, Barry entered on 12/1/2006 at
4:23 PM EDT and filed on 12/1/2006

| | |
|---|---|
| **Case Name:** | GREENBAUM, et al v. ISLAMIC REPUBLIC, et al |
| **Case Number:** | 1:02-cv-2148 |
| **Filer:** | STEVEN M. GREENBAUM |
| | ALAN D. HAYMAN |
| | SHIRLEE HAYMAN |

**WARNING: CASE CLOSED on 08/31/2006**
**Document Number:** 33

**Docket Text:**
AFFIDAVIT REQUESTING FOREIGN MAILING *of the notice of default judgment,
judgment, and findings of fact and conclusion of law with translations thereof* by
STEVEN M. GREENBAUM, ALAN D. HAYMAN, SHIRLEE HAYMAN. (Leibowitz,
Barry)

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**E:\L&B\MAIN FILES\LIT 3257\Pleadings\Aff requesting Foreign
Mailing 12.01.06.pdf
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=973800458 [Date=12/1/2006] [FileNumber=1285137-0]
[34dd0f52379e079370ee3a45c3d650701ae1b66d37f0620562f469f340ca363e3817
24360248a31a2c219f7ccb215e867c6ad4df43480f3d211e619d3a14ec32]]

**1:02-cv-2148 Notice will be electronically mailed to:**

Barry L. Leibowitz      bleibowitz@pop.net,

**1:02-cv-2148 Notice will be delivered by other means to:**

**ATTACHMENT C**

International Shipment Waybill

**Exhibit 2**

Case 1:08-cv-00096-PLF      Document 22-2      Filed 04/10/2008      Page 15 of 30



## Maps

🖨 Print    ✉ Email    ⊗ Link to this page

**Unity Resources Group**
1701 Pennsylvania Ave NW # 300
Washington, DC 20006
(202) 580-6525

Get Directions: To here - From here
Edit



View Larger Map

©2008 Google

**Exhibit 3**

# Current IPOA Corporate Membership List



*All of these companies have received the IPOA Seal of Approval.*

*Every signatory to the IPOA Code of Conduct pledges to abide by the high ethical standards established therein.*

## Agility

AGILITY is a global provider of end-to-end supply chain solutions. We focus on offering customers truly personalized service and flexible supply chain solutions tailored to meet their individual business needs, supported by a comprehensive network of warehousing facilities, transportation and freight management services.



## Ameco

AMECO is a full-service equipment supplier, providing a broad array of services to construction, mining, government and industrial markets in Canada, the U.S., Mexico, the Caribbean and South America.



## American Glass Products

AMERICAN GLASS PRODUCTS profile forthcoming.



## ArmorGroup

ARMORGROUP is a publicly quoted global risk management services business that provides protective security services, security training, and landmine action to companies around the world.



## Creative Associates International

CREATIVE addresses urgent challenges facing societies today. They help clients turn transitional environments into a positive force - an impetus for creating more empowered and effective systems and institutions. Creative Associates International approaches change as an opportunity to transform and renew.



## DynCorp International

DYNCORP INTERNATIONAL is a multifaceted, global enterprise that provides innovative solutions to the diverse technology and professional services needs of government and commercial industry worldwide. DynCorp is a highly successful provider of critical support to military and civilian government institutions, and also have important commercial business in aviation, infrastructure development, security and logistics.



## Dynsec Group AB



Dynsec Group AB is a Swedish-based company whose core services include Security & Defense Training Courses, Risk Management, and Private Security Services.

## EOD Technology, Inc.



EOD TECHNOLOGY is an employee-owned firm specializing in Military Munitions Response, security related services, critical mission support, and contaminated property redevelopment since 1987.

## Erinys International



ERINYS is a private security company with global experience in nationwide security projects, personal protection, training and site security, with unique operational experience in the petroleum, construction, and mineral extraction industries.

