# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| Estate of Marani Awanis Manook, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Case No. 1:08-cv-00096 |
| ) | |
| Unity Resources Group and ) | |
| RTI International ) | Honorable Paul L. Friedman |
| ) | |
| Defendants. ) | |

## DEFENDANT RTI'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION (1) TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT, (2) FOR A MORE DEFINITE STATEMENT WITH RESPECT TO COUNTS IV-XVI, AND (3) TO TRANSFER ANY REMAINING CLAIMS

Mark A. Ash*
SMITH, ANDERSON, BLOUNT, DORSETT, MITCHELL & JERNIGAN, LLP
2500 Wachovia Capitol Center (27601)
P.O. Box 2611
Raleigh, NC 27601-2611
Phone: (919) 821-1220
Fax: (919) 821-6800

Eric W. Bloom (Bar No. 417819)
Mark A. Clodfelter (Bar No. 387717)
Karen Sugden Manley (Bar No. 495029)
Nicole Y. Silver (Bar No. 472630)
Sarah E. Saucedo*
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, D.C.  20006
Phone: (202) 282-5743
Fax: (202) 282-5100

*Counsel for Defendant RTI International*

April 28, 2008

*Motion for Pro Hac Vice pending*

## TABLE OF CONTENTS

Page

INTRODUCTION AND SUMMARY ........................................................................1

ARGUMENT ...........................................................................................................4

I.     PLAINTIFF'S AMENDED COMPLAINT HAS NOT BEEN BROUGHT
       BY AN AUTHORIZED REPRESENTATIVE. ................................................4

II.    THIS COURT LACKS JURISDICTION UNDER THE ALIEN TORT
       STATUTE TO ADJUDICATE PLAINTIFF'S WAR CRIMES CLAIMS
       (COUNTS I-III). ..........................................................................................5

       A.     This Circuit Has Consistently Held That ATS Jurisdiction
              Generally Does Not Reach Private Actors, Notwithstanding
              Decisions of Other Circuits Or The Enactment of Federal Statutes
              Relied Upon By Plaintiff. ......................................................................6

              1.     This Court Has Recently Reaffirmed The Continued
                     Vitality Of Circuit Precedent Regarding The Liability Of
                     Private Actors Under The Law Of Nations...................................6

              2.     Decisions By Other Circuits Regarding The Liability Of
                     Private Parties For War Crimes Do Not Diminish This
                     Circuit's ATS Jurisprudence.......................................................7

              3.     The ATS Jurisdictional Inquiry Is Made By Reference To
                     The Law of Nations, Not To U.S. Federal Statutory Law. .........10

       B.     Counts I, II, and III Must Be Dismissed Because Plaintiff Fails To
              Allege Facts Necessary To Constitute A War Crime. ...........................12

              1.     Plaintiff's First Amended Complaint Fails To Allege That
                     The Complained-Of Conduct Sought To Advance Any War
                     Aim Or Political Goal. ...............................................................12

              2.     Plaintiff's "Responses" To Arguments Never Advanced By
                     RTI Should Be Disregarded........................................................13

III.   THIS COURT SHOULD ORDER PLAINTIFF TO PROVIDE A MORE
       DEFINITE STATEMENT WITH RESPECT TO COUNTS IV-XVI OR
       OTHERWISE DISMISS THEM ALTOGETHER.............................................14

IV.    PLAINTIFF'S   COMPLAINT   SHOULD   BE   TRANSFERRED   TO
       NORTH CAROLINA. ....................................................................................16

CONCLUSION.......................................................................................................18

Defendant RTI International ("RTI") respectfully submits this Reply Memorandum in Support of its Motion (filed March 28, 2008) (1) To Dismiss Plaintiff's First Amended Complaint, (2) For A More Definite Statement With Respect to Counts IV-XVI, and (3) To Transfer Any Remaining Claims to the United States District Court for the Eastern District of North Carolina.

## INTRODUCTION AND SUMMARY

Plaintiff's Memorandum in Opposition is remarkable more for what it fails to address than for what it actually says.

As set forth in RTI's principal brief, a party may not bring an action merely in the name of the "Estate" of a deceased person, but instead must bring an action on behalf of the real party in interest, *i.e.*, the executor or heir consistent with the laws of the applicable jurisdiction. Plaintiff's complaint is nakedly, and improperly, brought only on behalf of the "Estate of Manook" — failing to identify the real party in interest. Plaintiff's opposition memorandum does not contest, or otherwise respond to, this basic principle of law. Nor has Plaintiff's counsel complied with this Court's rules confirming that counsel acting on behalf of an estate must "file with the Register a copy of the appointment as personal representative and a copy of the decedent's will," arguing only that the governing statute does not apply. Plaintiff's position is belied by the language of the rule. For these reasons, the Amended Complaint should be dismissed in its entirety.

