IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ESTATE OF MARANI AWANIS MANOOK | ) | Civil Action No. 1:08-0096-JDS |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OPINION |
| vs. | ) | AND ORDER |
| | ) | |
| RESEARCH TRIANGLE INSTITUTE, | ) | |
| INTERNATIONAL and UNITY RESOURCES | ) | |
| GROUP, L.L.C., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| JALAL ASKANDER ANTRANICK | ) | Civil Action No. 1:08-0595-JDS |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| RESEARCH TRIANGLE INSTITUTE, | ) | |
| INTERNATIONAL and UNITY RESOURCES | ) | |
| GROUP, L.L.C., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Presently before the Court are pending Motions to Dismiss by Defendants Research

Triangle Institute ("RTI") and Unity Resources Group ("Unity") in the separate cases of

Plaintiffs Marani Awanis Manook and Jalal Askander Antranick.  Because the factual and legal issues in both cases are similar, the Parties have agreed to consolidate their respective cases for the purposes of this Order.

In Plaintiff Manook's case, Defendant RTI's Motion seek (1) to dismiss Plaintiff Manook's First Amended Complaint; (2) for a More Definite Statement with respect to Counts IV-XVI; and (3) to transfer any remaining claims to the U.S. District for the Eastern District of North Carolina.

In Plaintiff Antranick's case, Defendant RTI's Motion seeks to (1) dismiss Plaintiff's Complaint;  (2) to Strike Plaintiff's Request for Declaratory Judgment and Injunctive Relief; and (3) to transfer any remaining claims to the U.S. District of North Carolina.

In both Plaintiffs Manook and Antranick's cases, Defendant Unity's Motion seeks to dismiss for (1) lack of personal jurisdiction and (2) failure of service of process.  A hearing has been held on these motions and the Court is prepared to render a ruling at this time.


## FACTUAL BACKGROUND

Defendant Research Triangle Institute is under contract with the United States Agency for International Development ("USAID") to provide governmental development and support to the Iraqi government.  Defendant Unity Resources Group is a private security contractor employed by Defendant RTI to provide protection to RTI employees and staff while they are in Iraq.

The Complaints allege that on October 9, 2007, Plaintiff Marani Awanis Manook was

driving on Karrada Street in Baghdad, Iraq. Genevia Jalal Antranick, named Plaintiff Jalal

Askander Antranick's daughter, was a passenger in Manook's vehicle. Plaintiffs allege that

Defendant Unity personnel, while in the course of their service to Defendant RTI, shot and killed

Marani Manook and Genevia Antranick without cause. Plaintiffs allege other incidents wherein

other Iraqi citizens were killed by Defendant Unity.

Plaintiffs bring claims for (1) war crime violations of the Alien Tort Statute; (2) Aiding

and Abetting under the Alien Tort Statute; (3) violations of the Torture Victim Protection Act;

(4) Assault and Battery; (5) Wrongful Death; (6) Intentional Infliction of Emotional Distress; (7)

Negligence; (8) Negligence in failing to rescue; and (9) Negligent Hiring, Training and

Supervision.

Given that the issues in both cases are very similar, the pending motions shall be

consolidated and analyzed together.


STANDARD OF REVIEW

Rule 12(c) of the Federal Rules of Civil Procedure states that "[a]fter the pleadings are

closed-but early enough not to delay trial-a party may move for judgment on the pleadings."

Fed.R.Civ.P. 12(c). The standard of review for motions for judgment on the pleadings under

Rule 12(c) of the Federal Rules is essentially the same as that for motions to dismiss under Rule

12(b)(6). *See* Schuchart v. La Taberna Del Alabardero, Inc., 365 F.3d 33, 35 (D.C.Cir.2004);

Ramirez v. Dep't of Corrections, 222 F.3d 1238, 1240-41 (10th Cir.2000); Haynesworth v.

Miller, 820 F.2d 1245, 1254 (D.C.Cir.1987). On either motion, the Court may not rely on facts

outside the pleadings and must construe the complaint in the light most favorable to the

non-moving party. *See* Kowal v. MCI Communications Corp., 16 F.3d 1271, 1276

(D.C.Cir.1994). As with a motion to dismiss under Rule 12(b)(6), a court may grant judgment on

the pleadings only if the facts alleged in the complaint do not "raise a right to relief above the

speculative level," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167

L.Ed.2d 929 (2007), or fail to "state a claim to relief that is plausible on its face." Id. at 570, 127

S.Ct. 1955; *see also* Nat'l Shopmen Pension Fund v. Disa, 583 F.Supp.2d 95, 99 (D.D.C.2008)

(dismissal is appropriate under Rule 12(c) "if the plaintiff fails to plead 'enough facts to state a

claim [to] relief that is plausible on its face.' " (*citing* Bell Atlantic Corp. v. Twombly, 550 U.S.

at 570, 127 S.Ct. 1955)).


DISCUSSION

1.      ***Defendant Unity Resources Group's Motions to Dismiss***

In bringing the present motion, Defendant Unity contends that (1) it has not been

properly served and (2) this Court lacks personal jurisdiction over Unity.


A.      SERVICE OF PROCESS - **relates solely to Plaintiff Manook's case**

Regarding the issue of proper service of process, Unity contends that it is a corporation

organized under the laws of the country of Singapore with its principal base of business in

Dubai, in the United Arab Emirates.  Unity contends that Plaintiff Manook provided "Notice of

Service" to Unity on March 4, 2008 by sending a package of documents, including the summons,

original complaint to Unity's offices in Dubai by DHL and Federal Express.[1]  Defendant

contends that Plaintiff Manook's "Notice of Service" stated that it served Unity pursuant to Rule

4(f)(2)(C)(ii) which allows service in a foreign country to be done by use of "any form of mail

that the clerk addresses and sends to the individual and that requires a signed receipt . . ." Id.

Fed.R.Civ.P. 4 directs service of process in civil suits.  Rule 4(h)(2) directs service of a

corporation in a place "not within any judicial district of the United States" to be done in a

manner prescribed by Rule 4(f) for serving an individual, "except personal delivery under

(f)(2)(C)(i).  Id.