## Evergreen International Aviation



EVERGREEN INTERNATIONAL AVIATION is a privately held global aviation services company capable of providing logistical, maintenance, and global transportation solutions.

## Ge2b International Security



Ge2b, is an Spanish Multinational, that offers Security Risks Management Services, Management of Crisis and Operations of Security for Governmental Organizations and International Private Corporations.

## Global Operational Resources Group



GLOBAL OPERATIONAL RESOURCES GROUP provides remote and hostile area medical services, training, and consulting to security companies, NGOs, and governments throughout the world.

## Gold Coast Helicopters



GOLD COAST HELICOPTERS is a privately held global provider of aircraft operations and aviation support services, principally to government entities and civil customers.

## HART Security



HART is a multi-national security company providing consultancy, mitigation, training and protective services aimed at reducing security risks globally across land, sea, and air.

## Insitu, Inc.



Insitu, Inc. is a privately-held company that provides Unmanned Aerial System (UAS) Intelligence, Surveillance and Reconnaissance (ISR) solutions, including the ScanEagle, Insight and Integrator UAS as well as OCONUS ISR operation support services. Principal end-users include the United States Navy, U.S. Marine Corps, U.S. Special Forces, Australian Defence Force, and U.K. Ministry of Defence (Royal Marines) in combat zones, areas of conflict and maritime patrols worldwide.

## International Armored Group



International Armored Group is a UAE-based company that has grown substantially over the years to include one of the most modern armored vehicle conversion workshops to be found in the Middle East and Gulf States region.

## Main Street Supply & Logistics



MAIN STREET SUPPLY & LOGISTICS is a supplier of stock four-wheel drive vehicles to the UN, aid and charity organizations, government organizations, NGOs, and missionary communities worldwide.

## Medical Support Solutions



MSS specializes in the provision of medical and emergency risk management and remote site medical services around the world.

## MPRI



MPRI is a professional services company specializing in security sector reform, institution building, leadership development, training, education, and emergency management around the world.

## Olive Group



OLIVE GROUP is a security sector specialist capable of providing risk consultation, training, secure technologies, and security operations to governmental and non-governmental organizations around the world.

## OSSI-Safenet Security Services



OSSI-SAFENET is a security firm operating in international zones of conflict. The company's primary operations are in the Middle East, and it has established itself with over 500 security personnel providing personal security, personnel movement, and site security in Iraq.

## Overseas Lease Group



OVERSEAS LEASE GROUP, INC. is a vehicle and equipment leasing business that specializes in providing customized lease solutions to multi-national companies,

government agencies, and NGOs operating in developing countries. We fulfill needs for small or large vehicle fleets, non-armored or armored trucks, buses, construction equipment, medical equipment, portable shelter structures, modular buildings, and fully modular man camps.

## Patriot K-9 Services



PATRIOT K-9 SERVICES is a leading provider of explosive detection and patrol dog teams in high risk environments worldwide. Experienced in working with both military units and civilian organizations providing teams for entry point security, aviation security, combat missions, and perimeter patrol.

## Paxton International



PAXTON INTERNATIONAL is an international relocation company & freight forwarder specializing in the movement of cargo and personal effects shipments into the developing world and emerging markets by land, air and sea.

## RA International



RA INTERNATIONAL specializes in reconstruction assistance in post-conflict areas, offering support services to the UN, NGOs, governments and the private sector around the world."

## Reed, Inc.



REED INCORPORATED provides professional, reliable security and logistics support, as well as construction and project management services to our clients worldwide. Reed specializes in operations in remote, third world, multi-cultural, and high-risk environments.

## Regis Trading



REGIS TRADING builds and supplies armoured vehicles and equipment to the security companies and demining organizations in areas of conflict where mines are a threat. Seraph provides the after sales service and support for Regis equipment as well as the leasing/hire of equipment.

## Rutherfoord

RUTHERFOORD is a full service worldwide insurance brokerage with specialty in DBA insurance programs.