Plaintiff's first three counts, all predicated on the Alien Tort Statute ("ATS"), should be dismissed for the additional reasons that (1) the ATS does not apply to non-state actors, and (2) the complained-of conduct was not in furtherance of any war aim. Plaintiff admits that the Amended Complaint seeks to apply the ATS in a manner previously rejected by this Circuit. Indeed, *this* Court has recently and repeatedly affirmed and applied this Circuit's jurisprudence,

although the Plaintiff (again) has chosen not to mention, much less address, these decisions. While Plaintiff points to recent U.S. legislation as proof that the alleged shooting constitutes a cognizable offense against non-state actors under the ATS, Plaintiff has not (and could not) assert direct actions under these laws, nor do these laws expand ATS jurisdiction. As reflected by the plain language of the ATS, that statute grants U.S. federal district courts jurisdiction only over violations of the "*law of nations*," not the law of a single nation. In relying on recent congressional action in the United States, Plaintiff not only ignores the statutory language limiting jurisdiction to violations of the "law of *nations*," but simultaneously discards the Supreme Court's admonition that "Congress intended the ATS to furnish jurisdiction for a relatively modest set of actions alleging violations of the law of nations," *Sosa v. Alvarez-Machain*, 542 U.S. 692, 720 (2004), and that "any claim based on the present-day law of nations [must] rest on a norm of international character accepted by the civilized world and defined with a specificity comparable to the features of the 18th-century paradigms we have recognized." *Id.* at 725. Most fundamentally, but also not addressed by the Plaintiff, enactment of certain statutes in this country has not changed the jurisprudence of this Circuit, a conclusion again made clear by the recent decisions of this Court relied upon by RTI in its principal motion papers but ignored by Plaintiff.

To the extent this Court does not dismiss Counts IV-XVI for lack of standing, RTI seeks an order requiring Plaintiff to provide a more definite statement for such claims. By Plaintiff's failure to respond, Plaintiff tacitly concedes that the District of Columbia wrongful death statute cannot apply to a death occurring outside of the District. Plaintiff's three wrongful death claims (Counts VII-IX) either must be dismissed or Plaintiff must provide a more definite statement and identify what statutes Plaintiff is invoking, and under what law Plaintiff is seeking the requested

relief, so that RTI may appropriately respond.   While Plaintiff wishes to avoid the obvious choice of law issue on the basis that discovery is needed, Plaintiff has pointed to no discovery that would inform the Court or the parties on this question.

Finally, to the extent this Court dismisses fewer than all of the claims, this Court should transfer the surviving claims to the United States District Court for the Eastern District of North Carolina.   Little or no deference is accorded to a plaintiff's choice of forum where, as here, the Plaintiff is a resident of neither.   In addition, Plaintiff fails to address all of the factors militating in favor of transfer:   (1) North Carolina is RTI's place of incorporation, and the jurisdiction in which RTI maintains its headquarters and its principal place of business; (2) more than 2200 of RTI's 2600 employees work in its North Carolina headquarters; (3) the RTI-Unity Contract was negotiated between Unity representatives in Dubai, the United Arab Emirates and RTI representatives in its North Carolina office; (4) the Contract is administered through RTI's International Contracts and Procurement department, which is located in RTI's North Carolina office; (5) any communication outside of Iraq under and pertaining to the Contract is overwhelmingly between RTI's North Carolina office and Unity's Dubai office; (6) payments to Unity for work in connection with the RTI-Unity Contract are made through RTI's North Carolina office; and (7) the Contract designates a contractual representative for RTI in RTI's North Carolina office and specifies that North Carolina law governs.   That a single employee from this District had limited contact with the Unity Contract (most all of which was while he was in North Carolina) cannot overcome the overwhelmingly stronger relationship between North Carolina and the dispute.

## ARGUMENT

### I. PLAINTIFF'S AMENDED COMPLAINT HAS NOT BEEN BROUGHT BY AN AUTHORIZED REPRESENTATIVE.

Contrary to Plaintiff's assertions, it has not "complied with all necessary procedural and pleading requirements," Opp'n at 4,[1] to bring a claim on behalf of an estate.

As an initial matter, Plaintiff does not contest that claims on behalf of an estate must be brought by, *and in the name of,* a duly-authorized representative of the Estate. Mot. at 7. Federal Rule of Civil Procedure 17(a) requires that the action be brought in the name of the real party in interest. Thus, in this action, the "Estate" is not the proper plaintiff. Mot. at 7. Additionally, the District of Columbia's wrongful death and survival statutes both require that claims be brought in the name of the decedent's personal representative. Mot. at 7-8 (citing D.C. Code §§ 16-702, 12-101). Plaintiff's failure to satisfy this most basic pleading requirement warrants dismissal of the Amended Complaint.

Further, to the extent Plaintiff's Opposition actually addresses the arguments in RTI's Motion, Plaintiff simply asserts that RTI's position "lacks any merit," Opp'n at 4, but fails to cite any D.C. authority, much less address the D.C. statutory provisions or cases on which RTI relies. Opp'n at 4-5. Rather, Plaintiff cites only Federal Rule of Civil Procedure 8(a) in claiming that its sole duty in filing a complaint is to inform RTI of "the grounds for jurisdiction, the claims made, and the type of relief being sought." Opp'n at 5. While RTI does not dispute that Rule 8(a) is applicable, Rule 8 is not the sole source of Plaintiff's obligations. Federal Rule of Civil Procedure 17 dictates that District of Columbia law