Defendant Unity contends that Plaintiff Manook's service of process is defective on the

grounds that (1) the DHL package was not addressed to Unity's current address and as such was

not properly addressed to Defendant as required by Rule 4(f)(2)(C)(ii); (2) the clerk's prepared

package was delivered to DHL by Plaintiff's counsel, a non-neutral party; (3) Plaintiff's manner

in which it performed the service of process was not only contrary to the Federal Rules, it

conflicts with how the U.S. District of Columbia's Clerks Office performs delivery; (4) the

record reflects no evidence that the Clerk's Office effectuated service on Defendant Unity; and

(5) a private courier, like the one Plaintiff Manook used, is not considered "mail" for purposes of

Rule 4.

In response, Plaintiff Manook states that the Clerk's office was very much involved in

the service of the necessary documents on Defendant Unity.  Specifically, Manook contends that

the Clerk's Office addressed and sealed the document package and made two attempts to use a

---

[1]*DEFENDANT UNITY'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT (Doc. #15), Butler Declaration, Exhibit D, ¶ 4.*

commercial messenger service but to no avail.[2]  Consequently Plaintiff's Attorney then acted as the courier to DHL and did nothing more than deliver the document package.

This Court finds that the Clerk's Office was in fact engaged in the process serving and that good faith efforts were made to serve via commercial messenger service and therefore that is sufficient for this Court to conclude that Plaintiff's conduct did not invalidate service. Moreover, Defendant Unity has failed to show evidence of malfeasance or some prejudice (aside from being sued of course) by Plaintiff in her efforts to effectuate proper service.

Regarding Unity's claim that delivery to an incorrect address negates proper service, Plaintiff Manook states that the delivered address (although ultimately incorrect) was published on Unity's website as its business address.  Further Unity admits that this address was its prior business address and remains the address of an affiliated business.  Defendant Unity cites to a number of cases wherein private courier is insufficient to establish proper service.

However, this issue is rendered moot because this Court concludes that Unity has since been properly served via the Mayor of the District of Columbia pursuant to D.C. Code § 29-101.108(b).  That statute authorizes service upon the mayor when, among other reasons, the registered agent cannot be found with reasonable diligence and does not require a plaintiff to deliver a copy of the process paperwork to the defendant's corporate address.  Id.  The statute contemplates that after the mayor is served, it is "the [m]ayor [who] shall immediately cause one of the copies to be forwarded by registered or certified mail to the corporation at its principal office ...." D.C. CODE § 29-101.108(b). Moreover, Plaintiff has since discovered Unity's

---

[2]*PLAINTIFF'S OPPOSITION TO UNITY RESOURCE GROUP'S MOTION TO DISMISS (Doc. # 22), O'Neil Declaration ¶¶ 3-9.*

business office here in the District and has served the summons and Complaint onto Defendant

Unity pursuant to Fed.R.Civ.P. 4.

For the foregoing reasons, this Court concludes that Plaintiff Manook's efforts are

sufficient for purposes of Rule 4 regarding service of process and that Defendant Unity's Motion

to Dismiss on improper service shall be DENIED.


B.      PERSONAL JURISDICTION - **relates to both cases**

Defendant Unity contends that it is not subject to personal jurisdiction in this District in

either the Manook or the Antranick case.  Specifically, Unity contends that it is a non-resident

defendant that has neither an enduring relationship nor is doing business in the District of

Columbia as to justify a finding of personal jurisdiction.

Where an issue of personal jurisdiction is raised, "[t]he burden is on the plaintiff to

establish that this Court has personal jurisdiction over defendants and allege specific facts upon

which personal jurisdiction may be based." Blumenthal v. Drudge, 992 F.Supp. 44, 53

(D.D.C.1998).  The D.C. Court of Appeals has set forth a two-part inquiry for establishing

personal jurisdiction over a non-resident defendant.  First, a court must "examine whether

jurisdiction is applicable under the state's long-arm statute," and second, "determine whether a

finding of jurisdiction satisfies the constitutional requirements of due process." GTE New Media

Servs. v. BellSouth Corp., 199 F.3d 1343, 1347 (D.C.Cir.2000).

Plaintiffs argue that the Court may obtain personal jurisdiction over Unity on the basis of

either the D.C. long-arm statute, D.C.Code § 13-423, for transacting business in the District of

Columbia, or the District of Columbia's general jurisdiction statute, D.C.Code § 13-334.


1.      *Specific Jurisdiction*

A finding of specific jurisdiction within the District is dictated by D.C.Code Ann §

13-423(a)(1).  That statute states that  "[A] District of Columbia court may exercise personal

jurisdiction over a person ... transacting any business in the District of Columbia." Plaintiffs'

claims sound in tort and arise from events alleged to constitute negligence which did not take

place in the District of Columbia. The Court is urged to assume jurisdiction under D.C.Code

Ann. § 13-423(a)(1), the "transacting business" provision of the long-arm statute.

Due Process requires that a defendant "have certain minimum contacts with [the forum]

such that the maintenance of the suit does not offend traditional notions of fair play and

substantial justice." Health Communications, Inc. v. Mariner Corp., 860 F.2d 460, 462

(D.C.Cir.1988) (*quoting* International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

Personal jurisdiction over a defendant exists when "the defendant purposefully avails [himself]

of the privilege of conducting activities within the forum State, thus invoking the benefits and

protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958).  While  "[e]ven a small

amount of in-jurisdiction business activity is generally enough to permit the conclusion that a

nonresident defendant has transacted business here," Shoppers Food Warehouse v. Moreno, 746

A.2d 320, 331 (D.C. 2000), it is important to remember that "[t]he Court must resolve personal

jurisdiction issues 'on a case-by-case basis.' " Cellutech, Inc. v. Centennial Cellular Corp., 871

F.Supp. 46, 49 (D.D.C.1994) (*quoting* Envtl. Research Int'l, Inc. v. Lockwood Greene Eng'rs,

Inc., 355 A.2d 808, 811 (D.C.1976)).

More importantly, any claim for relief under the D.C. long-arm statute must "aris[e] from" the act or acts conferring jurisdiction over the defendant. D.C.Code § 13-423(b). This limitation is intended to exclude all claims "that do not bear some relationship to the acts in the forum state relied upon to confer jurisdiction." Jackson v. Loews Washington Cinemas, Inc., 944 A.2d 1088, 1092 (D.C. 2008) (citing Cohane v. Arpeja-California, Inc., 385 A.2d 153, 158 (D.C. 1978)).