## Security Support Solutions - 3S



3S provides independent advice, bullet and blast resistant vehicles, and other non-lethal equipment to government agencies, corporations, and private clients operating in dangerous and difficult areas.  Transport solutions are at the core of 3S's business.

## Scott Insurance



Scott Insurance is an independent, employee-owned risk management firm providing the full range of specialized solutions particularly suited to the diverse and unique needs of organizations in the business of conflict resolution, both domestically and internationally. It is consistently nationally ranked in the top tier of independent agencies, annually recognized as a Best Practices Agency. Its corporate belief is that necessary risk-based cultures create opportunity for empowerment and advancement.

## Skylink USA



SkyLink USA, a privately held company located at the Washington Dulles International Airport, is among the world's leading providers of logistics in unsecured and hostile environments, with specialties in transportation, end-to-end logistics, airport management, disaster and humanitarian relief and aviation support services.

## SOS International, Ltd.



SOS International Ltd. is a large, privately-owned company that provides a broad range of analysis, training, logistical, and consulting services to the U.S. Government and other large multinational corporations around the world. SOSi specializes in supporting stability and peacekeeping operations, security sector reform, and capacity and institution building in pre-and post conflict environments.

## Swift Global Logistics



THE SWIFT GROUP, headquartered in Dubai, United Arab Emirates, has provided a comprehensive range of freight and logistics services since its inception in 1989. Swift is dedicated to providing quality service and innovative logistics solutions, offering customers local expertise through its network of 46 offices throughout Africa, the Middle East and Asia.

## Tangiers International



Tangiers International is a privately held global provider of Insurance support services pertaining to Investigations, medical support/evacuation and matters related U.S. Department of Labor Defense Base Act.

## The Development Initiative (TDI)



The TDI group of companies provides the following services to multi-national corporations, governmental and non-governmental organizations: Landmine clearance, Battle area clearance, Explosive ordnance disposal and consultancy, narcotics detection dogs, Attack dogs and explosive detection dogs, and, Logistics and remote operations support. TDI staff have experience of working in theatres such as Kuwait, Taiwan, Iraq, Afghanistan, Angola, Mozambique, Lebanon, Laos, Sudan, Bosnia and many others

## TOIFOR



TOIFOR is the leading provider of Military Life Support Services and Camp Site Services in South East Europe and the Middle East. TOIFOR offer the whole range of camp site services, from initial camp building, tents, containter and prefabricated

housing to all life support services from catering to waste management services.

## Total Intelligence Solutions, LLC



TOTAL INTELLIGENCE SOLUTIONS provides a one-stop service able to meet all the intelligence, operational and security needs required by today's global business environment.

## Track 24



Track 24 provides tracking, monitoring and crisis management solutions to companies operating in higher risk environments. Our solutions help organizations and individuals improve their management of risk, enhancing safety, security and productivity.

## Unity Resources Group



UNITY RESOURCES GROUP is a provider of consulting, training and critical support services to organizations that need to operate in the world's most complex and unpredictable environments.

Close Window



INTERNATIONAL PEACE OPERATIONS ASSOCIATION

# Enforcement Mechanism



### Preamble

This Enforcement Mechanism is the process followed by the Standards Committee of the International Peace Operations Association (SCIPOA) in response to a complaint being lodged against a member company of the International Peace Operations Association (IPOA). This Enforcement Mechanism shall not be legally binding. It is intended that it serve as a guide for the SCIPOA in its monitoring of Member compliance with the IPOA Code of Conduct ("the Code"). IPOA is not a law enforcement or judicial organization, and will not attempt to prove the guilt or innocence of a member company in a criminal or civil legal case.

### Section 1 – Jurisdiction of the SCIPOA

1.1 Entities shall only be subject to the Enforcement Mechanism if they are Members of IPOA.

1.2 A Member of IPOA is defined as an entity whose application to join IPOA has been approved by the International Peace Operations Association Membership Committee (IPOAMC) and has not been subsequently terminated by the Member or by the IPOA Board.