---

[1] As used herein, references to "Opp'n" refer to Plaintiff's Opposition To Defendant RTI's Motion to Dismiss (filed April 18, 2008), and references to "Mot." refer to Defendant RTI's Statement of Points And Authorities In Support Of Its Motion (1) To Dismiss Plaintiff's First Amended Complaint, (2) For A More Definite Statement With Respect to Counts IV-XVI, And (3) To Transfer Any Remaining Claims.

governs capacity to sue. Mot. at 8. The District of Columbia requires that a foreign personal representative "file with the Register a copy of the appointment as personal representative and a copy of the decedent's will." Mot. at 9 (citing D.C. Code § 20-341(b)). Plaintiff, however, has made no attempt to meet these statutory requirement conditions, and Plaintiff's baseless assertion that it is not subject to these provisions because the Estate does not have "any property," Opp'n at 5, in this District is insufficient to escape the relevant pleading requirements. *See also* Mot. at 8 n. 8 (lawsuit on behalf of a decedent's estate may constitute an asset, or "property," belonging to the estate).

Finally, Plaintiff's attempt to shift the burden of meeting the pleading requirements to RTI must fail. Plaintiff claims that "a simple telephone inquiry to the Estates' counsel would have revealed," Opp'n at 5, that Plaintiff has due authority under Iraqi law to represent Ms. Manook's estate. However, as set forth above and in RTI's Motion, Plaintiff must establish its authority to represent the Estate by meeting the statutory requirements — not by waiting for a phone call from RTI. Not only does Plaintiff fail to demonstrate its authority, but also its Opposition fails to attach any affidavit attesting to such authority or to attach even the relevant documents — which they assert are "being translated," Opp'n at 5. In fact, Plaintiff cites no evidence at all to establish that it has authority to represent Ms. Manook's estate.

Plaintiff's complete failure to meet the statutory requirements for bringing a claim on behalf of a decedent warrants dismissal of the instant action.

## II.    THIS COURT LACKS JURISDICTION UNDER THE ALIEN TORT STATUTE TO ADJUDICATE PLAINTIFF'S WAR CRIMES CLAIMS (COUNTS I-III).

This Court lacks jurisdiction under the ATS to adjudicate Plaintiff's war crimes claims. Under the controlling law of this Circuit, reaffirmed recently by this Court in a series of cases, non-state actors such as RTI cannot be held liable for alleged violations of the law of nations,

except in exceedingly narrow circumstances not present here. Even assuming *arguendo* that RTI, a private corporation, could be held liable for violating the law of nations in this case, Plaintiff's ATS claims fail for the independently sufficient ground that Plaintiff fails to allege facts sufficient to constitute a war crime.

Rather than address the real issues, Plaintiff's Opposition to RTI's Motion to Dismiss Counts I, II, and III is nothing more than a cobbling together of various straw man arguments, with respect to propositions that either RTI does not dispute or that are wholly inapposite to the instant inquiry. In this way, Plaintiff obscures the actual issues and fails to contest in any meaningful way what Plaintiff itself observes are RTI's "sound and compelling argument that the war crimes claims (Counts I-III) should be dismissed." Opp'n at 4.

**A.     This Circuit Has Consistently Held That ATS Jurisdiction Generally Does Not Reach Private Actors, Notwithstanding Decisions of Other Circuits Or The Enactment of Federal Statutes Relied Upon By Plaintiff.**

       **1.     This Court Has Recently Reaffirmed The Continued Vitality Of Circuit Precedent Regarding The Liability Of Private Actors Under The Law Of Nations.**

As RTI explains at length in its Motion, this Circuit has consistently held that only state actors can be held liable for violations of the law of nations, except in very narrow circumstances not present in the instant case, *Sanchez-Espinoza v. Reagan*, 770 F.2d 202 (D.C. Cir. 1985); *Tel-Oren v. Libyan Arab Republic*, 726 F.2d 774 (D.C. Cir. 1984), an approach that this Court continues to follow. *Saleh v. Titan Corp.*, 436 F. Supp. 2d 55 (D.D.C. 2006); *Doe I v. Exxon Mobil Corp.*, 393 F. Supp. 2d 20 (D.D.C. 2005); *Ibrahim v. Titan Corp.*, 391 F. Supp. 2d 10 (D.D.C. 2005).

Plaintiff states, incorrectly, that RTI relies "exclusively" on *Tel-Oren* and *Sanchez-Espinoza*, Opp'n at 4, tactically choosing *not* to mention, let alone distinguish, *Saleh* and *Ibrahim*, even though Plaintiff's counsel is well aware of these cases given that she represents

the plaintiffs in both those cases (against government contractors in Iraq).  In *Saleh* and *Ibrahim*, this Court dismissed all of the ATS claims against those corporations, explaining succinctly in both instances that there is no middle ground between private and state action for purposes of ATS jurisdiction.  *See Saleh*, 436 F. Supp. 2d at 58; *Ibrahim*, 391 F. Supp. 2d at 14-15.  These recent decisions alone demonstrate the continued vitality of the principles set forth by this Circuit in *Tel-Oren* and *Sanchez-Espinoza*.  This Court should dismiss Plaintiff's ATS claims in the instant case based on that same untouched precedent.