Here, the undisputed record reflects that the Defendant Unity Resources is a Singaporean corporation that is headquartered in Dubai. Further the tortious acts alleged in both Plaintiffs' Complaints occurred in Iraq. Plaintiffs have alleged no legitimate and substantial connection between the acts that occurred in Iraq and this District to form a basis for jurisdiction. Gonzalez v. Internacional De Elevadores, S.A., 891 A.2d 227, 234 (D.C. 2006). Consequently, nothing on the face of these facts lead this Court to conclude that there is a "discernible relationship" between the Plaintiffs' claims raised and the business transacted in the District. Shoppers Food Warehouse v. Moreno, 746 A.2d 320, 335 (D.C.2000).

To the extent Plaintiffs rely on contract theory to establish specific jurisdiction, this Court finds that argument to be without merit. Plaintiffs contend that specific jurisdiction exists over Defendant Unity because Unity had a contract with Defendant RTI who also had a contract with USAID which is based within the District. Further Plaintiffs argue that said contract contains a clause that is binding on all of RTI's subcontractors (i.e. Unity) and therefore personal jurisdiction exist over Unity.

First, it is undisputed that the contract with Unity and RTI was executed in Dubai and not in the District. Gowens v. Dyncorp, 132 F.Supp.2d 38, 42 (D.D.C. 2001). Second, Unity's

contacts with RTI within the United States occurred in North Carolina and not within the

District.  Lastly, this Court concludes that to rely on a subcontractor clause found in a contract

between RTI and USAID to obtain personal jurisdiction over Unity is too tenuous a connection

as to establish a jurisdictional basis and further is unsupported by case law.  For the foregoing

reasons, this Court concludes that there is no basis for exercising personal jurisdiction over

Defendant Unity under the long-arm statute, D.C.Code Ann § 13-423(a)(1).


        2.    ***General Jurisdiction***

Presently Defendant Unity seeks dismissal on the grounds that this Court may not

exercise general jurisdiction over it.  Specifically, Unity contends that it's business contacts

within the District are not continuous, systematic and substantial.  <u>Helicopteros Nacionales de</u>

<u>Columbia, S.A. v. Hall</u>, 466 U.S. 408, 415 (1984).  In response, Plaintiffs contend that they have

presented prima facie evidence of general jurisdiction that at the very least would allow for

limited discovery on the issue of jurisdictional facts.   On the matter of personal jurisdiction,

federal courts are to look to the state law.  <u>Blumenthal v. Drudge</u>, 992 F.Supp. 44 (D.D.C. 1998).

D.C. Code § 13-422 provides that

> A District of Columbia court may exercise personal jurisdiction over a person
> domiciled in, organized under the laws of, or maintaining his or its principal place
> of business in, the District of Columbia as to any claim or relief.  <u>Id</u>.

D.C. Code § 13-334 provides for personal jurisdiction over a foreign corporation when

said corporation is (1) served with process within the District of Columbia and (2) is doing

business in the District.  <u>Id</u>.; <u>Gorman v. Ameritrade Holding Corp.</u>, 293 F.3d 506, 516 (D.C. Cir.

2002).

Unity contends that because it was served outside the District and is domiciled, organized and maintains operations outside of the District of Columbia, under § 13-422, this Court lacks personal jurisdiction over it.  Further, Unity argues that even if it was served within the District, it would still not be subject to the jurisdiction of this Court because its business contacts with the District are not "substantial" nor "continuous and systematic."  Gorman, 293 F.3d at 510.

The Due Process Clause of the Fifth Amendment to the U.S. Constitution requires the plaintiff to demonstrate that the defendant has "purposely established minimum contacts with the forum State," Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (internal quotation marks and citation omitted). These minimum contacts must be grounded in "some act by which the defendant purposefully avails itself of the privilege of conducting activities with the forum State, thus invoking the benefits and protections of its laws." Burger King, 471 U.S. at 476. "This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." Id., 471 U.S. at 475.

In the instant case, Defendant Unity is a foreign based corporation that was providing services in Iraq where the events of the present case arose.  The crux of the issue is whether Unity's "conduct and connection with the forum State are such that [it] should reasonably anticipate being haled into court there. "  World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 297, 100 S.Ct. 580, 62 L.Ed.2d 490 (1980).

The contacts that Plaintiffs Manook and Antranick allege establish personal jurisdiction within the District are (1) the presence of Defendant Unity's office at 1701 Pennsylvania Avenue within the District that is staffed by an independent contractor; (2) the contract between Defendant RTI and USAID wherein Defendant Unity is a subcontracting party; (3) a Unity employee Mike Fiacco as Defendant's point of contact within the District; and(4) Defendant Unity's website.

In considering general jurisdiction, courts recognize the distinction between cases in which the cause of action arises in the forum and those which it does not.  For those which do not arise in the forum, courts have made clear that " the defendant's activities must be not only continuous but also 'substantial.'" Hughes v. A.H. Robins Company, Inc., 490 A.2d 1140, 1149 (1985).  The weight accorded to these contacts varies greatly with the circumstances of each case, Hughes v. A.H. Robins, at 1146.

In the instant case, Plaintiffs have requested limited jurisdictional discovery.  As yet, no discovery has been allowed.  It is evident that Defendant Unity has a presence in the District. The main question is whether that presence is sufficiently "substantial" that it could expect to be "haled into Court." World-Wide Volkswagen Corp, 444 U.S. at 297.   Further, "[A] plaintiff faced with a motion to dismiss for lack of personal jurisdiction is entitled to reasonable discovery, lest the defendant defeat the jurisdiction of a federal court by withholding information on its contacts with the forum." El-Fadl v. Cent. Bank of Jordan, 75 F.3d 668, 676 (D.C. Cir. 1996).  From this Court's review, given the existing record, it is unclear how substantial Defendant Unity's connections are with this District.  Therefore, this Court shall GRANT Plaintiffs' requests for limited jurisdictional discovery.

3.      *Jurisdictional Discovery*

Jurisdictional discovery "is appropriate when the existing record is 'inadequate' to

support personal jurisdiction and a party demonstrates that it can supplement its jurisdictional

allegations through discovery.  Trintec Indus., Inc. v. Pedre Promotional Prod., Inc., 395 F.3d

1275, 1283 (Fed.Cir.2005) (*quoting*  GTE New Media Services, Inc. v. BellSouth Corp., 199

F.3d 1343, 1350-51 (D.C.Cir.2000) ) (emphasis added).

Here, it is evident that jurisdictional discovery is needed.  However, that discovery shall

be limited to the Defendant Unity's financial and business presence solely within the District.