1.2.1 A Friend of IPOA shall not be defined as a Member of IPOA, and thus shall not be subject to the Code or the Enforcement Mechanism.

1.3 A Member of IPOA is deemed to be subject to the the Code.

1.3.1 Failure to pay member dues in a timely manner shall not constitute immunity from the Code or the Enforcement Mechanism.

1.4 The SCIPOA shall only have jurisdiction over complaints regarding the provisions enumerated in the Code.

1.5 Events that pre-date the induction of a Member into IPOA shall be subject to SCIPOA jurisdiction if they are not disclosed to the IPOAMC at the time of Application for Membership.

1.6 Events that pre-date the induction of a Member into IPOA shall not be subject to SCIPOA jurisdiction if they are disclosed to the IPOAMC at the time of Application for Membership, and the IPOAMC has previously exercised due diligence with regard to investigating the event.

1.7 If a complaint presented to the SCIPOA regards a case currently subject to formal litigation, the SCIPOA shall suspend the Enforcement Mechanism until the results of the formal litigation are made public.

1.7.1 During such formal litigation, the Chair shall ensure that the SCIPOA remains fully appraised of the current status of the litigation.

1.7.2 Suspension of the Enforcement Mechanism shall end within thirty days of the termination of formal litigation.

### Section 2 – Complaint

2.1 Any individual or entity is deemed to have standing to lodge a complaint.

*Duties of the Complainant*

2.2.1 Complaints must be made in writing to the SCIPOA. Verbal complaints shall not be accepted.

2.2.2 Complaints must be directed to the Chief Liaison Officer (CLO) of the SCIPOA.

2.2.3 Complainants must state their full name and, upon request, inter alia, their address, telephone number, and other relevant identifying information.

*Duties of the CLO*

2.2.4 Upon receiving the complaint, the CLO shall file a "Receipt of Original Complaint" detailing:
　　the identity of the complainant;
　　the identity of the Member that is subject to the complaint;
　　the original text of the complaint;
　　the date that the complaint was received;
　　the Case Number, which shall be assigned by the CLO.

2.2.5 The CLO shall notify the Chair of the SCIPOA of the complaint within seven days of receiving the complaint.

2.2.6 If the Chair SCIPOA is affiliated with the Member subject to the complaint, the CLO shall notify the Deputy Chair of the SCIPOA of the complaint as well as the Chair.

2.2.7 The CLO shall preserve the anonymity of the complainant if the complainant specifically requests protection of their identity.

2.2.8 The CLO shall notify the complainant of receipt of the complaint.

*Duties of the Chair (or Deputy Chair) of the SCIPOA*

2.2.9 The duties of the Chair shall be carried out by the Deputy Chair if the Chair is affiliated with the Member subject to the complaint.

2.2.10 Upon receiving the complaint, the Chair shall notify all members of the SCIPOA and forward to them all relevant documentation within fourteen days of receiving the complaint from the CLO.

2.2.11 The Chair shall convene a meeting of a three-member Ad Hoc Taskforce to review the complaint within fourteen days of receiving the complaint from the CLO.

## Section 3 – Ad Hoc Taskforce and Appeals Taskforce

3.1 The purpose of the Ad Hoc Taskforce shall be to screen complaints and to summarily reject complaints if deemed specious or irrelevant to the Code's provisions.

*Composition of the Ad Hoc Taskforce*

3.2 The Ad Hoc Taskforce shall be comprised of the Chair (or Deputy Chair) and two other current members of the SCIPOA.

3.2.1 No member of the Ad Hoc Taskforce may be affiliated with the Member subject to the complaint.

*Duties of the Ad Hoc Taskforce*

3.3 The Ad Hoc Taskforce must complete its review within thirty days of convening.

3.4 After reviewing the complaint, the Ad Hoc Taskforce must either recommend the complaint to the full SCIPOA or reject the complaint.