> **2.     Decisions By Other Circuits Regarding The Liability Of Private Parties For War Crimes Do Not Diminish This Circuit's ATS Jurisprudence.**

RTI does not dispute the general proposition that private individuals may be held liable for war crimes under certain circumstances not present here.  While Plaintiff cites a litany of out-of-circuit cases, Opp'n §§ II.B-C, for the proposition that private actors may be liable (in narrow circumstances) under the ATS, Plaintiff fails to explain the circumstances under which such liability might attach.  Plaintiff instead takes a single quote from Judge Katzman's concurrence in *Khulumani v. Barclay National Bank, Ltd.*, 504 F.3d 254, 282-83 (2d Cir. 2007), that, as Plaintiff puts it, "the fact that the defendants [a]re corporations d[oes] not change the outcome," Opp'n at 14, and then presumes that this single sentence from the Second Circuit states a sweeping proposition that this Court should abide by.

First, the law of this Circuit is not disputed.  Nor is it disputed that this Circuit's jurisprudence — at least as *currently* articulated — does not permit ATS jurisdiction to attach to private actors, such as RTI.  Perhaps Plaintiff believes that this Circuit should reconsider, but that argument must be made to the Circuit, not to this Court.

Second, even under the law of those Circuits that allow for some middle ground and will permit liability in some limited circumstances to attach to private actors, the private party will be

held liable only if it conspires with *a state actor* in violating the "law of nations."  Plaintiff has cited to no case, and RTI is aware of none, in which a private actor is found liable under the ATS absent a conspiracy and association with a state actor.   Because Plaintiff does not allege a conspiracy or collaboration between RTI and a state actor, Plaintiff could not state a claim under the ATS in any jurisdiction.   Nor would it in any event be sufficient for Plaintiff to allege a conspiracy with the United States, or a state actor of the United States, because a claim predicated on such an allegation would be nonjusticiable either under the political question doctrine or otherwise dismissed on grounds of sovereign immunity.  *See, Saleh*, 436 F. Supp. 2d at 58 (emphasizing that allegations that defendant acted under color of U.S. law move the plaintiff "closer . . . to the jurisdictional limitation of the political question doctrine"); *Ibrahim*, 391 F. Supp. 2d at 14 n.3 ("For rather obvious reasons . . . plaintiffs disavow any assertion that the defendants were state actors, . . . if defendants were acting as agents of the state, they would have sovereign immunity under *Sanchez-Espinoza*.").

In *Khulumani*, 504 F.3d 254, for example, the plaintiff affirmatively alleged that the defendant private corporations conspired with and aided and abetted the government of apartheid South Africa.   Indeed, in most all of the cases cited by Plaintiff, the courts granted ATS jurisdiction over private actors, but only in instances where the private actor allegedly conspired and collaborated with state actors.  *See Sarei v. Rio Tinto, PLC*, 487 F.3d 1193, 1197-98, 1202 (9th Cir. 2007), *reh'g en banc granted by* 499 F.3d 923 (9th Cir. 2007) (reversing the district court's dismissal of ATS war crimes claims against mining company operating in Papua, New Guinea (PNG) where private company allegedly sought the assistance of the PNG government to quell a mine uprising and *directed the PNG government to commit "atrocious human rights abuses and war crimes . . . ,* including a blockade, aerial bombardment of civilian targets,

burning of villages, rape and pillage" (emphasis added)); *Doe I v. Unocal*, 395 F.3d 932 (9th Cir. 2002), *vacated by* 403 F.3d 708 (9th Cir. 2005) (recognizing ATS liability for Unocal's activities in Myanmar which *aided and abetted the Myanmar military* in subjecting Myanmar villagers to forced labor, murder, and rape).

In addition, Plaintiff directs the Court to *In re Sinaltrainal Litigation*, 474 F. Supp. 2d 1273, 1287 (S.D. Fla. 2006), for the "general principle of law" that war crimes "do not require a showing of state action." Opp'n at 15. In fact, the district court in *Sinaltrainal* dismissed the plaintiff's ATS war crimes claims, holding that "[p]laintiffs seek a dramatic expansion of [ATS] jurisprudence, one which lacks support in either domestic or international law," as "some modicum of specificity regarding the details of *affirmative* action, whether it be in the form of conspiracy or joint action to orchestrate hostilities, is required to adequately plead a violation of the law of nations on the basis of war crimes." *Sinaltrainal*, 474 F. Supp. 2d at 1289-90 (italics in original, underlining added); *see also* Mot. at 27-29.

In *Kadic v. Karadzic*, 70 F.3d 232, 235, 242 (2d Cir. 1995), the Second Circuit addressed a slightly different but unique set of facts. In *Kadic*, the Second Circuit did hold that a private actor could be held liable for war crimes, but that actor was Radovan Karadzic, the President of the self-proclaimed Bosnian-Serb Republic of Srpska, who was a "private," "non-state" actor only in the sense that he was not the head of a *recognized* state. *See id.* at 237. He was nevertheless the "Bosnian-Serb militia leader," and a recognized political and social force. Opp'n at 13. The plaintiff in *Kadic* alleged there that he had "personally planned and ordered a campaign of murder, rape, forced impregnation, and other forms of torture *designed to destroy the religious and ethnic groups of Bosnian Muslims and Bosnian Croats*." *Id.* at 242 (emphasis added). RTI is not a military force, nor is it a political or social force in Iraq. RTI is instead a

contractor doing nothing more than fulfilling its contractual obligations. As this Court bluntly stated in *Saleh*, this Circuit's decision in *Sanchez-Espinoza* "is not cast in doubt by" *Kadic*, 70 F.3d 232, nor by *Filartiga v. Pena-Irala*, 630 F.2d 876 (2d Cir. 1980) or *Presbyterian Church of Sudan v. Talisman Energy Inc.*, 244 F. Supp. 2d 289 (S.D.N.Y. 2003), all of which involved private actors conspiring or collaborating with state actors "under color of non-U.S. law." *Saleh*, 436 F. Supp. 2d at 57, 58 n.3.