Further, the Court shall allow the Plaintiffs until March 26, 2010 complete their jurisdictional

discovery as to Defendant Unity.   The Parties shall then submit simultaneous briefing regarding

Defendant Unity's Motion to Dismiss for lack of personal jurisdiction by April 16, 2010.


4.      *Conspiracy Jurisdiction*

Lastly, Plaintiff Antranick, in order to establish the existence of personal jurisdiction in

the District, asks this Court to rely on the theory of conspiracy jurisdiction.  Specifically,

Plaintiff Antranick alleges that Defendant Unity has conspired with Defendant RTI, who has

substantial contacts within the District, to create and maintain policies which resulted in the

death of Plaintiff Antranick's daughter as well as the deaths of other innocent people in Iraq.

For "conspiracy" jurisdiction within the District, the plaintiff must allege "(1) the

existence of a civil conspiracy ..., (2) the defendant's participation in the conspiracy, and (3) an

overt act by a co-conspirator within the forum, subject to the long-arm statute, and in furtherance

of the conspiracy." Kopff v. Battaglia, 425 F.Supp.2d. 76, 81 n. 4 (D.D.C.2006); *see also*

Edmond v. U.S. Postal Serv. Gen. Counsel, 949 F.2d 415, 425 (D.C.Cir.1991).  More

importantly, "[A] plaintiff seeking to meet its burden of demonstrating that a court may

exercise jurisdiction over foreign defendants under a conspiracy theory must present a

particularized pleading of the conspiracy as well as the overt acts within the forum taken in

furtherance of the conspiracy." AGS Intern. Services S.A. v. Newmont USA Ltd., 346 F.Supp.2d

64, 88 (D.D.C. 2004).

Plaintiff Antranick's Complaint discusses civil conspiracy in ¶¶ 55 - 56.  A reading of

those paragraphs make the most general of allegations regarding civil conspiracy and fall short

of the particularized pleadings required to establish such jurisdiction.  There is "no concrete

evidence in the record indicating that there was a common plan." First Chicago Int'l v. United

Exch. Co., Ltd., 836 F.2d 1375, 1378-79 (D.C. Cir. 1988).   Consequently, the Court concludes

that these bare allegations are insufficient to establish conspiracy jurisdiction.


5.     *Conclusion*

Defendant Unity's Motion to Dismiss for having been improperly served is DENIED.

Defendant's Motion to Dismiss for lack of personal jurisdiction is RESERVED pending

additional discovery.   The Parties shall have until March 26, 2010 to complete limited

jurisdictional discovery as to Defendant Unity's financial and business activities solely within

the District.   The Parties shall then submit simultaneous briefing regarding Defendant Unity's

Motion to Dismiss for lack of personal jurisdiction by April 16, 2010.

2.      *Defendant RTI's Motions to Dismiss*

In bringing its Motions to Dismiss, RTI requests the following relief from the Court:

1.      dismissal of the Plaintiffs Manook and Antranick's Complaints in their entirety because no one is authorized at this time, under governing Iraqi law and the law of this judicial district, to assert Plaintiff Manook's Claims

2.      dismissal of Plaintiffs Manook and Antranick's claims under the Alien Tort Statute because these claims, even taken as true, do not constitute war crimes;

3.      dismissal of Plaintiff Antranick's claims under the Torture Victim Protection Act because Plaintiff Antranick cannot establish that Defendants acted under color of state law;

4.      dismissal of Plaintiff Antranick's claim of Intentional Infliction of Emotional Distress for failure to state a claim;

5.      an order directing Plaintiff Manook to provide a more definite statement on Counts IV-XVI, identifying both the statutes and governing law under which Plaintiff seeks relief;

6.      a transfer of any remaining claims to the U.S. District Court for the Eastern District of North Carolina on the basis that there is little relationship between the District of Columbia and this dispute.

A.      <u>ESTATE REQUIREMENTS</u> - **relates to both cases**

RTI contends that dismissal of the complaint is appropriate because this Court lacks subject matter jurisdiction and for failure to state a claim.  Looking first at Plaintiff Manook, RTI contends that the First Amended Complaint should be dismissed because Plaintiff Manook has failed to name an authorized representative.  Specifically, RTI contends that the Estate is not a proper plaintiff.

As a general rule, under Fed.R.Civ.P. 17(a), the estate cannot be a plaintiff in a lawsuit. In addition, claims under the wrongful death statute requires that the action be brought by the representative of the decedent. D.C. Code section 16-2702 (2001); Saunders v. Air Florida, Inc., 558 F.Supp. 1233, 1234 (D.D.C. 1983). Similarly, claims brought under a survival statute also require that the action be brought by a legal representative of the deceased. D.C. Code § 12-101.

Pursuant to Fed.R.Civ.P. 17, the capacity to represent the estate of a foreign decedent is governed by the law of the state in which the district court is held. In the District of Columbia, a foreign personal representative "[U]pon the filing of a copy of the appointment as personal representative in another jurisdiction" may exercise "all the powers of such office and may sue and be sued in the District of Columbia." In re Estate of Monge, 841 A.2d 769, 774 (D.C. 2004) (citing D.C. Code §§ 20-341 and 20-342). The District of Columbia Wrongful Death Statute provides that: "[a]n action pursuant to this chapter shall be brought by and in the name of the personal representative of the deceased person..." D.C. Code § 16-2702 (2001). A personal representative under D.C. law is defined as "officially appointed executors or administrators." Saunders, 558 F. Supp. at 1235. The right to bring a wrongful death action is conferred upon only one person, the personal representative, to the exclusion of all others. See Group Health Ass'n. Inc. v. Gatlin, 463 A.2d 700, 701 (D.C. 1983); Cole. Raywid & Braverman v. Quadrangle, 444 A.2d 969, 971 (D.C. 1982). The term personal representative is strictly construed under D.C. law to mean only the decedent's executor or administrator. Saunders, 558 F. Supp. at 1235.

In Saunders, the widow of the decedent, the personal representative, brought an action

which she subsequently settled. 558 F. Supp. at 1234.  The decedent's parents thereafter brought their own action. The court dismissed the action of the parents because neither had been the duly appointed personal representative of the estate. That concluded that the term "personal representative" as used in this section is limited to officially appointed executors and administrators.558 F. Supp. at 1235.

However, under Iraqi law, heirs of the decedent may apply to the responsible court and submit  certain documents to obtain a "Qassam Sharie."  Upon receipt of a court-issued Qassam Sharie, the duly-appointed heir may act as the decedent's personal representative in a legal action.