*Recommendation of Complaint*

3.5 If the Ad Hoc Taskforce deems the complaint to have merit, the Taskforce shall refer the complaint to the full SCIPOA.

3.6 The Chair shall convene a hearing session of the SCIPOA within thirty days of the recommendation of the Ad Hoc Taskforce.

3.7 Recommendation of a Complaint shall not be construed as a determination of guilt or innocence; rather, recommendation of a complaint shall be construed as a determination on the reasonability of a complaint.

*Rejection of Complaint*

3.8 If the Ad Hoc Taskforce deems the complaint to lack merit, the Taskforce shall notify the full SCIPOA of its decision.

3.9 Upon rejection of a complaint, the CLO shall contact the complainant to notify them of the decision.

*Appeals of the Ad Hoc Taskforce*

3.10 Member companies may not appeal the decisions of the Ad Hoc Taskforce.

3.11 Complainants may appeal the decisions of the Ad Hoc Taskforce.

3.11.1 Appeals regarding the decision of the Ad Hoc Taskforce must be submitted to the CLO within thirty days of the decision.

3.11.2 The CLO shall refer the appeal to the Chair.

3.12 Upon receiving the appeal, the Chair shall notify all members of the SCIPOA and forward to them all relevant documentation within fourteen days of receiving the appeal from the CLO.

3.13 The Chair shall convene a meeting of a three-member Appeals Taskforce to review the appeal within fourteen days of receiving the appeal from the CLO.

*Composition of the Appeals Taskforce*

3.14 The Appeals Taskforce shall be comprised of the Chair (or Deputy Chair) and two other current members of the SCIPOA.

3.14.1 No member of the Appeals Taskforce may be affiliated with the Member subject to the complaint.

3.14.2 No member of the Ad Hoc Taskforce may be eligible to serve on the Appeals Taskforce in the same complaint process.

3.14.3 The Chair shall be exempted from 3.14.2.

*Duties of the Appeals Taskforce*

3.15 The Appeals Taskforce must complete its review within thirty days of convening.

3.16 After reviewing the complaint, the Appeals Taskforce must either recommend the complaint to the full SCIPOA or reject the complaint.

*Secondary Appeals of the Appeals Taskforce*

3.17 Member companies may not appeal the decisions of the Appeals Taskforce.

3.18 Complainants may not appeal the decisions of the Appeals Taskforce.

3.19 Complainants may not resubmit complaints that have been rejected by the Appeals Taskforce.

## Section 4 – Full SCIPOA Hearing

4.1 If the Ad Hoc Taskforce or the Appeals Taskforce recommends a complaint, it shall be heard by a full session of the SCIPOA.

4.2 A quorum of the delegates to the SCIPOA shall be deemed a full session of the SCIPOA.

*Composition of the SCIPOA*

4.2.1 The SCIPOA shall be composed of one representative from each company elected to serve by the IPOA Board.

4.2.2 A representative of the Member subject to the complaint shall be invited to attend hearings held by the SCIPOA.

*Duties of the SCIPOA*

4.2.3 The SCIPOA must complete its hearing within thirty days of convening.

4.2.4 After hearing the complaint, the SCIPOA must either impose corrective measures and sanctions or reject the complaint.

4.2.5 The decision made by the SCIPOA must be supported by a majority of the SCIPOA.

4.2.6 In the event of a tie, the Chair shall exercise the casting vote.

4.2.7 In the event that no majority decision can be reached within sixty days of convening, the complaint shall be forwarded to the IPOA Board.

*Imposition of Corrective Measures and Sanctions*

4.3 If the SCIPOA accepts the merit of the complaint, it may impose corrective measures or sanctions on the Member subject to the complaint.

*Rejection of Complaint*

4.4 If the SCIPOA deems the complaint to lack merit, the Chair shall notify the Chair of the IPOA Executive Committee of its decision.