### 3.    The ATS Jurisdictional Inquiry Is Made By Reference To The Law of Nations, Not To U.S. Federal Statutory Law.

RTI does not dispute the proposition that certain federal statutes create criminal penalties, *under U.S. law*, for war crimes, as defined with reference to the Geneva Conventions. Plaintiff discusses this issue at length, citing *inter alia* the War Crimes Act of 1996, 18 U.S.C. § 2441, regarding criminal prosecution of members of the U.S. military or U.S. nationals for war crimes.[2] However, the instant case is not a domestic prosecution of war crimes under federal law; it is a civil tort claim purporting to base federal jurisdiction under the ATS. The question of ATS jurisdiction is, by contrast, made by reference to *treaty*, if one applies, or to the *law of nations*, as in the instant case. *See Sosa*, 542 U.S. at 733-34 (quoting *The Paquete Habana*, 175 U.S. 677, 700 (1900), for the sources of customary international law against which an ATS claim must be

---

[2] Plaintiff also refers to the Military Commissions Act, 10 U.S.C. § 948a *et seq.*, which "establishes procedures governing the use of military commissions to try alien unlawful enemy combatants engaged in hostilities against the United States for violations of the law of war and other offenses triable by military commission." 10 U.S.C. § 948b(a). In addition to being irrelevant to the present inquiry for the same reason as the War Crimes Act, the Military Commissions Act would not apply for the independent reason that Defendants RTI and Unity are not "alien unlawful enemy combatants." Plaintiff, moreover, discusses Department of Defense Regulations, 48 C.F.R. § 252.225-7040(e)(2)(ii), as "expressly requir[ing] contractors to notify their U.S. citizen employees that they are potentially subject to prosecution under the War Crimes Act for violations of the laws of war." Opp'n at 11. These regulations are likewise irrelevant and would not apply to RTI, in any event, because RTI (i) is not a Department of Defense contractor and (ii) does not have "personnel . . . authorized to accompany U.S. Armed Forces deployed outside the United States." *See* 48 C.F.R. § 252.225-7040(b)(1), (b)(3).

gauged, in the absence of an applicable treaty). Plaintiff's conclusion that "Congressional action taken subsequent to the Court of Appeals [sic] issuance of the *Tel Oren* [sic] and *Sanchez* [sic] decisions suggests that *federal law* is no longer consistent with those holdings," Opp'n at 9-12 (emphasis added), is wholly inapposite to the instant inquiry of whether the *law of nations* recognizes private corporate liability, wholly separate from any state action, for alleged war crimes such that ATS jurisdiction may lie.

Plaintiff's cursory listing of three well-known war crimes tribunals, the Nuremburg Tribunal, the International Criminal Tribunal for the Former Yugoslavia ("ICTY"), and the International Criminal Tribunal for Rwanda ("ICTR"),[3] as well as the International Criminal Court's ("ICC") Rome Statute and associated indictments of four opposition military members, indeed shows that private actors, *acting on behalf of or in concert with, a state, military, or political faction* who attack civilians *in the context of armed conflicts* and *in furtherance of a military or war objective* may be liable for war crimes. But not a single source to which Plaintiff cites demonstrates any recognition in international law that purely private actors, operating in a war zone yet unconnected in any form to the war or hostilities, can be held liable for or prosecuted for their acts as "war crimes,"[4] let alone recognition with the level of acceptance and specificity in the community of nations, as *Sosa* requires. *See Sosa*, 542 U.S. at 732. And that is because the search for such a source would prove futile.

---

[3] The Court should not even consider the "unorthodox practices" of the ICTY and ICTR in its inquiry for the independent reason that they do not reflect the state of international law since the statutes creating them "are not limited by international law. Instead, these custom-made statutes, which address particular international crises are *sometimes contrary to evolving norms of customary international law.*" *See Khulumani*, 504 F.3d at 331 (Korman, J., concurring in part, dissenting in part) (internal quotation marks omitted).

[4] *See also infra* § II.B.2., explaining that Plaintiff has also failed to allege facts that would give rise to a "war crime," even if a purely private party could be held liable under international law.