Here, Plaintiff Manook states that the Estate has the Qassam Sharie documents and will provide them during the course of discovery.  As to the registration requirement, Plaintiff contends that since it has no property within the District, the Estate need not file with the Register.

The Court concludes that the fact that Plaintiff Manook has obtained the Qassam Sharie is sufficient to establish the existence of a personal representative.  However, Plaintiff's present action can be considered a form of property.  Bullard v. Curry-Cloonan, 367 A.2d 127, 132 (D.C. 1976).  Therefore, Plaintiff Manook's failure to file the Qassam Sharie documents with the Register prevents the Estate from bringing suit.  However, this Court concludes that this procedural oversight is curable and directs Plaintiff to file the Qassam Sharie documents with the Register within 14 days of the issuance of this Order.

As to Plaintiff Genevia Antranick, Jalal Askander Antranick contends that as her father, he is the only surviving relative to his daughter and since she has no property in the District of

Columbia, there is no requirement that he open a probate proceeding and be named legal representative.  Further, he contends that he should be able to bring suit in his own name for wrongful death.  The Court notes that unlike Plaintiff Manook, Plaintiff Jalal Antranick has not claimed that he has the Qassam Sharie documents.

Further, the record reflects and Plaintiff Jalal Antranick admits that he has not proceeded through the probate system under D.C. law in order to be named the personal representative. However, like Plaintiff Manook, if Plaintiff Jalal is able to provide the Qassam Sharie documents within 14 days of the issuance of this Order, this Court will recognize those documents to establish his right to proceed as Plaintiff Genevia Askander's personal representative.

In the event that Plaintiff Antranick does not have the Qassam Sharie documents, he will so notify the Court and shall inform the Court of the anticipated time needed to obtain said documents or his intent to proceed through the District's probate system.

B.   DISMISSAL OF COUNTS  UNDER ALIEN TORT STATUTE
- **relates to both cases**

Plaintiff Antranick's First Cause of Action brings a claim against Defendant RTI under the Alien Tort Statute ("ATS") alleging that Defendants' conduct constitutes war crimes in violation of the law of nations.  Plaintiff Manook also brings Claims under the ATS in Counts I, II and III.

 Defendant RTI seeks dismissal of Manook's Counts I-III and Antranick's First Cause of Action on the grounds that, because RTI is a non-governmental organization, the Alien Tort Statute does not apply to it.

The ATS provides that "[T]he district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the

United States." 28 U.S.C. § 1350. The ATS confers federal subject matter jurisdiction when three independent conditions are satisfied: (1) an alien sues, (2) for a tort, (3) committed in violation of the law of nations or a treaty ratified by the United States. *See* <u>Filartiga v. Pena-Irala</u>, 630 F.2d 876, 887-88 (2d Cir.1980).

Further, the ATS may be used against corporations acting under "color of [state] law," or for a handful of private acts, such as piracy and slave trading. <u>Arias v. Dyncorp</u>, 517 F.Supp.2d 221, 227 (D.D.C. 2007); <u>Aldana v. Fresh Del Monte Produce, Inc.</u>, 305 F.Supp.2d 1285, 1301 (S.D.Fla.2003); <u>Nat'l Coal. Gov't of the Union of Burma v. Unocal, Inc.</u>, 176 F.R.D. 329, 348 (C.D.Cal.1997) (*citing* <u>Tel-Oren v. Libyan Arab Republic</u>, 726 F.2d 774, 794 (D.C.Cir.1984) (Edwards, J., concurring)); see *generally* <u>Wiwa v. Royal Dutch Petroleum Co.</u>, No. 96CIV8386, 2002 WL 319887 (S.D.N.Y. Feb.28, 2002).

However, Courts have limited a corporation's  liability exposure under the ATS for violations of the law of nations to apply only to state actors and then only in very narrow circumstances that are not presented here.  <u>Ibrahim v. Titan Corp</u>., 391 F.Supp.2d 10 (D.D.C. 2005); <u>Tel-Oren v. Libyan Arab Republic</u>, 726 F.2d 774 (D.C. Cir. 1984).  This notion has been reinforced in <u>Doe v. Exxon Mobil Corp.</u> (*Doe I*) wherein the Court held that "only states, and not corporations or individuals, may be liable for international law violations." 393 F.Supp. 2d  20,26 (D.D.C. 2005) (*citing* <u>Sosa v. Alvarez-Machain</u>,542 U.S. 692,  733 n.20 (2004)

In support of their argument that Defendants have committed war crimes, Plaintiffs rely on customary norms regarding the treatment of civilians.  Specifically, they cite to the War Crimes Statute, 18 U.S.C. § 2441(c)(1)(3) (1996).  That statute defines a "war crime" to be conduct that is "defined as a grave breach of any of the international conventions signed at Geneva 12 August

1949."  <u>Id</u>.   Article 146 of the Fourth Geneva Convention relative to the Protection of Civilian Persons in Time of War defines "grave breaches" to include "willful killing . . . of a protected person."  From a facial review of the Geneva Convention and "War Crime" statute and  balancing that against the factual allegations in the Complaints, it appears that Plaintiffs have alleged sufficient facts to establish that Defendants have allegedly committed war crimes and thus met their burden in order to survive a motion to dismiss.

Further Plaintiffs allege that Defendant RTI is a state actors and thus subject to ATS liability for violations of the law of nations because RTI contracted with the USAID to engage in the development of better governmental infrastructures in Iraq.  Lastly, Plaintiffs argue that they cannot bring suit in Iraq because Defendants were working under contract with the United States, and are therefore immune to the Iraqi legal process.[3]  As a result, Plaintiffs contend that this Court is the only venue available for any redress.

RTI responds arguing that because it is a non-governmental organization, it cannot be held liable for its own alleged violations of the law of nations much less the alleged violations of Defendant Unity.  In support, RTI goes on to cite a line of cases wherein Courts have been disinclined to extend liability under the law of nations to private non-state conduct.  Further, in <u>Tel-Oren</u>, Judge Edwards, in his concurrence, identified a handful of crimes to which the law attributes personal responsibility, including slavery and piracy, however, he cautioned against extending the definition of the law of nations absent direction from the Supreme Court.  <u>Id.</u> at 792.