4.5 Upon rejection of a complaint, the CLO shall contact the complainant to notify them of the decision.

*Appeals*

4.6 Member companies may appeal the decisions of the SCIPOA to the IPOA Executive Committee.

4.7 Complainants may not appeal the decisions of the SCIPOA.

4.8 Complainants may not resubmit complaints that have already previously been submitted and ruled upon.

## Section 5 – Corrective Measures and Sanctions

5.1 If the SCIPOA accepts the merit of the complaint, it may vote to sanction the Member subject to the complaint.

5.2 Sanctions require a two-thirds majority of the SCIPOA to be enacted.

5.3 At the conclusion of a hearing, a statement of the SCIPOA's decision will be prepared by the Chair and made available to the public.

*Types of Corrective Measures*

5.4 Corrective measures may include ameliorative actions prescribed by the SCIPOA.

5.5 Corrective measures may not be punitive in nature.

*Types of Sanctions*

5.6 Sanctions may include probation, expulsion, or such other disciplinary actions as decided by the SCIPOA.

5.7 Probation will lead to increased scrutiny of the member company's activities, and may be grounds for expulsion at a later date. Companies on probation may also lose voting rights for the duration of the probationary period, at the discretion of the SCIPOA.

5.8 If the SCIPOA votes to expel a member, the IPOA Executive Committee (IPOAEC) must convene within sixty days of the decision to review the recommendation of expulsion.

5.9 A decision by the SCIPOA to expel the Member subject to the complaint must be ratified by a two-thirds majority of the IPOAEC.

5.10 If the IPOAEC ratifies the SCIPOA recommendation to expel the Member subject to the complaint, the penalty takes effect immediately, and annual dues are forfeited to the IPOA.

5.10.1 If the IPOAEC ratifies the SCIPOA recommendation to expel the Member subject to the complaint, the Member may lodge an Appeal to Rescind Expulsion within thirty days.

## Section 6 – Compliance and Monitoring

6.1 If the SCIPOA imposes sanctions upon the Member subject to the complaint, the Chair shall appoint a three-member Compliance and Monitoring Committee (CMC) to oversee the compliance of the Member.

6.2 The CMC shall issue a report to the full SCIPOA ninety days after convening.

6.3 If the CMC adjudges the Member subject to the complaint to be in compliance with the decision of the SCIPOA, the CMC shall recommend that no further action be taken on the complaint.

6.3.1 If the CMC recommends that no further action be taken on the complaint, the Chair shall notify the Chair of the IPOAEC of its decision.

6.3.2 Upon closure of the complaint, the CLO shall contact the complainant to notify them of the decision.

6.4 If the CMC adjudges the Member subject to the complaint to not be in compliance with the decision of the SCIPOA, the CMC shall refer the complaint back to the SCIPOA.

6.4.1 If the CMC refers the complaint back to the SCIPOA, the Chair shall convene a secondary hearing within thirty days.

6.5 If the CMC is unable to adjudge the Member subject to the complaint to be in compliance or not in compliance with the decision of the SCIPOA, the CMC may request an extension of ninety days.

6.5.1 The Chair may authorize one extension of ninety days of the CMC.

6.6 If the CMC is unable to adjudge the Member subject to the complaint to be in compliance or not in compliance with the decision of the SCIPOA after an extension of ninety days of the CMC, the complaint shall automatically be referred back to the full SCIPOA.

6.7 Pursuant to 6.6, the SCIPOA shall convene a hearing within thirty days of the conclusion of the mandate of the CMC.

6.8 Pursuant to 6.6 and 6.7, the SCIPOA shall review the status of the complaint and the compliance or non-compliance of the Member subject to the complaint, and shall vote to sanction the Member subject to the complaint.

6.9 Sanctions pursuant to 6.8 require a simple majority of the SCIPOA to be enacted. 6.10 At the conclusion of a hearing, a statement of the SCIPOA's decision will be prepared by the Chair and made available to the public.