**B.    Counts I, II, and III Must Be Dismissed Because Plaintiff Fails To Allege Facts Necessary To Constitute A War Crime.**

**1.    Plaintiff's First Amended Complaint Fails To Allege That The Complained-Of Conduct Sought To Advance Any War Aim Or Political Goal.**

Regardless of the nature of the conflict and the identity of the alleged perpetrator, in order to constitute a "war crime," as either a grave breach of Geneva Convention IV, art. 147, with respect to international conflicts, or as a violation of common Article 3, with respect to non-international conflicts, "the conduct must be connected to an *armed conflict* (international or internal), in order to distinguish it from an ordinary criminal offense." SEAN D. MURPHY, PRINCIPLES OF INTERNATIONAL LAW 421 (Thomson West 2006) (italics in original, underlining added). There is no allegation in Plaintiff's First Amended Complaint that the alleged shooting furthered any war aim or otherwise sought to advance any military or political objective. Surely Plaintiff does not allege that RTI's contract with the United States Agency for International Development required RTI or those retained by RTI to shoot civilians.

Allegations that RTI and Unity were "working under contract with the United States," Opp'n at 8, in Iraq, and the bare allegation that "RTI and Unity are acting on behalf of the [United States]," Opp'n at 9, do not convert the alleged conduct from at most a municipal crime or tort into a war crime. *See Doe v. Islamic Salvation Front*, 257 F. Supp. 2d 115, 120-21 (D.D.C. 2003) (rejecting the allegation that "*any violence* or threat *against a civilian* or 'non-combatant' *during an armed conflict* should be considered a war crime" as "unsupported by authority" and "stretch[ing] the meaning of war crimes . . . under the law of nations too far" (emphasis added)).

Rather than addressing this contention with anything more than shallow rhetoric, Plaintiff obscures the issue by stating that "[t]he United States has decreed that all contractors and

- 12 -

subcontractors providing services to the U.S. occupation in Iraq, including both contractors performing reconstruction or development projects and private security companies, 'shall be immune from Iraqi legal process.'" Opp'n at 9-10 (quoting Coalition Provisional Authority Order 17 at §§ 1(11)-(14), 4(3)).    As a result, Plaintiff contends, "RTI, Unity, and their employees are not subject to being hauled into Court in Iraq to account for murdering Ms. Manook.   Thus this Court is the only venue for the victim's family to obtain justice." Opp'n at 9. Assuming *arguendo* the accuracy of this contention, the notion that RTI and Unity are immune from Iraqi legal process likewise fails to convert the alleged incident into a war crime for which this Court would have jurisdiction under the ATS.   The inquiry as to whether ATS jurisdiction lies is a determination of whether the law of nations recognizes the complained of conduct as a violation and whether the defendant is subject to liability under the law of nations. *See Sosa*, 542 U.S. at 732-33, n.20.   The availability of municipal process in Iraq is wholly inapposite to the ATS inquiry.   This Court should reject Plaintiff's call for "several years of discovery" given that no war crime — as a matter of law — occurred here. *See* Opp'n at 15 n.7.

## 2.    Plaintiff's "Responses" To Arguments Never Advanced By RTI Should Be Disregarded.

Plaintiff purportedly "responds" to two arguments that RTI has never advanced.   First, Plaintiff argues that RTI is "mistaken as a matter of law" as to RTI's alleged claim "that war crimes can only occur in conflicts that are *not* of an international character."   Opp'n at 7 (emphasis in original).   RTI makes no such argument in its Motion.   Rather, RTI assumes for the sake of argument that the conflict in Iraq is a conflict of non-international character to which common Article 3 of Geneva Convention IV would apply, and does not dispute that the balance of the Geneva Convention IV applies, and was indeed drafted in response, to conflicts of an international character.   Regardless of the characterization of the alleged conflict in Iraq,

- 13 -

Plaintiff's allegations fail to constitute a war crime because the alleged wrongful conduct, while occurring in the midst of an armed conflict, was in no way connected to and likewise did not seek to advance the war effort or, for that matter, any political goals.

Plaintiff also argues that RTI "rel[ies] exclusively on *Estate of Klieman v. Palestinian Authority*, 424 F. Supp. 2d 153 (D.D.C. 2006), [to] argue[] that only military personnel are able to commit war crimes." Opp'n at 7. RTI never makes this contention. Rather, RTI submits that in order "to constitute a 'war crime,' the acts complained of must *either* involve military personnel *or otherwise be undertaken in furtherance of a war objective*." Mot. at 23 (emphasis added). RTI correctly relies on *Estate of Klieman* for guidance in interpreting the term "in the context of and in association with an armed conflict not of an international character," *see* Geneva Convention IV, art. 3; 18 U.S.C. § 2441(c)(3), as this Court therein was interpreting the similarly limiting statutory term "in the course of . . . armed conflict" as used in the Antiterrorism Act of 1991. *Estate of Klieman*, 424 F. Supp. 2d at 162-67 (quoting the Antiterrorism Act of 1991, 18 U.S.C. § 2331(4)(C)).[5]

## III. THIS COURT SHOULD ORDER PLAINTIFF TO PROVIDE A MORE DEFINITE STATEMENT WITH RESPECT TO COUNTS IV-XVI OR OTHERWISE DISMISS THEM ALTOGETHER.