Here, it is undisputed that Defendant RTI was a private contractor for USAID.  However, the subject of the contract, i.e. rebuilding of governmental infrastructure, is not what gave rise to the

---

[3]*Coalition Provisional Authority Order 17 at Sec. 1(11)-(15), Sec. 4(3).*

deaths of Ms. Manook and Ms. Antranick.  Plaintiffs have not shown that Defendants willfully participated "in joint activity with the State or its agents" to kill either women.   <u>Arias</u>, 517 F.Supp.2d at 228 (*citing* <u>Brentwood Acad. V. Tenn. Secondary Sch. Athletic Ass'n</u>, 531 U.S. 288, 296 (2001)); <u>Kadic v. Karadzic</u>, 70 F.3d 232, 245 (2d Cir.1995) ("The 'color of law' jurisprudence of 42 U.S.C. § 1983 is a relevant guide to whether a defendant has engaged in official action for purposes of jurisdiction under the Alien Tort Act.")  Moreover, Plaintiffs have failed to establish that Defendant RTI's actions which allegedly caused Plaintiffs' deaths were cloaked in the authority of the USAID.[4]  <u>Arias</u>, 517 F.Supp.2d at 228 ( *citing* <u>Monroe v. Pape</u>, 365 U.S. 167, 184, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961)).  Consequently, this Court concludes that Defendants RTI and Unity were private actors and not state actors when the deaths occurred.

It appears that, at least for purposes of surviving a Motion to Dismiss, Plaintiffs have alleged sufficient facts to establish that Defendants have allegedly committed war crimes in violation of the law of nations.  Nevertheless, because this Court concludes that Defendant RTI is not a state actor, Plaintiff Manook's claims in Counts I, II and III and Plaintiff Antranick's claim in her First Cause of Action alleging violations of the law of nations under the ATS is not actionable.   Defendants were private, rather than official actors and therefore were not acting under the color of state law when they allegedly caused Plaintiffs' deaths.  <u>Saleh v. Titan Corp.</u>, 436 F.Supp.2d 55, 57 (D.D.C. 2006) (*affirmed* 2009 WL 2902081 (C.A.D.C.)).  For the foregoing reasons, Defendant  RTI's Motion to Dismiss Counts I, II and III of Plaintiff Manook's Complaint and the First Cause of

---

[4]Unlike our present case, in <u>Arias</u>, defendants contracted with the U.S. State Department to engage in aerial spraying of cocaine and heroin fields in Colombia.  <u>Id.</u>, 517 F.Supp.2d at 228. The Arias plaintiffs alleged injuries arose from defendants performance of the contract and thus the Arias Court found sufficient alleged facts to establish state action.  Here, the purpose for which the Defendant RTI contracted with U.S.A.I.D. does not give rise to Plaintiffs' injuries.

Action of Plaintiff Antranick's Complaint is GRANTED.

C.      DISMISSAL OF TORTURE VICTIM PROTECTION ACT
        - **relates solely to Plaintiff Antranick's case**

Defendant RTI seeks dismissal of Plaintiff Antranick's Second Cause of Action relating to the Torture Victim Protection Act.  The Torture Victim Protection Act of 1991 ("TVPA"), 28 U.S.C. § 1350, establishes a civil action against an "individual who, under actual or apparent authority, or color of law, of any foreign nation" subjects another to "torture" or "extrajudicial killing." 28 U.S.C. § 1350.

Like the ATS, the analysis here turns on whether Defendant RTI was acting under the color of state law when the incidents involving Plaintiffs occurred.  *See* Wiwa v. Royal Dutch Petroleum Co., 2002 WL 319887, at *15-16 (S.D.N.Y. Feb.28, 2002).  In Wiwa, defendants were found to be acting under color of law in the perpetration of torture and extrajudicial killings.  Id. at *14-15. Here, Defendants were not acting under color of law.

As noted above, the subject of the contract between RTI and USAID, i.e. rebuilding of governmental infrastructure, was not what gave rise to the deaths of Ms. Manook and Ms. Askander. Plaintiffs have not shown that Defendants willfully participated "in joint activity with the State or its agents" to kill either women.  Arias, 517 F.Supp.2d at 228 (*citing* Brentwood Acad. V. Tenn. Secondary Sch. Athletic Ass'n, 531 U.S. 288, 296 (2001)); Kadic v. Karadzic, 70 F.3d 232, 245 (2d Cir.1995).  Moreover, Plaintiff Antranick has failed to establish that Defendants' actions which allegedly caused Plaintiff Genevia Antranick's death was cloaked in the authority of the USAID.[5]

---

[5]Unlike our present case, in Arias, defendants contracted with the U.S. State Department to engage in aerial spraying of cocaine and heroin fields in Colombia.  Id., 517 F.Supp.2d at 228.

Arias, 517 F.Supp.2d at 228 ( *citing* Monroe v. Pape, 365 U.S. 167, 184, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961)).

Lastly, as discussed by the D.C. Circuit Court of Appeals in Saleh v. Titan Corp, with regards to the TVPA, Congress "provided a cause of action whereby U.S. residents could sue foreign states for torture, but did not - and we must assume that was a deliberate decision - include as possible defendants either american government officers or private U.S. persons whether or not acting in concert with government employees." Id., 2009 WL 2902081 at 14.

Relying on the Saleh Court's reading of the TVPA, this Court can conclude that Defendant R.T.I is a private U.S. person for purposes of the TVPA and therefore not subject to liability under that statute. Moreover, since a prerequisite to TVPA liability is that the individual be acting under color of state law, this Court concludes that finding liability for private actors like RTI that were not acting under color of law would be inconsistent with the statute. Defendant R.T.I.'s motion to dismiss on this ground is GRANTED.

D.   RTI'S LIABILITY FOR UNITY'S ACTIONS **- relates to both cases**

Defendant RTI contends that it should not be held liable for Defendant Unity's actions. Specifically, RTI contends that it was not even present at the time of the alleged incident. As such, RTI contends that all of Plaintiffs' claims that seek to tie Defendant Unity's conduct to RTI should be dismissed (i.e. aiding and abetting, agency theory, joint and several liability, joint venture and

---

The Arias plaintiffs alleged injuries arose from defendants performance of the contract and thus the Arias Court found sufficient alleged facts to establish state action. Here, the purpose for which the Defendant RTI contracted with U.S.A.I.D. does not give rise to Plaintiffs' injuries.

conspiracy).   However, Plaintiffs' Complaints allege causes of actions including civil conspiracy and negligent hiring, training and supervision.  Consequently, accepting Plaintiffs' allegations as true, this Court concludes these claims are sufficient, for the present at least, to survive Defendant RTI's Motion to Dismiss.  Defendant RTI's Motion to dismiss these claims is DENIED.