*Types of Sanctions*

6.11 Sanctions may include expulsion or such other disciplinary actions as decided by the SCIPOA.

6.12 Probation will lead to increased scrutiny of the member company's activities, and may be grounds for expulsion at a later date. Companies on probation may also lose voting rights for the duration of the probationary period, at the discretion of the SCIPOA.

6.13 If the SCIPOA votes to expel a member, the IPOA Board must convene within sixty days of the decision to review the recommendation of expulsion.

6.14 A decision by the SCIPOA to expel the Member subject to the complaint must be ratified by a two-thirds majority of the IPOAEC.

6.15 If the IPOAEC ratifies the SCIPOA recommendation to expel the Member subject to the complaint, the penalty takes effect immediately, and annual dues are forfeited to the IPOA.

*Appeals*

6.16 Member companies may appeal the decisions of the SCIPOA.

6.16.1 If the IPOAEC ratifies the SCIPOA recommendation to expel the Member subject to the complaint, the Member may lodge an Appeal to Rescind Expulsion within thirty days.

6.17 Complainants may not appeal the decisions of the SCIPOA.

6.18 Complainants may not resubmit complaints that have already previously been submitted and ruled upon.

**Section 7 – Appeal to Rescind Expulsion**

7.1 If the IPOAEC ratifies the SCIPOA recommendation to expel the Member subject to the complaint, the Member may lodge an Appeal to Rescind Expulsion within thirty days.

7.2 The Member subject to a decision to expel must lodge the appeal with the CLO.

7.3 The CLO shall forward the appeal to the Chair of the IPOAEC within seven days of receipt of the appeal.

7.4 The Chair of the IPOAEC shall convene a hearing of the IPOA Board within thirty days of receipt of the appeal from the CLO.

7.5 The IPOA Board shall decide by simple majority to ratify the IPOAEC decision to expel the Member or to reject the decision to expel the Member.

7.5.1 If the IPOA Board decides to reject the IPOAEC decision to expel the Member, the Member shall be readmitted to full IPOA membership.

*Appeals*

7.6 If the IPOA Board decides to ratify the IPOAEC decision to expel the Member, the expulsion will stand and the Member shall not be permitted to appeal the decision of the IPOA Board.

7.7 If a Member is expelled from IPOA, it must wait for another six months from the end of the appeals period to re-apply to IPOA's Membership Committee for re-admittance.

## Section 8 – Confidentiality

8.1 All delegates to the SCIPOA must sign a Non-Disclosure Agreement (NDA) prior to participation in the Enforcement Mechanism.

8.2 All delegates to the IPOAEC must sign a NDA prior to participation in the Enforcement Mechanism.

8.3 All staff members of IPOA must sign a NDA prior to participation in the Enforcement Mechanism.

8.4 Submissions by complainants shall be deemed public unless a specific request for confidentiality is received by the CLO.

8.5 Submissions by Member companies shall be deemed confidential unless a specific waiver of confidentiality is received by the CLO.

## Section 9 - Execution and Application

9.1 Enforcement Mechanism adopted on December 15, 2006 without reservation.

9.2 This version of the Enforcement Mechanism shall supercede all previous versions and shall be retrospectively applicable.