Counts VII, VIII, and IX are each predicated on allegations of "wrongful death." Count VII alleges wrongful death; Count VIII alleges conspiracy to cause wrongful death; and Count IX alleges aiding and abetting wrongful death. Plaintiff, however, does not contest that these

---

[5] Plaintiff's attempt to suggest an additional cause of action against RTI and Unity under the Antiterrorism Act of 1991, 18 U.S.C. § 2331, Opp'n at 8, should be deemed stricken. Plaintiff cannot amend its Complaint through statements in response to RTI's Motion. *See Carson v. U.S. Office of Special Counsel*, 514 F. Supp. 2d 54, 59 n.1 (D.D.C. 2007) (stating that a petitioner "may not amend his complaint through his opposition papers"); *Bigwood v. U.S. Agency for Int'l Dev.*, 484 F. Supp. 2d 68, 71 (D.D.C. 2007) (same); *see also DSMC, Inc. v. Convera Corp.*, 479 F. Supp. 2d 68, 84 (D.D.C. 2007) ("A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment." (citation omitted)).

wrongful death claims must fail as a matter of law if District of Columbia law applies to these counts because Plaintiff alleges that the death occurred in Baghdad, Iraq, Am. Compl. ¶ 12, while D.C.'s wrongful death statute requires that the place of death be in Washington, D.C.[6] *See* Mot. at 32 (quoting D.C. CODE § 16-2701(a) (2001); *Perry v. Criss Bros. Iron Works, Inc.*, 741 F. Supp. 985, 986 (D.D.C. 1990)). As a consequence, either these claims must be dismissed or Plaintiff should advise RTI under what statutes (and, by implication, under what governing law) Plaintiff seeks relief so that RTI may determine whether the requisite allegations have been pled. Otherwise, RTI is put in the untenable position of filing a motion to dismiss based, alternatively, on the laws of the District of Columbia, North Carolina, Dubai, and Iraq, and perhaps others.

While Plaintiff argues that "it is premature to brief choice of law before discovery has been conducted," Opp'n at 1, Plaintiff has failed to identify any discoverable fact that will bear on the issue of applicable law.[7] Ultimately, it is Plaintiff's burden to put RTI on notice of the basis of the relief sought. Given the alternative pleading requirements depending upon the statute relied upon, Plaintiff must, at a minimum, identify the specific statutes under which it requests relief.

---

[6] Generally, when parties do not raise the issue of applicability of foreign law, a court will apply the law of the forum. *Rymer v. Pool,* 574 A.2d 283, 285 (D.C. 1990) (stating that when parties do not raise issue of applicability of foreign law, court is under no obligation to apply foreign law and may instead apply law of forum); *see also Oparaugo v. Watts, et al.*, 884 A.2d 63 (D.C. 2005) (holding that where no party provided information concerning the law of Nigeria, it was permissible for the court to apply D.C. law even though Nigeria may have had more significant contacts with the transaction).

[7] Plaintiff does argue that discovery is necessary to establish that "RTI took actions to conceal the Unity shootings," Opp'n at 5, an allegation never made in Plaintiff's First Amended Complaint. Plaintiff cannot amend its Complaint through statements in response to RTI's Motion. *See infra* note 5 (citing *Carson*, 514 F. Supp. 2d at 59; *Bigwood*, 484 F. Supp. 2d at 71; *DSMC, Inc.*, 479 F. Supp. 2d at 84). In any event, Plaintiff cannot, consistent with Rule 11, make allegations of this kind in the absence of any factual basis, of which there is none.

RTI therefore respectfully requests that this Court compel Plaintiff to make a more definitive statement under Rule 12(e) of the Federal Rules of Civil Procedure so that RTI is not forced to file a motion to dismiss covering the law of multiple jurisdictions. Alternatively, or in addition to a more definite statement, RTI respectfully requests this Court to order briefing on the parties' proposed choice of substantive law with respect to Counts IV–XVI.

## IV. PLAINTIFF'S COMPLAINT SHOULD BE TRANSFERRED TO NORTH CAROLINA.

As set forth in RTI's Motion, and contrary to Plaintiff's claim that its choice of forum should be accorded "substantial deference," Opp'n at 19, the "deference" that must be given to Plaintiff's choice of forum is minimal because the District of Columbia is not Plaintiff's "home state." Mot. at 35-37. Plaintiff ignores in their entirety the cases cited to by RTI for this black-letter law proposition.

More fundamentally, Plaintiff's Opposition offers no counter-evidence to rebut RTI's showing that there are only minimal ties between this district and the dispute or to support their own factual assertions. Thus, it is admitted that North Carolina is RTI's place of incorporation and the jurisdiction in which RTI maintains its headquarters and its principal place of business. It is also admitted that (1) more than 2200 of RTI's 2600 employees work in its North Carolina headquarters; (2) the RTI-Unity Contract was negotiated between Unity representatives in Dubai, the United Arab Emirates, and RTI representatives in its North Carolina office; (3) the Contract is administered through RTI's International Contracts and Procurement department, which is located in RTI's North Carolina office; (4) any communication outside of Iraq under and pertaining to the Contract is overwhelmingly between RTI's North Carolina office and Unity's Dubai office; (5) payments to Unity for work in connection with the RTI-Unity Contract are made through RTI's North Carolina

office; and (6) the Contract designates a contractual representative for RTI in RTI's North Carolina office and specifies that North Carolina law governs.