 

 

      D.     <u>DISMISSAL OF I.I.E.D CLAIM</u> - **relates solely to Plaintiff Antranick's case**

Defendant RTI seeks dismissal of Plaintiff Antranick's Seventh Cause of Action relating to Intentional Infliction of Emotional Distress ("IIED").  In the District of Columbia, the elements for an IIED claim are (1) that plaintiff was present in the zone of physical danger, which was (2) created by defendant's negligence and (3) that plaintiff feared for his own safety**.**  <u>Wright v. United States</u>, 963 F.Supp. 7, 18 (D.D.C. 1997).  Further, a plaintiff must present prima facie evidence that his emotional distress was "serious and verifiable.**"**  <u>Jones v. Howard Univ. Inc.</u>, 589 A.2d 419, 424 (D.C. 1991).

In the instant case, Plaintiff Jalal Askander Antranick was not present at the time of his daughter's shooting.  Further the Complaint fails to allege "serious and verifiable" emotional distress.  Even applying the law of the State of Colorado where Plaintiff Antranick resides, which are similar to the District of Columbia, Plaintiff cannot establish an IIED claim. <u>Scharrel v. Wal-Mart Stores, Inc.</u>, 949 P.2d 89, 93 (Colo. CT. App. 1997).  For the foregoing reasons, Defendant RTI's Motion to Dismiss Plaintiff Antranick's claim of Intentional Infliction of Emotional Distress is GRANTED.

 

 

      E.     <u>DISMISSAL OF REQUEST OF DECLARATORY AND INJUNCTIVE RELIEF</u>

**- relates solely as to Plaintiff Antranick's case**

Defendant RTI seeks dismissal of Plaintiff Antranick's request for declaratiory and injunctive relief.  In seeking declaratory relief, Defendant contends that although declaratory relief is proper in determining the existence of a legal right or relationships, that relief is not appropriate for determining whether a right has been violated absent evidence of an ongoing case or controversy. Further RTI contends that injunctive relief is inappropriate as well because Plaintiff lacks standing to raise the claims of "other inhabitants of Baghdad."

The Court is in agreement with Defendant RTI.  Regarding declaratory relief, that type of relief is inappropriate for the types of causes of action that Plaintiff Antranick is alleging because there is not a continuing violation of Plaintiff's rights or any possible threat of future violations. Green v.Mansour, 474 U.S. 64 (1985).  Regarding the injunctive relief as to "other inhabitants of Baghdad," that is also inappropriate because Plaintiff does not have standing to seek relief for parties other than himself.  Walden v. Seldin, 422 U.S. 490 (1975).

For the foregoing reasons, Defendant RTI's Motion to Dismiss Plaintiff Antranick's request for declaratory and injunctive relief are GRANTED.

F.      MORE DEFINITE STATEMENT **- relates solely to Plaintiff Manook's case**

Regarding remaining Counts IV-XVI of  Plaintiff Manook's First Amended Complaint, Defendant RTI asks this Court, pursuant to Fed.R.Civ.P. 8, to order Plaintiffs  to provide a more definite statement.  RTI contends that the First Amended Complaint fails to satisfy Rule 8(a) because it does not identify the governing law or statutes under which Plaintiff seeks relief.

Defendant asks this Court direct Plaintiff to identify the relevant jurisdiction for the claims and compel her to provide a more definite statement under Rule 12(e).  In the alternative, RTI requests that the Court order briefing on the proposed choice of substantive law with respect to the aforementioned counts.

After having reviewed Fed.R.Civ.P. 8(a) and applied it to Plaintiff Manook's First Amended Complaint, this Court concludes that she has sufficiently met her obligation to notify RTI of the claims and the proposed relief to an adequate degree such that Defendant is able to formulate its responses.  Dura Pharmaceuticals Inc. v. Broudo, 544 U.S. 336, 346-47 (2005).  Therefore, for purposes of this early stage of the legal proceedings, Defendant RTI's Motion for a Definite Statement is DENIED WITHOUT PREJUDICE.  Defendant RTI may re-raise this issue at a later stage if they so choose.

G.     MOTION FOR TRANSFER OF VENUE - **relates to both cases**

Regarding any claims that survive Defendant's Motion to Dismiss, RTI moves this Court to transfer both cases to the United States Court for the Eastern District of North Carolina.   Pursuant to 28 U.S.C. § 1404(a), for convenience of the parties and witnesses, in the interest of justice, a district court "may transfer any civil action to any other district or division where it might have been brought."  Id.  The moving party bears the burden of establishing that the transfer of this action is proper.  Trout Unlimited v. U.S. Dept. of Agriculture, 944 F.Supp. 13, 16 (D.D.C.,1996) (citing Air Line Pilots Ass'n v. Eastern Air Lines, 672 F.Supp. 525, 526 (D.D.C.1987)). Section 1404(a) vests "discretion in the district court to adjudicate motions to transfer according to individualized, case-by-case consideration of convenience and fairness." Stewart Organization, Inc. v. Ricoh Corp.,

487 U.S. 22, 29 (1988) (*quoting* Van Dusen v. Barrack, 376 U.S. 612, 622 (1964)). Further, a court must consider "whether the action could have been brought in the proposed transferee district. Gemological Inst. of Am., Inc. v. Thi-Dai Phan, 145 F.Supp.2d 68, 71 (D.D.C. 2001). However, in "assessing the convenience to the parties [in the context] of the two potentially proper venues, the court recognizes that the plaintiff's choice of forum is usually accorded substantial deference in the venue analysis." Reiffin v. Microsoft Corp., 104 F.Supp.2d 48, 52 (D.D.C. 2000).

In considering which venue is proper, courts have balanced  the private interests of the parties and the public interests of the court. Jumara v. State Farm Insurance Co., 55 F.3d 873, 879 (3rd Cir.1995); *see also* Heller Financial, Inc. v. Riverdale Auto Parts, Inc., 713 F.Supp. 1125, 1129 (N.D.Ill.1989). The private interest considerations include: (1) the plaintiff's choice of forum, unless the balance of convenience is strongly in favor of the defendants;  (2) the defendants' choice of forum;   (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses of the plaintiff and defendant, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the ease of access to sources of proof. Trout Unlimited, 944 F.Supp at 16.