Close Window

## Standards Committee





**Standards Committee 2008**



**Mel SMITH** (Chair)
Paxton International
Springfield, United States



**Thomas JOHNSON**
EOD Technology, Inc.
Lenoir City, United States



**Hank ALLEN** (Chair)
MPRI
Alexandria, United States



**Trevor ROODT**
Medical Support Solutions
East Wellow, United Kingdom



**Maria Jose FERRAL MALVIDO**
Ge2B
Madrid, Spain



**Douglas ZMORZENSKI**
SkyLink USA
Dulles, United States



**J. J. MESSNER** (CLO, Non-Voting)

IPOA
Washington, D.C., United States

**Standards Committee 2007**



**Hank ALLEN** (Chair)
MPRI
Alexandria, United States



**Thomas JOHNSON**
EOD Technology, Inc.
Lenoir City, United States

**Olive Group**

**Judith MCCALLUM** (Chair)
Olive Group
Washington, D.C., United States

ARMORGROUP

**Aric MUTCHNICK**
ArmorGroup
Washington, D.C., United States



**Manuel CORTIZO**
Ge2B
Madrid, Spain



**Mel SMITH**
Paxton International
Springfield, United States

**Pieter DE WEERDT**
Medical Support Solutions
East Wellow, United Kingdom



**J. J. MESSNER** (CLO, NV)
IPOA
Washington, D.C., United States

**Standards Committee 2006**


**Mark NICOLA** (Chair)
ArmorGroup
Washington, D.C., United States


**Clark LYSTRA**
ICI of Oregon
Oregon, United States


**Bill CLONTZ**
MPRI
Arlington, United States


**Stacy RABIN**
PAE
Arlington, United States


**Pieter DE WEERDT**
Medical Support Solutions
East Wellow, United Kingdom


**Chris TAYLOR**
Blackwater USA
Moyock, United States


**Thomas JOHNSON**
EOD Technology, Inc.
Lenoir City, United States


**Sam WHITE**
Evergreen International Aviation
Washington, D.C., United States


**Mark LONSDALE**
HART Security
Washington, D.C., United States


**J. J. MESSNER** (CLO, NV)
IPOA
Washington, D.C., United States


**Catalina LEMAITRE** (CLO, NV)

IPOA
Washington, D.C., United States

Close Window

AO 440 (Rev. DC - September 2003) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
## District of Columbia

Estate of Marani Awanis Manook

**SUMMONS IN A CIVIL CASE**

V.

Unity Resources Group and RTI International

CASE    Case: 1:08-cv-00096
Assigned To : Friedman, Paul L.
Assign. Date : 1/17/2008
Description: PI/Malpractice

TO: (Name and address of Defendant)

Unity Resources Group
First Gulf Bank Building
Dubai, United Arab Emirates

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

William T. O'Neil
Burke O'Neil LLC
1718 20th Street, N.W.
Washington, D.C. 20009

an answer to the complaint which is served on you with this summons, within _____ 20 _____ days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

NANCY MAYER-WHITTINGTON

JAN 17 2008

CLERK

DATE

(BY) DEPUTY CLERK

AO 440 (Rev. DC- September 2003) Summons in a Civil Action

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and complaint was made by me[1] | April 8, 2008 at 11:59 am |

| NAME OF SERVER (PRINT) | TITLE |
|---|---|
| Daniel F. Portnoy | private process server |

*Check one box below to indicate appropriate method of service*

**G**   Served personally upon the defendant. Place where served: _____

_____

**G**   Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

     Name of person with whom the summons and complaint were left: _____

**G**   Returned unexecuted: _____

_____

XXXX Other (specify): personal service on Kim Tate, Authorized Representative of the District of Columbia Corporations Division on behalf of the Honorable Adrian Fenty, Mayor of the Disrict of Columbia, pursuant to DC Code 29-101.12(b), Defendant having failed to appoint or maintain

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | $145.00 |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on   April 8, 2008      _____
              Date              Signature of Server

**Washington Pre-Trial Services, Inc.**
**4626 Wisconsin Avenue NW #300**
**Washington, DC 20016**
_____
Address of Server

*** a Registered Agent in the District, the Mayor thus being an agent for UNITY RESOURCES GROUP, at DC Corporations Division, 941 North Capital Street NE #7200, Washington, DC 20002 by delivering to and leaving with personally copies of Summons, Complaint, and First Amended Complaint in duplicate and a fee of $15.00

Service was attempted at Defendant's address of record on April 8, 2008 at 10:45 am at 1701 Pennsylvania Ave NW #300, Washington, DC at which time I was informed that Defendant had moved from this location on April 4, 2008 and that an individual named "David" was known to have occupied the office.

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.