All that Plaintiff musters in response is that RTI staffs an office in D.C. and has an employee in this District that has some involvement in the RTI-Unity Contract. Opp'n at 19. The fact that RTI has an office in this District, however, does not establish a relationship between this district and the dispute. And while RTI has a single employee in this district that has some involvement *currently* with the Unity Contract, he operated out of RTI's North Carolina offices until September 2007, discharging his responsibilities with respect to the Unity Contract from there during that time. Suppl. Decl. of Moddassir Mohammad Ali ¶ 2. Nor did this employee take any action under the RTI-Unity Contract between the time he transferred to the District of Columbia and the date of the alleged incident. *Id.* ¶ 3.

Because this district has no significant ties to this dispute, especially in comparison to the ties between North Carolina and the complained-of acts, any claims that are not dismissed pursuant to RTI's Motion should be transferred to the United States District Court for the Eastern District of North Carolina.

## CONCLUSION

For the foregoing reasons, RTI respectfully requests that this Court dismiss Plaintiff's First Amended Complaint in its entirety. To the extent this Court dismisses fewer than all of the Counts, RTI respectfully requests that this Court order Plaintiff to provide a more definite statement with respect to Counts IV-XVI, order briefing on choice of law, and transfer the remainder of the case to the United States District Court for the Eastern District of North Carolina.

Respectfully Submitted,


  /s/ Eric W. Bloom
Eric W. Bloom (Bar No. 417819)
Mark A. Clodfelter (Bar No. 387717)
Karen Sugden Manley (Bar No. 495029)
Nicole Y. Silver (Bar No. 472630)
Sarah E. Saucedo*
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, D.C. 20006
Phone: (202) 282-5743
Fax: (202) 282-5100

Mark A. Ash*
SMITH, ANDERSON, BLOUNT, DORSETT,
MITCHELL & JERNIGAN, LLP
2500 Wachovia Capitol Center (27601)
P.O. Box 2611
Raleigh, NC 27601-2611
Phone: (919) 821-1220
Fax: (919) 821-6800

*Counsel for Defendant RTI International*


* Motion for *Pro Hac Vice* pending.

## CERTIFICATE OF SERVICE

The undersigned verifies that on April 28, 2008, she caused a true and correct copy of the foregoing Reply Memorandum in Support of RTI's Motion (1) To Dismiss Plaintiff's First Amended Complaint, (2) For A More Definite Statement With Respect To Counts IV-XVI, And (3) To Transfer Any Remaining Claims to be served, via the indicated method, upon the following:

**VIA the Electronic Case Filing system & U.S. Mail**
Susan L. Burke
William T. O'Neil
Elizabeth M. Burke
Katherine R. Hawkins
BURKE O'NEIL LLC
4112 Station Street
Philadelphia, PA  19127
tel:  (215) 971-5058
fax:  (215) 482-0874

*Counsel for Plaintiff*

**VIA U.S. Mail**
Shereef Hadi Akeel
AKEEL & VALENTINE, P.L.C.
Suite 910
888 West Big Beaver Road
Troy, MI  48084-4736
tel:  (248) 269-9595
fax:  (248) 269-9119

*Counsel for Plaintiff*

**VIA U.S. Mail**
Michael Ratner
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY  10012
tel:  (212) 614-6439
fax:  (212) 614-6499

*Counsel for Plaintiff*

**VIA the Electronic Case Filing system & U.S. Mail**
William S. D'Amico
David T. Blonder
CHADBOURNE & PARKE LLP
1200 New Hampshire Ave., NW
Washington, D.C.  20036
tel:  (202) 974-5616
fax:  (202) 974-5602

*Counsel for Defendant Unity Resources Group*

_Karen Sugden Manley_
Karen Sugden Manley

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Estate of Marani Awanis Manook,    ) <br>    ) <br> Plaintiff,    ) <br>    ) <br> v.    ) <br>    ) <br> Unity Resources Group and    ) <br> RTI International    ) <br>    ) <br> Defendants.    ) <br>    ) | Civil Case No. 1:08-cv-00096 <br><br> Honorable Paul L. Friedman |

## SUPPLEMENTAL DECLARATION OF MODDASSIR MOHAMMAD ALI

I, Moddassir Mohammad Ali, hereby declare under 28 U.S.C. § 1746 under penalty of perjury under the laws of the United States of America that, based upon personal knowledge and information provided to me during my employment at RTI, the following is true and correct:

1. This declaration is submitted to supplement and clarify the information contained in my declaration of March 26, 2008, in paragraph 8 of which I stated:

> While a number of RTI employees in North Carolina are responsible for administering the RTI/Unity Contract and for approval for payment on the RTI/Unity Contract, there is but a single RTI employee in Washington, D.C. who shares any responsibility in connection with the RTI/Unity Contract.

2. The "single RTI employee in Washington, D.C. who shares any responsibility in connection with the RTI/Unity Contract" worked in RTI's North Carolina office until September 2007 and any actions taken by the employee in connection with the RTI/Unity Contract prior to the alleged incident occurred in North Carolina.

3. A review of records confirms that no actions were taken by the referenced individual in connection with his official responsibilities under the RTI/Unity Contract between the time he transferred to the Washington, D.C. office and the date of the alleged incident.

Executed on this 25th day of April, 2008

Moddassir Mohammad Ali