The public interest considerations include: (1) the transferee's familiarity with the governing laws; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home.  Id.

The record reflects that (1) RTI  is subject to personal jurisdiction in North Carolina; (2) the District of Columbia has no meaningful ties to the controversy; (3) the District of Columbia is not Plaintiffs' home forum; (4) North Carolina is RTI's place of incorporation and principal place of business; (5) the Unity/RTI contract was negotiated and is presently administered in North Carolina;

and (6) the overwhelming witnesses involved in both cases that are found in the United States are located in North Carolina.

Plaintiffs' sole response in opposition to transfer to North Carolina is that Unity and RTI have offices in the District of Columbia and it would not be inconvenient for witnesses to come up to the District.

This controversy arises from a contract formed in North Carolina that involves a sole U.S. resident Defendant whose home forum is North Carolina.  Further, the events that gave rise to these actions did not occur in the District.  As a result, after having weighed the Trout Unlimited factors, it is evident that both cases are better served if they were transferred to the Eastern District of North Carolina.  Plaintiffs have no real  ties to the District and the cases could have been brought in North Carolina.   For the foregoing reasons, Defendant RTI's Motion to Transfer both cases to the United States District Court for the Eastern District of North Carolina is GRANTED.

This Court's grant of Defendant RTI's Motion to Transfer does not affect the Court's ruling allowing  limited jurisdictional discovery regarding Defendant Unity.  Plaintiffs must still establish that the Defendant Unity is subject to the transferor court's personal jurisdiction even after the case has been transferred under 28 U.S.C. § 1404(a).  Klayman v. Barmak, 634 F.Supp.2d 56, 61 (D.D.C. 2009).  Further, if  the transferor court has not determined whether personal jurisdiction was proper, the transferee court must make this determination as the transferor court would have done. Id. (citing Davis v. Costa-Gavras, 580 F.Supp. 1082, 1086-88 (S.D.N.Y.1984)).

CONCLUSION

Regarding *Plaintiff Marani Manook's case (CV 08-0096-JDS),*  for the foregoing reasons,

IT IS HEREBY ORDERED that,

1.  Defendant Unity's Motion to Dismiss the First Amended Complaint (*Doc. # 15*) is DENIED IN PART and RESERVED IN PART.  Specifically,

    (a)  Defendant Unity's Motion to Dismiss for improper service of process is DENIED;

    (b)  Defendant Unity's Motion to Dismiss for lack of personal jurisdiction is RESERVED pending additional jurisdictional discovery;

    ( c)  The Parties shall have until March 26, 2010 to complete limited jurisdictional discovery as to Defendant Unity's financial and business activities solely within the District.   The Parties shall then submit simultaneous additional briefing regarding Defendant Unity's Motion to Dismiss for lack of personal jurisdiction by April 16, 2010.

2.  Defendant RTI's Motion to Dismiss Amended Complaint, or Alternatively, Motion for Definite Statement and to Transfer Any Remaining Claims (*Doc. # 14*) is GRANTED IN PART and DENIED IN PART.  Specifically,

    (a)  Defendant RTI's Motion to Dismiss Plaintiff Manook's First Amended Complaint for failure to name an authorized representative is DENIED;

    (b)  Defendant RTI's Motion to Dismiss Plaintiff Manook's Counts I, II and III relating to the Alien Tort Statute is GRANTED;

    ( c)  Defendant RTI's Motion to Dismiss Plaintiff Manook's claims that it should not be liable for Defendant Unity's actions is DENIED;

    (d)  Defendant RTI's Motion for a More Definite Statement on Counts IV-XVI of Plaintiff Manook's First Amended Complaint is DENIED WITHOUT PREJUDICE;

    (e)  Defendant RTI's Motion for Transfer of Venue to the U.S. District Court for the Eastern District of North Carolina is GRANTED.

3.  All remaining claims contained in Defendants RTI and Unity's Motions that are not discussed herein are DENIED.

4.  The Clerk of Court is directed to transfer this case to the U.S. District Court for the Eastern District of North Carolina.

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

Regarding ***Plaintiff Jalal Askander Antranick's case (CV 08-0595-JDS)***, for the foregoing

reasons, IT IS HEREBY ORDERED that,

1.    Defendant Unity's Motion to Dismiss for lack of personal jurisdiction (*Doc. # 13*) is RESERVED pending additional jurisdictional discovery.  Specifically,

    (a)    The Parties shall have until March 26, 2010 to complete limited jurisdictional discovery as to Defendant Unity's financial and business activities solely within the District.   The Parties shall then submit simultaneous additional briefing regarding Defendant Unity's Motion to Dismiss for lack of personal jurisdiction by April 16, 2010.

2.    Defendant RTI's Motion to Dismiss Complaint, Motion to Transfer Any Remaining Claims (*Doc. # 11*) is GRANTED IN PART and DENIED IN PART.  Specifically,

    (a)    Defendant RTI's Motion to Dismiss Plaintiff Antranick's Complaint for failure to name an authorized representative is DENIED;

    (b)    Defendant RTI's Motion to Dismiss Plaintiff Antranick's First Cause of Action relating to the Alien Tort Statute is GRANTED;

    ( c)    Defendant RTI's Motion to Dismiss Plaintiff Antranick's Second Cause of Action relating to the Torture Victim Protection Act is GRANTED;

    (d)    Defendant RTI's Motion to Dismiss Plaintiff Antranick's claims that it should not be liable for Defendant Unity's actions is DENIED;

    (e)    Defendant RTI's Motion to Dismiss Plaintiff Antranick's Seventh Cause of Action relating to his Intentional Infliction of Emotional Distress is GRANTED;

    (f)    Defendant RTI's Motion to Dismiss Plaintiff Antranick's request of declaratory and injunctive relief is GRANTED

    (g)    Defendant RTI's Motion for Transfer of Venue to the U.S. District Court for the Eastern District of North Carolina is GRANTED.

3.    All remaining claims contained in Defendants RTI and Unity's Motions that are not discussed herein are DENIED.

4.    The Clerk of Court is directed to transfer this case to the U.S. District Court for the Eastern District of North Carolina.

The Clerk of Court shall notify the Parties of the making of this Order.

    DATED this 5th day of February, 2010.

_____/s/_____

JACK D. SHANSTROM

SENIOR U.S. DISTRICT JUDGE